UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RITA KRUK, | : | CIVIL ACTION NO. 302CV121 (AVC) |
| | : | |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| PECHINEY PLASTICS PACKAGING, INC. and | : | |
| METROPOLITAN LIFE INSURANCE CO., INC. | : | |
| | : | |
| Defendants. | : | JANUARY 5, 2004 |

<u>DEFENDANTS' TRIAL MEMORANDUM</u>

The Defendants Metropolitan Life Insurance Co., Inc. and Pechiney Plastics Packaging,

Inc., submit this Trial Memorandum in the above–captioned matter. On numerous occasions, the

Defendants attempted to coordinate with the Plaintiff's counsel to facilitate the filing of the joint

trial memorandum. Specifically, Pechiney's counsel sent letters to the Plaintiff's counsel on

December 12, 2003, two letters on December 29, 2003, December 30, 2003 and December 31,

2003. In those letters, Pechiney's counsel requested that Plaintiff's counsel provide them with the

Plaintiff's portion of the joint trial memorandum. In addition, on December 30, 2003, pursuant to

the Plaintiff's counsel's request, Pechiney provided the Plaintiff with a draft of the Defendants'

portion of the joint trial memorandum. The Plaintiff never provided Pechiney with her portion of

the joint trial memorandum. Moreover, MetLife's counsel sent Plaintiff's counsel proposed

stipulations of fact and the Defendants' conclusions of law, on December 30, 2003, and requested

that Plaintiff's counsel identify the statements of fact and law to which the Plaintiff was willing to

stipulate. Plaintiff's counsel never responded to MetLife's counsel, as requested. Therefore, on

the morning of January 5, 2004, Pechiney's counsel sent Plaintiff's counsel a letter, via facsimile and electronic mail, notifying him that because the Defendants had never received the Plaintiff's portion of the joint trial memorandum, Defendants had no choice but to file the joint trial memorandum without the Plaintiff's portion.

    1.    <u>TRIAL COUNSEL</u>:

        (i)    <u>Plaintiff</u>:

John J. Evans, Esq.
30 Oak Street
Stamford, CT  06905
(203) 353-8880

        (ii)    <u>Defendant Pechiney Plastics Packaging, Inc.</u>:

Kenneth W. Gage, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
(203) 977-7384

Melissa L. Bellavia, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901
(203) 977-7524

    (iii)    <u>Defendant Metropolitan Life Insurance Co., Inc.</u>:

        Theodore J. Tucci, Esq.
        Robinson & Cole LLP
        280 Trumbull Street
        Hartford, CT  06103-3597
        (860) 275-8200

        Erin O'Brien Choquette, Esq.
        Robinson & Cole LLP
        280 Trumbull Street
        Hartford, CT  06103-3597
        (860) 275-8200

2.    <u>JURISDICTION</u>:

Plaintiff brought this action alleging sexual harassment, in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 200ec-2(a), and wrongful denial of long term disability

benefits, in violation of the Employee Retirement Income Security Act ("ERISA").  This Court has

jurisdiction pursuant to 28 U.S.C. § 1331 because there are federal questions under Title VII and

ERISA.

3.    <u>JURY/NON-JURY</u>:

The Plaintiff's Title VII claim is triable to a jury.  The Plaintiff's ERISA claims are triable

to the Court.

4.      LENGTH OF TRIAL:

The Parties anticipate that a trial of Plaintiff's claims will take four to six days, not including jury selection.

5.      FURTHER PROCEEDINGS:

The Defendants anticipate filing motions in limine prior to jury selection or in advance of jury selection as directed by the Court.  Because the Plaintiff's ERISA claims are not triable to a jury, the Court will need to provide guidance regarding the structure and format of the trial.

6.      NATURE OF CASE:

A.      Claims of Defendant Pechiney:

Pechiney denies that the Plaintiff was subjected to a sexually hostile work environment in violation of Title VII of the Civil Rights Act of 1964.  Therefore, the claim set forth in count one of the second amended Complaint should be dismissed in its entirety.

As for Plaintiff's ERISA claims, the decision to deny Plaintiff long term disability benefits was not arbitrary and capricious, and therefore, the claims set forth in counts two and three of the second amended Complaint should be dismissed in their entirety.

B.      Claims of Defendant MetLife:

This case, as it relates to MetLife, concerns a dispute over MetLife's determination concerning the plaintiff's eligibility for long term disability (LTD) benefits under an employee welfare benefit plan ("the Plan") funded by the plaintiff's employer, Pechiney Plastics, Inc. ("Pechiney") and governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").  MetLife acted solely as the Claim Administrator

for the Plan, and not as the insurer of benefits.

The plaintiff's employment with Pechiney was terminated in July 2000. She claims that she has been totally disabled due to depression and lupus since July 20, 2000. The plaintiff received short term disability benefits from Pechiney from July 20, 2000 through January 18, 2001. On or about January 23, 2001, the plaintiff submitted a claim for LTD benefits to MetLife. MetLife, acting in its capacity as Claims Administrator, sought additional medical information from the plaintiff. Based upon its review of the information submitted, MetLife determined that the plaintiff was not entitled to benefits and on April 2, 2001, sent the plaintiff a letter denying her claim. The plaintiff appealed the denial. After receiving additional medical information from the plaintiff, MetLife concluded that the plaintiff did not qualify for total disability benefits under the Plan, and on October 1, 2002, informed the plaintiff by letter that it was upholding its denial of her claim.

The plaintiff filed a complaint against MetLife and Pechiney on January 10, 2000, claiming that MetLife breached a disability benefits contract by not providing her benefits and violated CUTPA through its involvement in the processing of her disability claim. Following MetLife's motion to dismiss on ERISA preemption grounds, the plaintiff filed an amended complaint to assert two new claims against MetLife: wrongful denial of benefits in violation of ERISA and breach of fiduciary duty in violation of ERISA. MetLife filed it answer and affirmative defenses to the amended complaint on July 10, 2002. MetLife moved for summary judgment in February 2003. The court entered judgment in favor of MetLife on the plaintiff's breach of fiduciary duty claim but denied summary judgment as to the plaintiff's wrongful denial of benefits claim.

The only issue remaining before the Court is the plaintiff's § 501 claim for wrongful denial of benefits. This claim arises out of MetLife's decision to terminate the plaintiff's claim for benefits, based upon its determination that although the plaintiff may suffer from some physical or mental ailments, she was capable of working. The Court must apply the arbitrary and capricious standard of review to this determination.

7.     <u>TRIAL BY MAGISTRATE JUDGE</u>:

The Plaintiff does not consent to a trial by a Magistrate Judge, however both defendants consent to a trial by a Magistrate Judge.

8.     <u>LIST OF WITNESSES</u>:

<u>Defendant Pechiney</u>:

Pechiney anticipates that it may call to testify at trial some or all of the witnesses listed below. Pechiney also reserves the right to call some or all of the witnesses listed by the Plaintiff and Defendant MetLife. Pechiney expressly reserve the right to amend its witness list to call additional witnesses, if necessary, to rebut testimony offered by Plaintiff's witnesses or in light of the Court's rulings on motions in limine.

(i)     <u>Shirley Armstrong</u>: Pechiney Plastics Packaging, Inc., 101 Merritt Seven, 13th Floor, Norwalk, CT 06856. Ms. Armstrong's testimony, including cross-examination, is expected to take 2 hours. Ms. Armstrong is expected to testify regarding the claims and defenses in the complaint, including but not limited to her personal knowledge of her employment with Pechiney and her personal observations of Plaintiff.

(ii)    Olivier Diss: Pechiney Plastics Packaging, Inc., 101 Merritt Seven, 13th Floor, Norwalk, CT 06856.   Mr. Diss' testimony, including cross-examination, is expected to take 2 hours.  Mr. Diss is expected to testify regarding the claims and defenses in the complaint, including but not limited to his personal knowledge of his employment with the Plaintiff and his personal observations of Plaintiff's interactions with Mr. Sethi.

(iii)    Edward Fitzgerald: 111 Nursery Road, Ridgefield, CT  06877-3402.  Mr. Fitzgerald's testimony, including cross-examination, is expected to take 2 hours.  Mr. Fitzgerald is expected to testify regarding the claims and defenses in the complaint, including but not limited to his personal knowledge of Plaintiff's employment with Pechiney, his personal knowledge regarding Plaintiff's complaints to him about Mr. Sethi, or lack thereof, and his personal observations of Plaintiff's interactions with Mr. Sethi.

(iv)    Jean-Paul Meausoone: Pechiney Plastics Packaging, Inc., 101 Merritt Seven, 13th Floor, Norwalk, CT 06856.  Mr. Meausoone's testimony, including cross-examination, is expected to take 2-3 hours.  Mr. Meausoone is expected to testify regarding the claims and defenses in the complaint, including but not limited to his personal knowledge of Plaintiff's employment with Pechiney, his personal knowledge regarding Mr. Sethi, and his personal observations of Plaintiff's interactions with Mr. Sethi.

(v)    Marilyn Mehas: 14504 Briar Forest Drive, Houston, TX 77077-1769.  Ms. Mehas' testimony, including cross-examination, is expected to take 2 hours.  Ms. Mehas is expected to testify regarding the claims and defenses in the complaint, including but not limited to

her personal knowledge of her employment with the Plaintiff, her personal interactions with Mr.

Sethi and her personal observations of Plaintiff's interactions with Mr. Sethi.

(vi)    <u>Tom O'Donoghue</u>: 217 Riverpark Drive, Jupiter, FL 33477.  Mr.

O'Donoghue's testimony, including cross-examination, is expected to take 2 hours.  Mr.

O'Donoghue is expected to testify regarding the claims and defenses in the complaint, including

but not limited to his personal knowledge of the Plaintiff's termination, including the reasons for

and the timing of the termination.

(vii)    <u>Barbara Pite</u>: 31 Overlook Drive, Greenwich, CT, 06830.  Ms. Pite's

testimony, including cross-examination, is expected to take 2 hours.  Ms. Pite is expected to testify

regarding the claims and defenses in the complaint, including but not limited to her personal

observations of Mr. Sethi.

(viii)    <u>Monica Rottman</u>: Pechiney Plastics Packaging, Inc., 101 Merritt Seven,

13th Floor, Norwalk, CT 06856.  Ms. Rottman's testimony, including cross-examination, is

expected to take 2 hours.  Ms. Rottman is expected to testify regarding the claims and defenses in

the complaint, including but not limited to the sexual harassment policy at Pechiney, the avenues

available for complaints of sexual harassment, her employment with Pechiney and her

observations of Mr. Sethi.

(ix)    <u>Ashok Sethi</u>: 171 Regents Park, Westport, CT  06880.  Mr. Sethi's

testimony, including cross-examination, is expected to take 2 hours.  Mr. Sethi is expected to

testify regarding the claims and defenses in the complaint, including but not limited to the

allegations of sexual harassment made against him, his interactions with the Plaintiff and his observations of Plaintiff's employment with Pechiney.

(x)    <u>Billie Wallace</u>: Pechiney Plastics Packaging, Inc., 8770 West Bryn Mawr Avenue, Mail Code 09 J, Chicago, IL  60631.  Ms. Wallace's testimony, including cross-examination, is expected to take 2 hours.  Ms. Wallace is expected to testify regarding the claims and defenses in the complaint, including but not limited to her personal knowledge of the documents submitted by Plaintiff to her regarding the Plaintiff's application for long term disability benefits.

<u>Defendant MetLife:</u>

(i)    <u>Salvatore Marchese</u>: Metropolitan Life insurance Company , 5950 Airport Road, Oriskany, NY 13424.  Mr. Marchese's testimony, including cross-examination, is expected to take 2-4 hours.  Mr. Marchese is expected to testify regarding MetLife's administration of the plaintiff's claim for benefits.

9.    <u>EXHIBITS:</u>[1]

<u>Defendant Pechiney:</u>

Pechiney includes in its list of exhibits documents that may become relevant at trial depending on the evidence presented.  By listing these exhibits, Pechiney does not concede to their relevance or admissibility at trial.  In addition, Pechiney expressly reserves the right to amend this list up to the time of trial and to use any of the exhibits listed by Plaintiff on her exhibit list or by

---

[1] Prior to trial, and upon receipt of Plaintiff's list of exhibits, Defendants will coordinate the consecutive renumbering of exhibits.

Defendant MetLife on its exhibit list.  Pechiney also specifically reserves the right to add exhibits

to its list in light of the Court's rulings on the parties' motions in limine and the Court's rulings on

evidence during the course of the trial.  Pechiney further reserves the right to use charts,

enlargements or demonstrative exhibits during the course of the trial as needed.

| Exhibit | Description |
|---------|-------------|
| 1. | Resume of Rita Kruk |
| 2. | Sexual Harassment Policy and acknowledgment form signed by Rita Kruk, bates stamped P0136 through P0137 |
| 3. | Administrative Services Agreement between Metropolitan Life Insurance Company and Pechiney Plastics Packaging, Inc., bates stamped P0425 through P0463 |
| 4. | Metropolitan Life Insurance Company, Inc.'s claims file for Rita Kruk |
| 5. | Summary Plan Description; Disability Insurance Policy, bates stamped P0181 through P0198 |
| 6. | Physician's Disability Report, bates stamped P0214 |
| 7. | Short Term Disability Family Medical Leave form, bates stamped P0280 |
| 8. | Application for Disability Insurance Benefits |
| 9. | Disability Report Adult, dated March 7, 2001 |
| 10. | Application for Replacement Social Security Number Card, dated March 7, 2001 with attached Application for Disability Insurance Benefits |
| 11. | Personal Profile of Rita Burrock-Kruk, dated March 7, 2001 |
| 12. | Certification of Health Care Provider, bates stamped P0112 through P0115 |
| 13. | Statement of Claim dated December 11, 2000, bates stamped P0103 through P0105 |

14.          Letter from Billie Wallace to Rita Burrock-Kruk dated November 8, 2000, bates stamped P0273 through P0274

15.          Letter from Billie Wallace to Rita Burrock-Kruk dated November 30, 2003, bates stamped P0271

16.          Letter from Billie Wallace to Kim Cahill dated January 15, 2001 with enclosures, bates stamped P0246 through P0252

17.          Letter from Linda Nelson to Rita Burrock-Kruk dated February 26, 2001, bates stamped P0232 through P0233

18.          Letter from Linda Nelson to Rita Burrock-Kruk dated March 30, 2001, bates stamped P0230 through P0231

19.          Plaintiff's Request for Admissions dated August 27, 2002, with attachments.

20.          Plaintiff's Request for Admissions dated September 10, 2002, with attachments.

21.          Transcript from the deposition of Shirley Armstrong dated January 6, 2003

22.          Transcript from the deposition of Edward Fitzgerald dated September 27, 2002

23.          Transcript from the deposition of Rita Kruk dated July 22, 2002

24.          Transcript from the deposition of Rita Kruk dated August 15, 2002

25.          Transcript from the deposition of Jean Paul Meausoone dated September 26, 2002

26.          Transcript from the deposition of Barbara Pite dated January 9, 2003

27.          Transcript from the deposition of Ashok Sethi dated September 26, 2002

28.          Transcript from the deposition of Ann Wallace dated November 4, 2002

Defendant MetLife:

MetLife reserves the right to supplement or amend this exhibit list as necessary and to use

any of the exhibits identified by the Plaintiff and/or Pechiney in their exhibit lists.  MetLife also

reserves the right to enter into evidence enlargements or summaries of any portion of the exhibits

listed by the Plaintiff, Pechiney and/or MetLife.

| | |
|---|---|
| EXHIBIT 1 | Summary Plan Description |
| EXHIBIT 2 | Administrative Services Agreement |
| EXHIBIT 3 | Plaintiff's Statement of Claim |
| EXHIBIT 4 | Employer Statement filed in connection with plaintiff's claim for benefits |
| EXHIBIT 5 | Attending Physician Statement completed by Dr. Leon Tec |
| EXHIBIT 6 | Diary Review report |
| EXHIBIT 7 | 1/31/00 Letter from MetLife to plaintiff |
| EXHIBIT 8 | 2/26/01 Letter from MetLife to plaintiff |
| EXHIBIT 9 | 3/9/01 Letter from plaintiff to MetLife |
| EXHIBIT 10 | Report from Dr. Lawrence Kagen |
| EXHIBIT 11 | Medical records from Dr. David Witt |
| EXHIBIT 12 | Medical records from Dr. Gary Goldman |
| EXHIBIT 13 | Supplemental Functional Assessment report completed by Dr. Tec |
| EXHIBIT 14 | Report from Dr. Jeffrey Lieberman |
| EXHIBIT 15 | 3/30/01 Letter from MetLife to plaintiff |
| EXHIBIT 16 | 5/29/01 Letter from plaintiff to MetLife |
| EXHIBIT 17 | 5/6/01 Letter from Dr. Witt |
| EXHIBIT 18 | 5/25/01 Letter from Dr. Tec |
| EXHIBIT 19 | 7/12/01 Fax from MetLife to Dr. Witt |
| EXHIBIT 20 | Dr. Witt's Response to MetLife query |
| EXHIBIT 21 | 9/19/01 Email from MetLife to Pechiney with attachments |
| EXHIBIT 22 | 9/01 Email correspondence regarding Pechiney's response to MetLife |
| EXHIBIT 23 | 10/1/01 Letter from MetLife to plaintiff |
| EXHIBIT 24 | Deposition of Rita Kruk, Volumes I & II |
| EXHIBIT 25 | Plaintiff's Requests for Admission, 8/27/02 |
| EXHIBIT 26 | Copy of the entire claim file |

10.    TRIAL TO COURT/JURY:

(a)    Court:

Defendants' Proposed Findings of Fact:

1.    The plaintiff, Rita Kruk, is a former employee of Pechiney Plastic Packaging Inc. ("Pechiney").  She worked for Pechiney from December 1994 until July 2000 as the Director of Human Resources.  (Complaint, ¶¶ 4, 7.)

2.    Pechiney established and maintained an employee welfare benefit plan ("the Plan"), which provided disability benefits to its employees who participated in the Plan.  (Complaint, ¶¶ 9-11.)

3.    As an employee of Pechiney, the plaintiff was a participant in the Plan.  (Plan,  DI-4.)

4.    As part of the Plan, Pechiney offered long-term disability ("LTD") benefits to eligible participants.  Specifically, the Plan provided for LTD benefits funded by Pechiney equal to up to 70% of the employee's pre-disability pay monthly pay in the event an employee became totally disabled.  (Plan, DI-6.)

5.    The LTD portion of the Plan was administered pursuant to an Administrative Services Agreement ("the ASA") entered into between Pechiney and Metropolitan Life Insurance Company ("MetLife"). (Administrative Services Agreement.)

6.    In order to qualify for LTD benefits under the Plan during the first two years of disability, the claimant must be unable to perform the major duties of his or her job, due to either a physical injury or illness or a mental or emotional illness.  (Plan, DI-6.)

7.  In order to qualify for benefits under the Plan after two years, a claimant must be unable to perform any job for which he or she is qualified by education, training and experience due to a physical injury or illness.  (Plan, DI-6.)

8.  Pursuant to the terms of the Plan, a claimant is not entitled to any benefits after 24 months if the disability is caused by a mental or emotional illness.  (Plan, DI-6.)

9.  The Plan authorizes Pechiney, the Plan Administrator, to give a claims administrator the discretion to interpret the Plan and to resolve questions of eligibility for benefits.  (Plan, A1-4, A1-5.)

10.  Pursuant to the ASA, Pechiney delegated its discretionary authority to MetLife as the claims administrator to provide "full and fair review of determinations concerning eligibility for Plan Benefits and the interpretation of Plan terms in connection with the appeal of claims denied in whole or in part, required under ERISA Section 503 . . .".  Pechiney retained final decision making authority regarding benefit eligibility determinations.  (Administrative Services Agreement, p. 4, 7.)

11.  Pechiney notified the plaintiff on or about July 10, 2000 that her employment was terminated.  The plaintiff did not return to work after being notified that she would be terminated.  (Rita Kruk Deposition, Vol. I, dated July 22, 2002, p. 29; Vol. II, dated Aug. 15, 2002, p.151-54.)

12.  The plaintiff was physically capable of performing her job duties at Pechiney as of July 2000, and she would have been able to continue to perform the major duties of her job if her employer had not terminated her employment.  (Rita Kruk Deposition, Vol. II, dated Aug. 15, 2002, p.161.)

-14-

13. The only reason the plaintiff claimed to be totally disabled as of July 2000 was because she was notified by her employer that her employment was about to be terminated.  (Kruk Deposition, Vol. II, pp. 151-54.)

14. The plaintiff applied for short-term disability benefits on or about July 19, 2000.  From July 20, 2000 through January 2001, the plaintiff received short-term disability benefits paid by Pechiney. (Employer Statement.)

15. Under the short-term disability plan, short-term disability may include anything from the flu to childbirth.  The short-term disability plan provides the employee with income while he or she is temporarily sick or injured.  (Plan, DI-4.)

16. The criteria regarding eligibility for short-term disability benefits differ materially from the criteria used to determine eligibility for LTD benefits. (Plan, DI-4 – DI-6, DI-9 – DI-11.)

17. MetLife was not responsible for and was not involved in Pechiney's decision to grant the plaintiff short-term disability benefits.  (Plan, AI-5.)

18. On or about January 15, 2001, the plaintiff submitted a claim for LTD benefits to MetLife.  (Statement of Claim.)

19. In her statement of claim for LTD benefits, the plaintiff stated that she was first disabled on July 28, 2000. (Statement of Claim.)

20. In her statement of claim for LTD benefits, the plaintiff stated that the primary diagnosis affecting her ability to work was depression, and the secondary diagnoses were "Anemia Hematologic Disorder, Antinucelar Antibody-Positive Immunologic Disorder. Patient Subject to Abnormal Blood Clotting problems." (Statement of Claim.)

-15-

21. In an initial interview with MetLife, the plaintiff claimed that she was unable to work due to depression and anemia as well as possible lupus. (Diary Review Report: 1/24/01, 10:59.)

22. In support of the plaintiff's claim, her treating physician, Dr. Leon Tec (a psychiatrist), submitted an Attending Physician Statement, in which he stated the plaintiff's primary diagnosis was depression and her secondary diagnosis was anemia/hematological disorder. (Attending Physician Statement.)

23. During a telephone interview with Dr. Tec conducted by one of MetLife's nurse consultants, Dr. Tec reiterated that he diagnosed the plaintiff with major depression. Dr. Tec stated that the plaintiff's loss of her job was a major stressor. (Diary Review Report: 1/24/01, 12:56.)

24. On or about January 31, 2001, after reviewing the documents submitted by the plaintiff in support of her claim, MetLife informed the plaintiff that it needed additional medical information in order to make a benefit determination. Specifically, MetLife asked the plaintiff to have her physicians complete a Supplemental Functional Assessment form and to submit a list of medications that the plaintiff was prescribed, as well as copies of office notes, testing results, hospital admission and discharge summaries. (1/31/01 letter.)

25. The plaintiff did not comply with this request until after MetLife sent her a second letter advising her that she needed to provide the requested medical information. (2/26/01 letter.)

26. In March 2001, the plaintiff finally provided MetLife with the requested medical records. (3/9/01 letter.)

27. Based on her initial review of the file, the claim examiner, Linda Nelson, made a preliminary recommendation that the plaintiff's claim should be approved. (Diary Review Report: 3/26/01, 16:06.)

28. Linda Nelson did not have authority to make a final determination regarding the plaintiff's eligibility for benefits. (Trial Testimony of Salvatore Marchese; Diary Review Report: 3/26/02, 16:24.)

29. Before making a final determination regarding the plaintiff's claim for benefits, MetLife arranged for an independent review by a physician consultant. (Diary Review Report: 3/27/01, 10:45 – 3/30/01, 15:46.)

30. Dr. Jeffrey Lieberman, who is Board Certified in Internal Medicine and Rheumatology, reviewed all of the plaintiff's medical records contained in the claim file. (Lieberman report.)

31. Based on his review of the medical records, Dr. Lieberman concluded that the plaintiff did not have any symptoms that would support a diagnosis of lupus. In particular, the plaintiff never had pleurisy, arthritis, skin rashes, alopecia or other manifestations of lupus. (Lieberman report.)

32. Dr. Lieberman also concluded that although the plaintiff provided medical records which supported the plaintiff's claim of anemia, the records demonstrated that the plaintiff had symptoms of anemia for several years, during which time, she had continued to work full-time, and that the anemia had been corrected by her hysterectomy. (Lieberman report.)

33. Notably, the records from the plaintiff's gynecologist, Gary Goldman, indicated that the plaintiff's hematocrit level was almost in the normal range and that she could decrease the amount of iron she was taking. (Goldman records.)

34. Finally, the medical records reviewed by Dr. Lieberman demonstrated that to the extent – if any -- the plaintiff suffered from depression, it did not prevent her from performing the duties of her job. (Lieberman report.)

35. In particular, plaintiff's therapist, Dr. Tec, stated in the supplemental functional assessment report that the plaintiff's depression was only moderate. (Supplemental functional assessment.)

36. Dr. Tec also stated that the plaintiff's ability to perform a variety of tasks, such as supervising or managing others, comprehending and following instructions, and evaluating and making decisions without immediate supervision was only moderately impaired by her depression. (Supplemental functional assessment.)

37. Further, Dr. Tec opined that the plaintiff's ability to relate to other people beyond giving and receiving instructions was not at all impaired. (Supplemental functional assessment.)

38. Moreover, Dr. Tec's records indicated that the depression resulted from the termination of the plaintiff's employment, as opposed to being the reason that the plaintiff was unable to perform her job. (Attending physician's statement.)

39. Dr. Lieberman concluded that there was nothing in the medical records that supported the plaintiff's claim that she was unable to perform her job duties. (Lieberman Report.)

40. The plaintiff's medical records demonstrated that although the plaintiff may have had an anemic condition and/or depression, neither condition caused the plaintiff to be unable to perform her job duties.  Because the plaintiff was capable of performing her job, MetLife notified the plaintiff that her claim for LTD benefits was denied by letter dated March 30, 2001.  (3/30/01 letter.)

41. MetLife advised the plaintiff that she could file a request for a review of the claim and that she should include any important new facts or medical information.  (3/30/01 letter.)

42. In May 2001, the plaintiff requested an appeal of the denial and submitted letters from Dr. Witt and Dr. Tec to support her appeal.  (5/29/01 request for appeal; 5/6/01 letter from Witt; 5/25/01 letter from Tec.)

43. Dr. Witt reported that the plaintiff experienced joint pains, rashes, fever, anemia and fatigue, as well as positive ANA tests and stated in a conclusory fashion that the plaintiff was unable to function effectively at work due to the symptoms of this disease.  Dr. Witt did not provide any test results, or medical records to support this statement.  (5/6/01 letter from Witt.)

44. Dr. Tec stated his opinion that the plaintiff suffered from severe depression which prevented her from working but did not provide any objective medical evidence supporting this conclusion. (5/25/01 letter from Tec.)  In particular, Dr. Tec did not reconcile this conclusory opinion with the specific findings he offered in the supplemental functional assessment, in which he stated that the plaintiff's depression was moderate and that the plaintiff's ability to perform tasks associated with her position was only moderately impaired. (5/24/01 Tec letter; compare with Supplemental functional assessment.)

45. MetLife asked Dr. Witt, the plaintiff's primary physician, to provide detailed information supported by objective medical findings regarding the severity of plaintiff's symptoms, her treatments and the activities the plaintiff was capable of managing on a daily basis. (7/12/01 fax.)

46. A review of the administrative record shows that Dr. Witt's response to the July 12, 2001 letter consisted of the following: (1) a copy of MetLife's fax cover sheet to him; (2) a copy of MetLife's specific questions to him with the phrases "lab results from July 2000 including ANA, ESR CDC" and "copies of office notes from July 2000" circled; and (3) 26 pages of office notes and lab results. (Dr. Witt's response)

47. The records provided by Dr. Witt indicated that the plaintiff had vague symptoms such as sore throat, sinus pain, achy, fatigue, and runny nose which was intermittently treated with an antibiotic. Dr. Witt did not provide any records establishing that the plaintiff had lupus. (Diary Review Report: 8/24/01, 16:41.)

48. Moreover, Dr. Witt did not provide any medical evidence establishing that the plaintiff's functional ability to return to work was impaired. To the contrary, Dr. Witt's records, including a reference to the fact that the plaintiff went on vacation to Florida in March 2001, supported the conclusion that the plaintiff's activities were not restricted or limited. (Diary Review Report: 8/24/01, 16:41; Witt medical records, 3/29/01.)

49. The documents submitted by Denise Paci, Dr. Witt's nurse, in support of the Plaintiff's opposition to the Defendants' motions for summary judgment were not received by MetLife and

-20-

were not contained within the medical file maintained by Dr. Witt relating to the plaintiff. (Plaintiff's Request for Admission, 8/27/02.)

50. Following its review of all of the information submitted by the plaintiff, including the supplemental medical records, MetLife concluded that the decision to deny the LTD benefits was appropriate because the records provided by the plaintiff indicated that the plaintiff was not subject to any specific restrictions or limitations, but, instead, was functionally capable of working.  (Diary Review Record: 8/24/02: 16:41; 8/30/01: 16:05; 9/19/01: 16:16; 10/1/01 letter.)

51. Based on its review of the Plan documents, MetLife believed that the final decision regarding the appeal had to be made by Pechiney.  Accordingly, MetLife sent Pechiney a draft letter for its consideration, together with a cover letter advising Pechiney of its recommendation that the denial be upheld. (9/19/01 email with attachments.)

52. Pechiney responded by stating that it wanted MetLife to mail the letter regarding the appeal. (9/01 email correspondence.)

53. Accordingly, MetLife informed the plaintiff by letter dated October 1, 2001, that it was upholding its denial of her claim, noting in particular the plaintiff's failure to provide medical evidence to support her doctor's diagnoses and the lack of any objective findings demonstrating that her functional ability to work was impaired.  (10/1/01 letter.)

<u>Defendants' Proposed Conclusions of Law</u>:

1.     The plaintiff's causes of action are based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA"); accordingly, this court has jurisdiction pursuant to 28 U.S.C. § 1331.

2.     ERISA comprehensively regulates employee pension and welfare benefit plans. <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 732, 105 S. Ct. 2380 (1985); <u>District of Columbia v. Greater Washington Bd. of Trade</u>, 506 U.S. 125, 127, 113 S. Ct. 580 (1992).

3.     ERISA is the exclusive vehicle for an action by an ERISA-plan participant to enforce benefit rights under a plan or to recover benefits under a plan.  <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 50-52, 107 S. Ct. 1549 (1987); <u>Kolasinski v. Cigna Healthplan, Inc.</u>, 163 F.3d 148, 149 (2d Cir. 1998).

4.     An action to recover plan benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), should be judicially reviewed under an abuse of discretion standard if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  <u>Firestone Tire and Rubber v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Dunn v. Standard Ins. Co.</u>, 156 F. Supp. 2d 227, 235 (D. Conn. 2001).

5.     The Plan expressly gives Pechiney (as Plan Administrator) the full, final and binding discretion to determine eligibility for benefits, construe and interpret Plan terms and designate others, such as claims administrators to carry out Plan duties.  Pechiney designated MetLife, the claims administrator, to carry out the functions of interpreting the Plan language and

making final and binding determinations as to eligibility for benefits. Accordingly, the Court must review MetLife's decision under the arbitrary and capricious standard of review. (*Ruling on Defendants' Motions for Summary Judgment, Sept. 30, 2003*.)

6.      Where the plan confers upon the administrator discretionary authority to determine eligibility for benefits, a court shall not disturb the administrator's ultimate conclusion unless it is "arbitrary and capricious." Celardo v. GBY Automobile Dealers Health & Welfare Trust, 318 F.3d 142, 146 (2d Cir. 2003); Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995).

7.      The arbitrary and capricious standard of review is "highly deferential" to a plan administrator. Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995). Under this standard, the sole question before the court is whether the administrator's decision was reasonable. Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000). A plan administrator's decision is to be upheld "unless it not only made the wrong call" but "a downright unreasonable one." James v. GMC, 230 F.3d 315, 317 (7th Cir. 2000). "The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness -- even if on the low end." Scannell v. Metropolitan Life Ins. Co., 2003 U.S. Dist. LEXIS 20749, at * 19 (S.D.N.Y. Nov. 18, 2003) (internal citations omitted).

8.      When applying the arbitrary and capricious standard, the question for a reviewing court is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Wojciechowski v. Metropolitan Life Ins. Co., 2001 U.S. App. LEXIS 828, at * 3 (2d Cir. Jan. 12, 2001), quoting Jordan, 46 F.3d at 1271.

9.     The court "cannot re-weigh the evidence so long as substantial evidence supports the plan administrator's determination." Dunn, 156 F. Supp. 2d at 236. "Substantial evidence" is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker [and] . . . requires more than a scintilla but less than a preponderance." Id.

10.     "The district court is not free to substitute its own judgment for that of the plan administrator or claim administrator as if it were considering the issue of eligibility anew." Short v. Unum Life Ins. Co. of America, 2003 U.S. Dist. LEXIS 22327, at * 19 (D. Conn. Dec. 3, 2003). See also Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995) (the arbitrary and capricious standard of review does not take into account whether a court would come to the same conclusion as did the administrator). "The fact that other interpretations may also be plausible does not render the plan administrator's interpretation arbitrary or capricious." Accardi v. Control Data Corp., 836 F.2d 126, 129 (2d Cir. 1987).

12.     The plaintiff bears the burden of proving that she is disabled under the terms of the Plan. Wojciechowski, 2001 U.S. App. LEXIS 828 at * 8. MetLife is not required to prove that the plaintiff is not disabled. Piscotanno v. Metropolitan Life Ins. Co., 118 F. Supp. 2d 200, 215 (D. Conn. 2000).

13.     In order to qualify for benefits under the Plan, during the first two years of disability, the claimant must be unable to perform the major duties of his or her job, due to either a physical injury or illness or a mental or emotional illness. (Plan, DI-6.)

14.    In order to qualify for benefits under the Plan after two years, a claimant must be unable to perform any job for which he or she is qualified by education, training and experience due to a physical injury or illness.  (Plan, DI-6).

15.    Pursuant to the terms of the Plan, a claimant is not entitled to any benefits after 24 months if the disability is caused by a mental or emotional illness.  (Plan, DI-6).

16.    The plaintiff is not totally disabled under the terms of the Plan because she does not have a sickness or injury which prevents her from performing the major duties of her job.  Brumer v. National Life of Vermont, 874 F. Supp. 60, 64 (E.D.N.Y. 1995), aff'd, 133 F.3d 906 (2d Cir. 1998); Emerson v. Fireman's Fund American Life Ins. Co., 524 F. Supp. 1262, 1267 (N.D. Ga. 1981), aff'd, 691 F.2d 510 (11th Cir. 1982); Kaufman v. Provident Life & Acc. Ins. Co., 828 F. Supp. 275 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d Cir. 1993); 1A Appleman, Insurance Law and Practice, § 671, n. 4; Plan, DI-6.

17.    The plaintiff is not disabled under the terms of the Plan because she does not have a sickness or injury which causes her to be unable to perform any job for which she is qualified by education, training and experience due to a physical injury or illness.  Piscotanno, 118 F. Supp. 2d at 216 (D. Conn. 2000); Short, 2003 U.S. Dist. LEXIS 22327  (D. Conn. 2003).

18.    Proof of the existence of a medical condition – let alone subjective statements of symptoms -- is not sufficient to prove total disability.  Brumer v. National Life of Vermont, 874 F. Supp. 60, 64 (E.D.N.Y. 1995), aff'd 133 F.3d 906 (2d Cir. 1998); Couch on Insurance 2d (rev. ed.) § 78:113-114 (1983).

19.    "Plan administrators are not obliged to accord special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S. Ct. 1965, 1970 (2003). See Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 135 n. 4 (2d Cir. 2001) (rejecting the "treating physician rule).;

20.    ERISA "does not impose a heightened burden of explanation on administrators when they reject a treating physician's explanation." Short, 2003 U.S. Dist. LEXIS 22327 at * 22. Moreover, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Nord, 123 S. Ct. at 1970.

21.    The fact that MetLife did not agree with the opinions of the plaintiff's physicians does not constitute an arbitrary or capricious decision. Fay v. Oxford Health Plan, 287 F.3d 96, 108 (2d Cir. 2002). Reliance on opinions inconsistent with that of the treating physician is not arbitrary and capricious when the inconsistent opinions are not "irrational, unreasonable or the clear product of self interest on their face." Scannell, 2003 U.S. Dist. LEXIS 20749, at * 24.

22.    Even where the medical evidence could support a contrary finding, an administrator's decision to terminate benefits is not arbitrary and capricious as long as its decision was also reasonably based on the record. Pulvers, 210 F.3d at 94. See Wagner v. First Unum Life Ins. Co., 2003 U.S. Dist. LEXIS 14245 (S.D.N.Y. Aug. 13, 2003) (decision to terminate was not arbitrary and capricious even though the administrator reached a conclusion that differed from the treating physicians: "perhaps First Unum could have given greater consideration to the possibility

that Wagner suffered from chronic fatigue syndrome, but overall, defendant's determination of Wagner's claim had support in the record and was not clearly erroneous.").

23.     A plan administrator making discretionary determinations as to eligibility is not bound by the determination of the Social Security Administration as the definition of "disability" which controls a decision by the Social Security Administration is not binding on the Plan's administrator under ERISA.  Kunstenaar v. Conn. Gen. Life Ins. Co., 902 F.2d 181, 184 (2d Cir. 1990).  See also Gaitan v. Pension Trust Fund of the Pension, Hospitalization and Benefit Plan of the Elec. Indus., 2000 U.S. Dist. LEXIS 3323, *14 (S.D.N.Y. Mar. 20, 2000); Pagan v. NYNEX Pension Plan, 846 F. Supp. 19, 21 (S.D.N.Y. 1994) ("Social Security determinations are likewise not binding on ERISA plans, and should not have unintended side effects on such plans not contemplated when the plans were initiated, or by Congress in creating the Social Security disability structure."), aff'd., 52 F.3d 438 (2d Cir. 1995).

24.     Even if the plaintiff succeeds on her claim of wrongful denial of benefits, her damages would be offset by any benefits she received from the Social Security Administration. (Plan, DI-7.)

25.     Even if the Plaintiff succeeds on her claim of wrongful denial of benefits, her damages would be limited to payment of past benefits due to her for disability.  New York Life Ins. Co. v. Viglas, 297 U.S. 672, 678 (1936) (the damages available for a claim of wrongful denial of benefits "do not exceed the benefits in default at the commencement of the suit."); Mobley v. New York Life Ins. Co., 295 U.S. 632, 638 (1935) ("Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to

pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy."); MaGee v. Paul Revere Life Ins. Co., 954 F. Supp. 582, 586 (E.D.N.Y. 1997).

        (b)    Jury:

                (i)    Proposed Voir Dire Questions:

Defendant Pechiney:

1.      In the trial of this case, the parties are entitled to have a fair, unbiased and unprejudiced jury. You must shed all biases or prejudice, if you have any, and you must treat both the plaintiff and the defendant equally. If there is any reason why any of you might not be able to render a fair verdict, you must disclose such reason to the Court. It is your duty to answer each question put to you as honestly as you can, and to disclose any other reasons why you may not be able to render a fair verdict in this case. Likewise, if you have any questions or concerns about whether you will be able to render a fair verdict, please make that fact known to the Court.

2.      In this lawsuit, Rita Kruk is suing Pechiney Plastics Packaging, Inc. and Metropolitan Life Insurance Co., Inc. Are you familiar with this lawsuit? If so, how did you become familiar with this lawsuit?

3.      The defendants in this case are Pechiney Plastics Packaging, Inc., which at one point was known here in Connecticut as American National Can, and Metropolitan Life Insurance Co., Inc. Have you or anyone in your family ever been employed by Pechiney, American National Can, MetLife, or any other entity affiliated with any of them? If so, please explain.

-28-

4.      Have any of you or any member of your family ever had any connection with, employment with or any dealings with Pechiney Plastics Packaging, Inc., American National Can or Metropolitan Life Insurance Co., Inc. or any other entity affiliated with either one?  If so, please describe the dealings or connection.

5.      Do you know, or are you or any member of your family related to any officer, director or employee of Pechiney Plastics Packaging, Inc., American National Can or Metropolitan Life Insurance Co., Inc. or any other entity affiliated with either one?  If so, please describe the relationship.

6.      The plaintiff in this case is Rita Kruk of Easton, Connecticut.  Do you, or any member of your immediate family, know her or any members of her family?  Do you know anyone who knows Ms. Kruk?  If so, please state how you or any members of your immediate family know Ms. Kruk, or a member of her family, and the nature of such relationship or association.  Would any such relationship or association prevent you from rendering a fair and impartial verdict or make you incapable of sitting on this case?

7.      The Plaintiff in this case is represented by John J. Evans of Stamford, Connecticut.  Do you know Mr. Evans?

8.      The Defendant Pechiney Plastics Packaging, Inc. in this case is represented by Kenneth W. Gage and Melissa L. Bellavia of the firm of Day, Berry & Howard in Stamford, Connecticut.  Do you know either of these lawyers or any lawyers at Day, Berry & Howard?

9.     The Defendant Metropolitan Life Insurance Company in this case is represented by Theodore Tucci and Erin O'Brien Choquette of Robinson and Cole in Hartford, Connecticut.  Do you know her or any lawyers at Robinson and Cole?

10.     State your present occupation including the name of your employer and the nature of your duties.  If you are retired, please describe your last full time job, including the name of your employer and the nature of your duties.

11.     Are you married?  If so, please describe your spouse's employment, including the name of your spouse's employer and the nature of your spouse's duties.  If your spouse is deceased or if you are divorced, what was the occupation and who was the employer of your spouse?

12.     Please describe the highest level of education that you and your spouse have received.

13.     Do you know any of the proposed witnesses in this case?  If so, how do you know the individuals?  Do you have any feelings about these individuals?  Do you have any feelings about these individuals that would prevent you from rendering a fair and impartial verdict?

14.     Your duty will be to listen to the testimony.  At the conclusion of the testimony, the Judge will instruct you as to what the law is and will charge you to apply those principles of law to the case before you.  If you are selected as a juror, will you follow the law as the Judge states it, whether or not you approve of the legal principles as he states them?

15.    Do you have any feeling or belief which would prevent you from rendering a verdict in favor of a corporation and against an individual if the evidence supported such a verdict?

16.    In this case, the plaintiff has two claims, one under the federal law Title VII against Pechiney that the jury will decide and another for a denial of long term disability benefits against Pechiney and MetLife that the judge will decide.  The jury will hear evidence on both claims, even though they will only decide the Title VII case.  As a juror, you must be able to disregard any evidence you hear relating to the plaintiff's claim for long term disability benefits and decide the Title VII case only upon the evidence you hear relating to that claim.  Will you be able to do that?

17.    Have you or has any member of your family or anyone close to you ever applied for disability benefits through an employment-related benefit plan or the social security administration?  If so, please explain.

18.    Have you or any member of your family ever been out of work because of a disability?  If so, please explain.

19.    Have you or any member of your family ever sued anyone, or presented a claim against anyone either in or out of court?  If so, please describe the lawsuit(s) and/or the claim(s).

20.    Have you or any member of your family ever been sued by anyone or been threatened with a lawsuit?  If so, please describe the lawsuit and/or the claim(s).

21.    Have you ever had any training in personnel, human resources or employment matters?  If so, what kind of training?

22.    Have you ever been employed in the personnel or human resource office of any company or organization?  If so, in what capacity?

23.    Have you ever owned or operated a business in which you employed other people?

24.    Have you or any member of your family had a job which required you to hire, fire, discipline or supervise employees?

25.    Have you, or has any member of your family or any person close to you, ever presented a claim or grievance against or sued their employer either in or out of court for any reason, including discrimination?  If so, please explain.

26.    Have you or has any member of your family or any person close to you ever been sexually harassed?  If so, please explain.

27.    Have you or any member of your family or any person close to you, ever presented a claim or grievance against or sued their employer on account of sexual harassment?

28.    Do you believe that simply because someone makes a claim of sexual harassment they are telling the truth?

29.     The evidence in this case may include testimony of an emotional nature.  In deciding this case, you must base your decision on the facts and law.  Will you be able to decide this case based on the facts and law, notwithstanding any emotional outbursts in the courtroom, should that happen?

30.     Have you ever been a witness in a lawsuit?  If so, please describe the lawsuit and your role in it.

31.     Do you understand that just because the plaintiff has filed a lawsuit does not mean that she is entitled to recover?

32.     Do you have any commitments that would keep you from serving on the jury in this case?  If so, please describe these commitments.

33.     Have you ever followed a harassment case in the news?  If so, please indicate your feelings about that case.

34.     Have you ever sat on a jury before?  If so, please describe whether the case was civil or criminal, in state or federal court and how the case turned out?

35.     On the basis of what you have learned up to now about this case and the parties who are involved in it, do you have any present feeling in favor of or against any of the parties?

36.     Do you know of any reason or has any occurred to you during this questioning, that might make you doubtful that you can be a completely fair and impartial juror in this case?  If there is, it is your duty to disclose the reason at this time.

37.     Would you substitute your view of the law for what the Judge tells you?  Even if you feel your view is different and right, would you listen to and follow the Judge?

38.     Do you have any reservations about following all of the court's instructions as to the law of this case?  Regardless of any feelings you may have that the law should be something else?

39.     Is there anything about your own history that makes you want to side with one or the other?

        (ii)     <u>Proposed Jury Instructions</u>:

            (a)   Defendant Pechiney's proposed jury instructions are attached hereto as Exhibit A.

DEFENDANT,
PECHINEY PLASTICS PACKAGING, INC.

By _____

Kenneth W. Gage, Esq. (ct12965)
Melissa L. Bellavia, Esq. (ct22319)
Day, Berry & Howard LLP
One Canterbury Green
Stamford, Connecticut 06901
(203) 977-7300 (telephone)
(203) 977-7301 (facsimile)
mlbellavia@dbh.com
Its Attorneys

DEFENDANT,
METROPOLITAN LIFE INSURANCE CO.,
INC.

By _____
Theodore J. Tucci, Esq. (ct. 05249)
ttucci@rc.com
Erin O'Brien Choquette, Esq. (ct. 18585)
echoquette@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel: 860-275-8200
Fax: 860-275-8299

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was mailed this 5th day of January, 2004, via first-class mail, postage prepaid, to:

John J. Evans
30 Oak Street
Stamford, CT 06905

Erin O'Brien Choquette
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103-3597

_____
Melissa L. Bellavia