FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT    2004 SEP 24  P 12: 37

U.S. DISTRICT COURT
HARTFORD, CT.

---

RITA KRUK

                    Plaintiff,

v.

PECHINEY PLASTICS PACKAGING, INC. and
METROPOLITAN LIFE INSURANCE CO., INC.

                    Defendants.

---

NO. 3:02CV121 (AVC)

SEPTEMBER 24, 2004

## MOTION TO QUASH SUBPOENA OF E. FITZGERALD

Edward Fitzgerald, by his counsel, Paul, Hastings, Janofsky & Walker LLP, hereby

moves to quash the subpoena issued to him in this matter, dated September 13, 2004.

### Background

As the Court already is aware, Edward Fitzgerald, a third-party witness, has a previously

scheduled vacation in Europe, starting on September 27, 2004, and his testimony will be

videotaped in accordance with the Court's decision granting Pechiney leave of court for that

deposition. On Thursday, September 16, 2004, Plaintiff's counsel served Mr. Fitzgerald with a

subpoena, commanding his appearance at trial and requesting documents. This was days after

the undersigned notified Plaintiff's counsel that Mr. Fitzgerald was scheduled to be in Europe on

vacation with this wife the week of trial. After an unsuccessful attempt to arrange a videotape

deposition to preserve his testimony at trial, Pechiney moved the Court for leave to do so. That

-1-

motion was granted, and the parties are scheduled to take that deposition by agreement at 1:00

p.m. on September 24th.  Despite being requested to do so, (see letter attached as Exhibit A),

Plaintiff's counsel has not withdrawn the subpoena of Mr. Fitzgerald or otherwise relieved him

from appearing at trial.

### A.    Subpoena Requiring The Appearance Of Mr. Fitzgerald At Trial Should Be Quashed

"On motion made promptly, the court may quash or modify the subpoena if compliance

would be unreasonable or oppressive." (internal citations omitted) United States v. Grass, 1:CR-

02-146-04, 2003 U.S. Dist. LEXIS 5195 (M.D. Pa., February 12, 2003) (granting third party's

motion to modify and partially quash a subpoena in light of the unnecessary requests by the

government.).  In light of Mr. Fitzgerald's pending videotape deposition, the refusal of Kruk's

counsel to withdraw the subpoena in question is both unreasonable and oppressive.  Pechiney's

counsel has agreed with Plaintiff's counsel to a time to conduct the examination of Mr.

Fitzgerald, and his testimony therefore will be preserved on videotape, in addition to the

deposition already taken by Plaintiff's counsel during discovery.

"Additionally, the status of a witness as a non-party to the underlying litigation entitles

the witness to consideration regarding expense and inconvenience." Night Hawk Ltd. v.

Briarpatch Ltd., L.P., 03 Civ. 1382 (RWS), 2003 U.S. Dist. LEXIS 23179, at * 23 (S.D.N.Y.

December 23, 2003) (internal citations and quotation marks omitted).[1]  Mr. Fitzgerald has been

exceedingly gracious throughout this process.  The insistence of Kruk's counsel to require the

appearance of Mr. Fitzgerald at trial when his testimony is plainly no longer required is

---

[1] Copies of unreported decisions are attached as Exhibit B.

-2-

reprehensible.[2] Without intervention by this court, Mr. Fitzgerald will most likely be required to undergo a videotape examination on Friday, September 24th and then repeat the exact process days later during the trial in this matter.

WHEREFORE, Edward Fitzgerald respectfully requests that the subpoena, dated September 13, 2004, requiring his appearance at the trial of this matter be quashed.

THIRD-PARTY WITNESS
EDWARD FITZGERALD

DATED:  September 24, 2004          By: _____

Kenneth W. Gage, Esq. (ct12965)
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, Connecticut  06901
(203) 961-7400 (telephone)
(203) 359-3031 (facsimile)
kennethgage@paulhastings.com
Their Attorneys

---

[2] Sanctions are properly imposed and attorney's fees can be awarded where, as here, a party issuing a subpoena refused to withdraw it, requiring the non-party to institute a motion to quash. *See* Am. Int'l Life Assur. Co. v. Vazquez, No. 02 Civ. 141, 2003 U.S. Dist. LEXIS 2680, at *2-3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions for lost wages and awarding attorney's fees incurred in bringing motion to quash after attorney issuing subpoena refused to comply with non-party's request to voluntarily withdraw subpoena).

Exhibit

A

— cont'd

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO           1040
CONNECTION TEL     ████#██████#████████
CONNECTION ID      EVANS_LAW OFFICE
ST. TIME           09/22 11:56
USAGE T            00'22
PGS. SENT          2
RESULT             OK
```

Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard, Stamford, CT 06901-2217
telephone 203-961-7400 / facsimile 203-359-3031 / www.paulhastings.com

Paul Hastings

## FACSIMILE TRANSMISSION

| from: | facsimile: | telephone: | initials: |
|---|---|---|---|
| Kenneth W. Gage | (203) 359-3031 | (203) 961-7475 | KWG |

client name: Pechiney Plastics Packaging, Inc.     client matter number:   56602.00002

date:   September 22, 2004     pages (with cover):   2

| to: | company/office: | facsimile: | telephone: |
|---|---|---|---|
| John J. Evans, Esq. | Evans Law Offices LLC | (203) 359-4597 | (203) 353-8880 |

comments:

Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard, Stamford, CT 06901-2216
telephone 203-961-7400 / facsimile 203-359-3031 / internet www.paulhastings.com

# Paul|Hastings

Atlanta
Beijing
Hong Kong
London
Los Angeles
New York
Orange County
San Diego
San Francisco
Stamford
Tokyo
Washington, D.C.

(203) 961-7475
kennethgage@paulhastings.com

September 22, 2004                                               56602.00002

VIA FACSIMILE AND REGULAR MAIL

John J. Evans, Esq.
Evans Law Offices, LLC
30 Oak Street
Stamford, CT 06905

Re:    Kruk v. Pechiney Plastics Packaging, Inc., et al.

Dear Attorney Evans:

In light of the Court's rulings on Pechiney's Motion for Leave to Videotape Mr. Fitzgerald's
Testimony and your Emergency Motion for Protective Order, we specifically ask that you
notify Mr. Fitzgerald in writing that you are withdrawing the subpoena contingent upon his
appearance at this deposition and that he no longer is obligated to appear in court.

We trust that you will do this and that you will not force us to file a motion to quash that
subpoena.  Please also fax to me a copy of any letter that you may send to Mr. Fitzgerald,
indicating that you are withdrawing the subpoena.  If I do not receive such a letter before 5:00
p.m. today, I will be forced to file a motion to quash the subpoena.  If I have to do that, we will
ask the Court to award costs and attorneys fees associated with the filing of that motion.

Very truly yours,

Kenneth W. Gage
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

KWG:dd

STM/282387.1

Exhibit
B

15 of 44 DOCUMENTS

**UNITED STATES OF AMERICA v. MARTIN L. GRASS, FRANKLIN C. BROWN, FRANKLYN M. BERGONZI, and ERIC SORKIN**

**CRIMINAL NO. 1:CR-02-146-01, 1:CR-02-146-02, 1:CR-02-146-03, 1:CR-02-146-04**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

*2003 U.S. Dist. LEXIS 5195*

**February 12, 2003, Decided
February 12, 2003, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *United States v. Grass, 2003 U.S. Dist. LEXIS 5184* (M.D. Pa., Feb. 14, 2003)

**PRIOR HISTORY:** *United States v. Grass, 2003 U.S. Dist. LEXIS 5196* (M.D. Pa., Feb. 11, 2003)

**DISPOSITION:** [*1] Rite Aid Corporation's motion to quash defendants' *Rule 17(c)* subpoena granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant, former corporate officers and directors, were charged in a 37-count indictment for engaging in conspiracies to defraud the corporation, its shareholders, creditors, and vendors, and to obstruct justice. Defendants issued a third-party subpoena duces tecum on the corporation. The corporation moved to quash the subpoena pursuant to *Fed. R. Civ. P. 17(c)(2)*.

**OVERVIEW:** The corporation argued, in part, that compliance with the subpoena's 73 document requests would be unreasonable and oppressive. The court found that compliance with the subpoena, as written, would produce an undue burden and would be oppressive because it would mean turning over every document ever produced during defendants' tenure. Consequently, the court limited the time periods for all of the requests. The corporation also argued that the documents relating to advice of counsel were protected by the attorney-client privilege and/or the attorney work-product doctrine.

However, the corporation and its attorneys had waived any such protection by disclosing the results of the corporation's internal investigation to governmental officials. As to one defendant who was only charged on the obstruction counts, the court quashed the subpoena, except as to one paragraph as all other requests were not relevant to him.

**OUTCOME:** The court granted in part and denied in part the corporation's motion to quash the subpoena. The corporation was directed to produce the documents in response to certain discovery requests as time limited by the court; the subpoena was quashed in all other respects.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Martin L. Grass, Defendant: Mark T. Stancil, Mary C. Spearing, Rebecca H. Ewing, William H. Jeffress, Baker Botts LLP, Washington, DC USA.

For Martin L. Grass, Defendant: Virginia Beach, VA USA.

For Franklin C. Brown, Defendant: April A. Oliver, Erik L. Kitchen, Matthew L. Stennes, Reid H. Weingarten, Steptoe & Johnson, LLP, Washington, DC USA.

For Franklin C. Brown, Defendant: Joseph U. Metz, Dilworth Paxson LLP, Franklin C. Brown, Harrisburg, PA USA.

For Franklyn M. Bergonzi, Defendant: Franklyn M. Bergonzi, Hummelstown, PA USA.

For Franklyn M. Bergonzi, Defendant: Ira H. Raphaelson, O'Melveny & Myers LLP, William J. Stuckwisch, O'Melveny & Meyers LLP, Washington, DC USA.

For Franklyn M. Bergonzi, Defendant: William John Fulton, Harrisburg, PA USA.

For Eric S. Sorkin, Defendant: David Meister, John K. Carroll, Clifford Chance Rogers & Wells LLP, Larry Iason, New York, NY USA.

For Eric S. Sorkin, Defendant: Eric S. Sorkin, Mechanicsburg, PA USA.

For Eric S. Sorkin, Defendant: Joshua D. Lock, Harrisburg, PA USA.

U. S. Attorneys: [*2] Kim Douglas Daniel, U.S. Attorney's Office, Harrisburg, PA.

**JUDGES:** SYLVIA H. RAMBO, United States District Judge.

**OPINIONBY:** SYLVIA H. RAMBO

**OPINION:**

### MEMORANDUM and ORDER

Before the court is Rite Aid Corporation's [hereinafter "Rite Aid"] motion to quash the third-party subpoena *duces tecum* issued by Defendants pursuant to *Federal Rule of Criminal Procedure 17(c)(2)*. n1 The background of this case is well known, however, the following is relevant to the subpoena at issue: On June 21, 2002, a federal grand jury sitting in Harrisburg, Pennsylvania issued a thirty-seven count indictment against four Defendants, all former officers and directors of the Rite Aid Corporation. n2 Collectively, Counts 1 through 32 of the indictment allege that Defendants Brown, Grass and Bergonzi, engaged in a massive accounting fraud designed to defraud Rite Aid, its shareholders, creditors, and vendors. Count 33 of the indictment alleges that Defendants Brown, Grass and Sorkin engaged in a criminal conspiracy to obstruct ongoing investigations by the United States Securities and Exchange Commission ("SEC"), the Federal Bureau of Investigation ("FBI"), and the Grand Jury. The indictment also alleges that [*3] Defendants Brown and Grass obstructed a grand jury proceeding (Count 34), obstructed a government agency proceeding (Count 35), and engaged in witness tampering (Count 36). Count 37 alleges that Defendant Sorkin made false declarations before the Grand Jury.

n1 The Federal Rules of Criminal Procedure were amended as of December 1, 2002. The advisory committee notes accompanying *Rule 17* indicate that the changes to that rule are intended to be stylistic only except for insertion of the word "data" into *Rule 17(c)(1)*. Accordingly, the court's citation to *Rule 17(c)(2)* refers to the rule as amended.

n2 Defendant Sorkin is still employed by Rite Aid, but is currently on unpaid leave.

On November 14, 2002, Defendant Bergonzi filed a motion for *Rule 17(c)* subpoenas seeking authorization to serve a subpoena *duces tecum* upon Rite Aid. Defendants Grass, Brown and Sorkin joined the motion by Notice dated November 20, 2002. The Government did not oppose the issuance of the subpoena but requested that it be limited [*4] in scope to only those records that pertain to fiscal years 1990 through the present. By order dated December 19, 2002, the court granted Defendants' motion and set a return date for the subpoenas as January 31, 2003. In that order, the court stated that "if [Rite Aid] feels that compliance would be unreasonable or oppressive they are free to petition the court to quash or modify the subpoenas under *Fed. R. Crim. P. 17(c)(2)*." *United States v. Grass, et al*, Nos. 02-146-01, 02, 03, 04, slip op., order at 1 (M.D. Pa. Dec. 19, 2002).

On December 30, 2002, Defendants served Rite Aid with a subpoena requesting seventy-three categories of documents. On January 24, 2003, Rite Aid filed a motion to quash the third-party subpoena *duces tecum*. On that same day, the court issued an order staying Rite Aid's compliance with the subpoena pending resolution of the instant motion. The court received Defendants' response on February 3, 2003. On February 7, 2003, the court held a conference call with the parties. During that call, the court requested that Defendants submit a memorandum, *in camera,* outlining the relevance of certain requests. On February 11, 2003, the court received Defendants [*5] *in camera* submission.

Rite Aid argues that compliance with the subpoena's seventy-three document requests would be unreasonable and oppressive. In support of this allegation, Rite Aid submitted an affidavit from Douglas Donley, Vice President-Corporate Comptroller of Rite Aid. That affidavit states that Donley "coordinated the extensive search for documents responsive to the Government's subpoenas and other document requests ... which consumed nearly six months and ... resulted in the production of over 450,000 documents related to Rite Aid's accounting." (Decl. of Douglas Donley at p.1, P 3.) The affidavit further states that "I have reviewed the

Case 3:02-cv-00121-AVC     Document 106     Filed 09/24/2004     Page 10 of 24

Page 3
2003 U.S. Dist. LEXIS 5195, *

seventy-three paragraph subpoena *duces tecum ...* and discussed the feasibility of compliance with various Rite Aid personnel ... Compliance with [that] subpoena ... would be far more burdensome than compliance with the [Government's] requests." (*Id.* at p. 2, P 4.)

Moreover, Rite Aid argues that the subpoena is "fraught with open-ended requests" which "utterly lack the requisite specificity and plainly contravene the requirements of *Rule 17(c)*." (Rite Aid's Br. in Sup. of Mot. to Quash at 6.) Finally, Rite Aid argues that [*6] some of the requests "render compliance with the subpoena unreasonable because they seek privileged documents." (*Id.* at 9.)

In response, Defendants argue that the subpoena satisfies *Rule 17(c)* because it "seeks relevant, admissible, and specific documents within the meaning of *United States v. Nixon, 418 U.S. 683, 697-98, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974)*, and its progeny." (Defs. Br. in Opp. to Rite Aid's Mot. to Quash at 4.) Defendants argue that phrasing such as "all documents" does not violate *Rule 17(c)* and was used so as to prevent Rite Aid from "withholding documents undermining its and the government's claim that Rite Aid's new financials are 'correct' and its old financials were 'false.'" (*Id.* at 6.) Defendants also argue that the subpoena is not unreasonable or oppressive because the burden of producing the subpoenaed records does not greatly outweigh any relevance they may have in the instant case. (*Id.* at 11 citing *United States v. Hardy, 224 F.3d 752, 756 (8th Cir. 2000)*.) In response to Rite Aid's privilege argument, Defendants argue that Rite Aid waived any privilege it might have over the documents sought by Requests [*7] 23 and 72 "by disclosing the allegedly privileged matter to the government and to Deloitte auditors." (*Id.* at 14.)

"On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." *Fed. R. Crim. P. 17(c)(2)*. It is nearly axiomatic that *Rule 17(c)* is not intended to be a discovery device in criminal cases. *See Bowman Dairy Co. v. United States, 341 U.S. 214, 220, 95 L. Ed. 879, 71 S. Ct. 675 (1951)*; *United States v. Nixon, 418 U.S. 683, 698-99, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974)*. Rather, it is a means to "expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon, 418 U.S. at 698-99.*

In order to require production prior to trial, the moving party must show that the subpoenaed documents are (1) relevant, (2) admissible, and (3) requested with adequate specificity. *Id.* at 700. "These specificity and relevance elements require more than the title of a document and conjecture as to its contents." *United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992).*

Finally, even if the subpoenaing [*8] party meets the minimum requirements of relevance, admissibility and specificity, the court may nonetheless quash the subpoena if it finds that the burden of producing the subpoenaed records greatly outweighs any relevance they may have to the case. *United States v. Hardy, 224 F.3d 752, 756 (8th Cir. 2000).*

After reviewing the subpoena at issue the court finds that compliance with the subpoena, as written, would produce an undue burden and would be oppressive to Rite Aid. If the court were to order Rite Aid to fully comply with the subpoena, it would essentially be asking Rite Aid to turn over every document ever produced during Defendants' tenure at Rite Aid. Accordingly, the court will grant Rite Aid's motion in part and deny it in part.

Specifically, the court will limit the time periods for all of the requests. Some of Defendants' requests seek data from as far back as 1969 and 1970. (*See* Subpoena at PP 2 and 51.) Many other requests seek information relating back as far as twelve years, covering large periods of time not covered by the indictment and not coinciding with Defendants' positions at Rite Aid. Ordering production this vast in scope would be overly [*9] burdensome to Rite Aid and, thus, inconsistent with *Rule 17*. However, there are certain requests the court can modify so as to make them less burdensome. By adjusting the relevant time periods to more narrowly fit the parameters of the indictment, the court can alleviate much of the burden to Rite Aid.

Rite Aid also contends that the documents generated by Swidler, Berlin, Shereff & Friedman, LLP ("Swidler Berlin") - as well as documents relating to advice by their General Counsel - are protected from production by the attorney-client privilege and/or the attorney work-product privilege. The attorney-client privilege protects confidential communications made to an attorney in his or her professional capacity in those instances in which a strict relationship between the attorney and the client exists. *Haines v. Liggett Group, Inc., 975 F.2d 81, 94 (3d Cir. 1992)* (citations omitted). However, the attorney-client privilege can be waived "if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication." *In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 468 (S.D.N.Y. 1996)* (quotation [*10] omitted). In this case, Rite Aid waived the privilege by disclosing the results of its internal investigation to Governmental officials. Thus, it cannot now avoid production on the basis of the attorney-client privilege.

Likewise, Rite Aid's documents do not fall within the ambit of protected attorney work-product. The doctrine of work product immunity "'shelters the mental

processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998)* (quoting *United States v. Nobles, 422 U.S. 225, 238, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975))*. The doctrine applies in both civil and criminal litigation. *Nobles, 422 U.S. at 238.* The work product doctrine also applies to work product prepared by an attorney's agent so long as the agent prepared the document in anticipation of litigation. *Kelly v. Ford Motor Co. (In re Ford Motor Co.), 110 F.3d 954, 967 (3d Cir. 1997).* However, it is the attorney and the client who hold the privilege and, here, both Swidler Berlin and Rite Aid waived this protection by divulging the results [*11] of their investigation to Government officials.

Finally, the court will quash the motion, as it relates to Defendant Sorkin in all but two instances. Although he joined in this motion, Defendant Sorkin is not charged with participating in the alleged fraud conspiracy. Instead, he is charged with conspiracy to obstruct justice and with making false declarations to the Grand Jury. Most of the documents Defendants seek relate only to the alleged accounting fraud and accounting conspiracy, and consequently, are irrelevant to Defendant Sorkin. Accordingly, as far as the subpoena relates to Defendant Sorkin, the court will quash it except as to paragraph 70. The court will order that the documents requested in this paragraph be the first documents that Rite Aid produces.

In accordance with the preceding discussion, **IT IS HEREBY ORDERED THAT** the Rite Aid Corporation's motion to quash Defendants' Rule 17(c) subpoena is **GRANTED IN PART, AND DENIED IN PART,** as follows:

(1) Rite Aid shall produce or otherwise make available for Defendants to inspect, the documents requested in paragraphs 1, 10, 24-27, 29, 31-36, 38, 41-43, 50, 64-65, and 71-72.

(2) Rite Aid shall produce or otherwise [*12] make available the documents requested in the following paragraphs, as modified below:

(a) Paragraph 2, but limited only to fiscal years 1995 through 2001;

(b) Paragraph 11, but limited only to those accounts that are considered "reconfigured" accounts;

(c) Paragraphs 12-17, but limited only to fiscal years 1995 through 2001;

(d) Paragraphs 21-23, but limited solely to fiscal years 1997 through present;

(e) Paragraph 37, but limited solely to fiscal years 1998 through 2001;

(f) Paragraphs 39-40, but limited solely to fiscal years 1998 through 2001;

(g) Paragraphs 46-47, but limited solely to fiscal years 1995 through 2001;

(h) Paragraph 51, but limited solely to fiscal years 1990 through present;

(i) Paragraph 52, but limited solely to fiscal years 1995 through 2001;

(j) Paragraphs 55, but limited solely to fiscal years 1995 through 2001;

(k) Paragraph 59, but limited solely to fiscal year 1999;

(l) Paragraphs 61 and 62, but limited solely to fiscal year 1999; and

(m) Paragraph 70, provided that Defendants produce a list of then specific e-mails that were excluded from Rite Aid's earlier production to the SEC.

[*13]

(3) The subpoena is **QUASHED** in all other respects. However, nothing in this order prohibits Defendants and Rite Aid from working out a more favorable methodology of production. In fact, Rite Aid and Defendants are encouraged to enter into an iterative process as to all of the requested items.

(4) As the subpoena relates to Defendant Sorkin, it is **QUASHED** in all respects except as to paragraph 70. With regard to this paragraph, Rite Aid's compliance is conditioned on Defendants providing it with a list of the omitted e-mails. That list shall be provided no later than February 21, 2003. Because of Defendant Sorkin's pending trial, Rite Aid shall comply with those requests by March 1, 2003.

(5) With the exception of paragraph 6, *supra,* production or other availability shall be completed within sixty (60) days of the date of this order.

SYLVIA H. RAMBO

United States District Judge

Dated: February 12, 2003

LEXSEE 2003 U.S. DIST. LEXIS 23179

**NIGHT HAWK LIMITED and D.M. THOMAS, Plaintiffs, - against - BRIARPATCH LIMITED, L.P. and GERARD F. RUBIN, Defendants.**

**03 Civ. 1382 (RWS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 23179; Copy. L. Rep. (CCH) P28,722*

**December 23, 2003, Decided
December 30, 2003, Filed**

**SUBSEQUENT HISTORY:** Motion denied by, Sanctions allowed by, in part, Sanctions disallowed by, in part *Night Hawk Ltd. v. Briarpatch Ltd., L.P., 2004 U.S. Dist. LEXIS 11109 (S.D.N.Y., June 17, 2004)*

**PRIOR HISTORY:** *Night Hawk Ltd. v. Briarpatch Ltd., L.P., 263 F. Supp. 2d 700, 2003 U.S. Dist. LEXIS 8409 (S.D.N.Y., 2003)*

**DISPOSITION:** Defendants' cross-motion to dismiss for failure to join indispensable party granted. Plaintiff's motions for preliminary injunction and summary judgment denied. Non-party's motion to quash defendants' subpoena and for sanction of attorney's fees granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff author and production company sued defendant limited partnership and partner alleging that they had tortiously interfered with the author's copyright and movie production rights in the author's novel. The author moved for a preliminary injunction and summary judgment. The partnership and partner cross-moved to dismiss the complaint. Non-party individual moved for an order to quash a subpoena issued by the partnership and partner.

**OVERVIEW:** The court lacked jurisdiction to consider the claims because the production company, which was dismissed from the action for failure to provide discovery, was an indispensable party given its status as a licensee. Moreover, if the production company had

been joined in the action, diversity jurisdiction would have been lacking. In addition, the author's tortious interference with contract claim lacked merit as the partnership's and partner's state court adjudicated movie development rights provided an economic justification for sending parties notice of their interests in projects involving the novel and related adjudications. The prima facie tort claim failed as the author had not pled any evidence of intentional infliction of harm and there was a business justification for the partnership's and partner's actions. The intentional infliction of emotional distress claim failed as the author had failed to identify any maligning statements and to whom they were made. The individual's motion to quash the subpoena and for attorney's fees was granted as the information concerning the production company was irrelevant and the request imposed an undue burden on the individual.

**OUTCOME:** The partnership's and partner's cross-motion to dismiss was granted for failure to join an indispensable party. The author's motions for preliminary injunction and summary judgment were denied. The individual's motion to quash the subpoena and for attorney's fees was granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] VERNER SIMON P.C., Attorneys for Plaintiffs, New York, NY. By: PAUL W. VERNER, ESQ., Of Counsel.

2003 U.S. Dist. LEXIS 23179, *; Copy. L. Rep. (CCH) P28,722

DEYAN R. BRASHICH, ESQ., Attorney for Defendants, New York, NY. BARRY L. GOLDIN, ESQ., Attorney for Defendants, Allentown, PA.

JUDGES: ROBERT W. SWEET, U.S.D.J.

OPINIONBY: ROBERT W. SWEET

OPINION: Sweet, D.J.,

Plaintiff D.M. Thomas ("Thomas") has moved (1) under Rule 65, Fed. R. Civ. P., to enjoin defendants Briarpatch Limited, L.P. ("Briarpatch") and Gerard F. Rubin ("Rubin") (the "Defendants") from communicating with third parties with respect to the rights relating to the novel The White Hotel written by Thomas, and (2) under Rule 56, Fed. R. Civ. P., for summary judgment declaring the entitlement of Thomas to the rights relating to the novel The White Hotel. Briarpatch and Rubin have cross-moved under Rules 8, 12, 13, 19 and 42, Fed. R. Civ. P., to dismiss the complaint for lack of jurisdiction and failure to state a cause of action, and to dismiss, remand or stay this action on abstention grounds, and to strike as untimely certain of the materials submitted [*2] by Thomas. Non-party Kathryn J. Donohue ("Donohue") has moved, pursuant to Fed. R. Civ. P. 45, for an order quashing the subpoena, dated May 22, 2003 and issued to her by attorney for Defendants (the "Subpoena"). Donohue further requests the imposition of sanctions on Defendants in the amount of her attorneys' fees and expenses incurred in connection with the Subpoena and this motion. As explained below, Defendants' cross-motion to dismiss is granted for failure to join an indispensable party, and Thomas's motions for preliminary injunction and summary judgment are denied. Donohue's motion to quash the subpoena is granted.

This action is the latest iteration of litigation which has spun out of control arising out of the relationship between Rubin and Robert Geisler ("Geisler") and John Roberdeau ("Roberdeau") and their joint effort to find and create theatrical productions. These actions include Night Hawk Ltd. v. Briarpatch Ltd., L.P., 263 F. Supp. 2d 700 (S.D.N.Y. 2003); Briarpatch Ltd., L.P. v. Thomas, 265 F. Supp. 2d 219 (S.D.N.Y. 2003); Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., No. 99 Civ. 9623,2002 U.S. Dist. LEXIS 20789 (S.D.N.Y. Oct. 31, 2002); [*3] Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., 194 F. Supp. 2d 246 (S.D.N.Y. 2002); Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., 148 F. Supp. 2d 321 (S.D.N.Y. 2001); Briarpatch, Ltd., L.P. v. Stage Fright, LLC, 86 F. Supp. 2d 368 (S.D.N.Y. 2000); Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc., No. 99 Civ. 9623, 2000 U.S. Dist. LEXIS 2300 (S.D.N.Y. Mar. 3, 2000); Briarpatch

Ltd., L.P. v. Pate, 81 F. Supp. 2d 509 (S.D.N.Y. 2000). Neither court decisions, reason nor economics have brought an end to this flow of litigation. Roberdeau is now deceased.

Prior Proceedings

Certain of the prior proceedings involving Briarpatch, Rubin, Geisler and Roberdeau are referred to above and will not be further described except as may be required in the context of this action. Night Hawk Ltd. and Thomas filed this action on February 28, 2003, and it was referred to this Court as a related case. The complaint alleged that Thomas, Briarpatch and Rubin, through their attorney Barry L. Goldin ("Goldin"), possessed the copyright for Thomas's novel The White House, had granted a license [*4] to Night Hawk to enable it to mount a movie production of the novel, and that Night Hawk had taken steps toward the production with which Briarpatch and Rubin tortiously interfered. The instant motions followed shortly thereafter.

The Defendants cross-moved seeking dismissal and abstention on the basis of a pending state court action, Briarpatch Limited, L.P. and Gerard F. Rubin v. D.M. Thomas, D.M. Thomas, Ltd., Briarpatch Film Corp., Robert M. Geisler, Verner Simon, P.C. and Paul Verner, Index No. 603364/01, Supreme Court of the State of New York, County of New York (the "State Court Action"), which Briarpatch and Rubin filed on July 6, 2001 seeking a declaration concerning their rights with respect to The White Hotel and any movie production based upon it. Briarpatch Film Corp. ("BFC"), filed in bankruptcy, and on the basis of that filing, the Defendants removed the State Court Action; the bankruptcy filing was dismissed as filed in bad faith, and the State Court Action was remanded on August 14, 2002. In re Briarpatch Film Corp., 281 B.R. 820 (2002). The first amended complaint in the State Court Action, among other things, alleged a constructive trust [*5] and contempt with respect to the rights relating to The White Hotel. The constructive trust was alleged to have been determined in the first state court action which was initiated in the Supreme Court of the State of New York, County of New York, entitled Briarpatch Ltd., L.P. and Gerard F. Rubin v. Robert Geisler and John Roberdeau, Index No. 606156/99 (the "Original Action") and later consolidated under Index No. 603820/99 (the "Main Action"). After trial a judgment was entered stating that,

> as of January 1, 1994 all beneficial right, title and interest of the . . . Projects reside . . . with the Partnership.

The Projects were defined in the judgment to include The White Hotel.

2003 U.S. Dist. LEXIS 23179, *; Copy. L. Rep. (CCH) P28,722

After the State Court Action was remanded to the state court by the Bankruptcy Court, the Defendants in this action, Briarpatch and Rubin, moved to dismiss for lack of diversity, alleging that Night Hawk was an alter ego of Geisler, a New York resident. Discovery on jurisdiction was ordered by an opinion of May 20, 2003 (the "May Opinion"). Night Hawk failed to appear, and by notice of dismissal of June 24, 2003, Night Hawk, Ltd. dismissed its action, leaving Thomas as the sole [*6] plaintiff.

Thomas's motions for preliminary injunction and summary judgment and the Defendants' cross-motions to dismiss were heard and marked fully submitted on August 13, 2003. On August 27, 2003, Donohue additionally submitted a motion to quash her subpoena.

## The Facts

A mound of affidavits has been submitted by the Defendants, up to a Fifth Supplemental Affidavit. Thomas has submitted a *Local Rule 56.1* Statement. From these are drawn the facts which follow with contested issues noted.

The judgment of October 14, 1999 in the Main Action granted a constructive trust in the projects of the partnership, including The White Hotel.

Thomas is the author of The White Hotel and in March 1986 entered into a Motion Pictures Rights Agreement granting an option to the copyright to The White Hotel to Geisler and Roberdeau (the "Agreement"). The Agreement provided in Paragraph 17:

> REVERSION - If . . . the Purchaser shall have failed to commence principle [sic] photography on any motion picture version or television production . . . within that period which terminates on the tenth anniversary of the date of the Purchaser's exercise of the Option contained in [*7] the Option Agreement . . . then, any and all rights of any nature in and to the Work granted to the Purchaser by the Author hereunder shall revert automatically to the Author for his sole use and disposition without any further obligation of any kind to the Purchase.

In 1988 Geisler and Roberdeau conveyed their rights to Briarpatch Film Corp. ("BFC"). According to an exhibit to the Thomas complaint, the option was exercised by BFC on July 10, 1991.

According to Thomas's Local Rule 56.1 Statement, the BFC rights to The White Hotel were acquired by Monty Montgomery ("Montgomery") after a BFC default

on a security agreement, and Montgomery registered the assignment of the copyright in January 1994. Samuel Myers ("Myers"), an attorney, put together a group to acquire Montgomery's rights (according to Rubin, Myers is a "straw man" for Geisler) on March 15, 1994. Myers registered the assignment of the copyright.

On July 2, 2001, the Defendants sent a notice to Thomas asserting their claim to rights to The White Hotel project. By the Book Option Agreement dated July 11, 2001, Thomas granted Night Hawk Limited an option to purchase all television, motion picture and ancillary [*8] rights related to The White Hotel. The Book Option Agreement granted these rights during an initial option period which could be extended for two additional periods of 12 months upon the occurrence of certain events.

On January 8, 2003, counsel for Briarpatch and Rubin sent correspondence and copies of decisions relating to Geisler and Roberdeau to counsel for Night Hawk, and similar materials were sent to Andrew Birkin and his agent, with whom Night Hawk had contracted for work on the Peter Pan/The Boy Castaways Project. On January 24, 2003, letters were also sent to David Cronenberg ("Cronenberg"), with whom Night Hawk had contracted for writing and directional services in connection with The White Hotel. Cronenberg's counsel on February 4, 2003, citing an offering memorandum of November 8, 2002 and the materials concerning Geisler and Roberdeau, advised that Cronenberg was not prepared to go forward with the project at that time.

## I. The Absence of an Indispensable Party Deprives the Court of Jurisdiction

Defendants' motion to dismiss is granted as Night Hawk is an indispensable party. Under *17 U.S.C. § 501(b)*, "the [*9] court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright." Thus, as under the Federal Rules, the court in a copyright infringement action has discretion as to whether to require joinder of a person having or claiming an interest in the copyright. Melville Nimmer & David Nimmer, Nimmer on Copy on Copyright § 12.03, at 12-67 (2003). "Absent special circumstances joinder should be required in cases challenging the validity of the copyright upon which rest the rights of the person to be joined and should not be required if the only issue is whether the defendant engaged in unlawful copying." *Wales Indus. Inc. v. Hasbro Bradley, Inc.*, 612 F. Supp. 510, (S.D.N.Y. 1985). See also Nimmer at 12-68; *Whitney, Atwood, Norcross Assoc. Inc. v. Architects Collaborative, Inc.*, 1991 U.S. Dist. LEXIS 225, 18 U.S.P.Q.2d 1243, 1245 (D. Mass.

2003 U.S. Dist. LEXIS 23179, *; Copy. L. Rep. (CCH) P28,722

1991); P & D Int'l v. Halsey Pub'g Co., 672 F. Supp. 1429, 1435 (S.D. Fla. 1987).

Here, Thomas is not only alleging an infringement by Defendants, but issues are raised as to the validity of Thomas's copyright and the status of rights [*10] subsequently gained by Night Hawk. The complaint thus seeks declaratory relief in the name of and for Night Hawk. The complaint's seventh cause of action (entitled "Declaratory Judgment-Contracts-Derivative Works") expressly seeks declaratory judgment in the name and on behalf of Night Hawk against the partnership and Rubin as to rights in contracts, screenplays, production, and other rights. (Comp. P 151):

> (c) That Thomas licensed his copyright to his novel "The White Hotel" to Night Hawk effective July 11, 2001 and that defendants, BLLP and Rubin have no valid claim to any copyright to "The White Hotel" as . . . licensed by him to Night Hawk effective July 11, 2001.
>
>     . . .
>
> (g) That defendants, BLLP and Rubin, therefore have no valid claim to any contracts respecting . . . "The White Hotel" . . . as owned by Thomas . . . and as acquired by Night Hawk as set forth above.
>
> (h) That defendants, BLLP and Rubin, therefore have no valid claim to any derivative work such as screenplays to be written based upon such contracts respecting . . . "The White Hotel" . . . as owned by Thomas . . . and as acquired by Night Hawk as set forth above.
>
> (i) That defendants, BLLP and [*11] Rubin, therefore have no valid claim to any other Night Hawk productions' derivative works, screenplays, or properties as to which no ownership or copyright can be demonstrated by BLLP and Rubin to such derivative works such as screenplays to be written based upon copyrights and contracts owned by Night Hawk; and
>
> (j) That Night Hawk and Thomas are legally entitled to produce their entertainment Projects as supported by the aforesaid ownership and licenses of the copyrights to "The White Hotel" . . . and

contracts entered into in reliance upon title to copyright, without any interference, threats of suit, claim of copyright or contract or derivative work ownership or other written or oral contact being made by defendants BLLP and Rubin through communications by BLLP and Rubin . . . with persons or entities associated with the Night Hawk productions . . .

Furthermore, Briarpatch alleges that Night Hawk is Geisler's alter ego and that Geisler is under an order from the state court to treat the White Hotel Project as an asset of Briarpatch. Thus, if Night Hawk is Geisler's alter ego, it is obligated to hold the rights for the benefit of Briarpatch. Night Hawk as a licensee holding [*12] Thomas's right is thus indispensable to accomplish a resolution between the parties.

Bevan v. Columbia Broad. Sys., Inc., 293 F. Supp. 1366 (S.D.N.Y. 1968) is inapplicable here. In the Bevan case, plaintiffs entered into an agreement with Paramount, assigning to Paramount certain copyright interests in a play, including all motion picture rights. Plaintiffs sought to join Paramount as an indispensable party in a copyright infringement suit since the defendants maintained that Paramount, rather than plaintiff, was the real party in interest. Plaintiffs wanted to assert a claim against Paramount since if it is found to be the true owner of copyright interests, it failed to protect its rights, thereby damaging plaintiffs'. Id. at 1367. The court held that Paramount could not be forced to join as an indispensable party since "it is abundantly clear that plaintiffs have failed to show in [that] in Paramount's absence complete relief cannot be accorded among those already parties." Id. at 1368. Furthermore, plaintiffs lacked standing to impose joinder in order to protect Paramount from incurring "double, multiple, or otherwise inconsistent [*13] obligations." Id. at 1369.

Here, the records shows that Night Hawk as a licensee holding Thomas's right is indispensable to accomplish a resolution between the parties. This is especially apparent in light of Briarpatch's allegation that Night Hawk is Geisler's alter ego. Indeed, Night Hawk was originally a party and withdrew in order to avoid discovery. Furthermore, here Defendants, not plaintiffs, are the ones seeking to join Night Hawk as an indispensable party, and they have standing to take steps to protect themselves from incurring "double, multiple, or otherwise inconsistent obligations" from Thomas and Night Hawk under Fed. R. Civ. P. 19(a).

Night Hawk is thus an indispensable party. However, as Night Hawk has already been dismissed by this Court for failure to provide discovery as to diversity

Case 3:02-cv-00121-AVC    Document 106    Filed 09/24/2004    Page 16 of 24

Page 5

2003 U.S. Dist. LEXIS 23179, *; Copy. L. Rep. (CCH) P28,722

jurisdiction, this action must be dismissed, either because indispensable party Night Hawk is not present as required under *Rule 19* (having been dismissed for failure to provide jurisdictional discovery), or, in the alternative, because if Night Hawk is joined, diversity jurisdiction is lacking.

## II. There is Insufficient [*14] Evidence of Tortious Conduct by Defendants

Additionally, there is insufficient evidence of tortious conduct by Defendants. Thus, Thomas's motion for preliminary injunction is denied in the absence of probability of success or sufficiently serious questions on the merits, and Thomas's motion for summary judgement is likewise dismissed.

### A. Preliminary Injunction Standard

Motions for preliminary injunction are governed by *Fed. R. Civ. P. 65*. A party "must show that it will suffer irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and balance of hardships tipping decidedly in the moving party's favor." *Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999)*. Here, Thomas cannot demonstrate likelihood of success or serious questions going to the merits as there is insufficient evidence of tortious conduct by Defendants.

### B. Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party [*15] is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; see generally 6 James Wm. Moore, et al., Moore's Federal Practice P 56.15 (2d ed. 1983). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.

The moving party has the burden of showing that there are no material facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *Bickhardt v. Ratner, 871 F. Supp. 613 (S.D.N.Y. 1994)* (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986))*. Thus, "summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a

matter of law." *Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993)*. [*16]

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997)*

### C. Discussion

The tort claims at issue are based on correspondence and copies of decisions, relating to Geisler and Roberdeau, that counsel for Briarpatch and Rubin sent to Night Hawk and Cronenberg, with whom Night Hawk had contracted for writing and directional services in connection with The White Hotel. Cronenberg's counsel on February 4, 2003, citing an offering memorandum of November 8, 2002 and the materials concerning Geisler and Roberdeau, advised that Cronenberg was not prepared to go forward with the project at that time. Similar materials were also sent to Andrew Birkin and his agent, with whom Night Hawk had contracted for work on the Peter Pan/The Boy Castaways Project.

Under New York law, a claim of tortious interference with an existing contract requires "proof of (1) the existence [*17] of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." *Foster v. Churchill, 87 N.Y.2d 744, 749-50, 665 N.E.2d 153, 642 N.Y.S.2d 583 (1996); MDC Corp., Inc. v. John H. Harland Co., 228 F. Supp. 2d 387, 397 (S.D.N.Y. 2002)* (same); *WFB Telecommunications, Inc. v. NYNEX Corp., 188 A.D.2d 257, 590 N.Y.S.2d 460, 461 (1st Dep't 1992)* ("In order to state a cause of action for tortious interference with contractual relations plaintiffs must show that defendants acted intentionally and through improper means induced the breach of contract between plaintiff and a third party.").

However, "economic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality." *Foster, 87 N.Y.2d at 750*; see also *MDC Corp., 228 F. Supp. 2d at 397* ("Where the defendants have an economic interest in the contract between a plaintiff and a third party, proving the elements listed above is not sufficient. Rather, under New York law, liability will be imposed only where plaintiff [*18] can make a showing of malice on the one hand or fraudulent or illegal means on the other.") (citing inter alia *Inn Chu Trading Co. v. Sara Lee Corp., 810 F. Supp. 501, 505 (S.D.N.Y. 1992)); Felsen v. Sol Cafe Mfg. Corp., 24 N.Y.2d 682, 687, 249 N.E.2d 459, 301 N.Y.S.2d 610 (1969)* ("A person who has a financial interest, as a stockholder, in the business of another is privileged to

Case 3:02-cv-00121-AVC    Document 106    Filed 09/24/2004    Page 17 of 24

Page 6

2003 U.S. Dist. LEXIS 23179, *; Copy. L. Rep. (CCH) P28,722

interfere with a contract which that other person or business had with a third person if his purpose is to protect his own interest and if he does not employ improper means.").

Here, there was an economic justification for Briarpatch and Rubin to put third parties on notice of adjudicated rights and their interests in The White Hotel and on the Peter Pan/The Boy Castaways Projects. The state court judgment enjoined Geisler and Geisler affiliates from holding themselves out as having a right, title, or interest in the projects "since all rights, title, and interest are vested in the Partnership [Briarpatch]." The state court further issued an order requiring Geisler and his affiliates to deliver "all screenplays, agreements, . . . correspondence, . . . and other documents relating to the Projects, [*19] since they belong to and are the property of the Partnership." According to Defendants, Night Hawk is Geisler's alter ego, and they thus acted to protect their rights in the projects.

Briarpatch and Rubin additionally cite state court decisions that found Briarpatch's delivery of notices and adjudications to interested persons to be "justified" and proper in an earlier instance. Previously, after learning that Geisler and its affiliates entered into an agreement with the company Constantin relating to The White Hotel Project, Briarpatch and Rubin sent Constantin notice and a copy of prior adjudications. Geisler and its affiliates then pursued three actions against Briarpatch and Rubin for tortious interference and prima facie tort in their communications with Constantin. The New York state court dismissed "with prejudice" a claim of tortious interference brought by Geisler affiliates, stating:

> The attorney acting on behalf of the winding up partner on behalf of Briarpatch was within his rights, as soon as he was able to find out about this contract, to notify Constantin Video about the decisions and the orders and the judgment of Justice Tompkins in this court.

[*20]

(Goldin Aff., Ex. 19 at 93.) The state court also granted summary judgment in Briarpatch's favor, explaining:

> I'm saying that there is no substance to the complaint against the attorney, who was acting on behalf of his client. . . . He was doing what he was supposed to do, he protected his client's interest. There is no claim.

(Goldin Aff. Ex. 22, 10/25/02 Tr. at 133.)

Similarly here, Defendants acted to protect their economic interests in the projects. As in the Foster case, "there was no evidence that independent torts were committed, nor were respondents' actions advanced to serve some personal interest." *Foster, 87 N.Y.2d at 750.* Furthermore, unlike in MDC, there is no evidence of malicious action or fraudulent or illegal means employed by Defendants. See *MDC Corp., 228 F. Supp. 2d at 397.* Defendants simply sent the parties notice of their interests in the projects and of related adjudications. n1

n1 These adjudications are matters of public record in New York and Dallas.

[*21]

The elements of prima facie tort are "(1) intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful." *WFB Telecommunications, Inc., 590 N.Y.S.2d at 461* (internal quotations omitted). "Central to the cause of action for prima facie tort is that the defendant's intent have been solely to injure plaintiff, i.e., that defendant have acted from 'disinterested malevolence.'" Id. Thus, the tortfeasor must act from "disinterested malevolence" solely to harm plaintiff and not for legitimate business goals. Here, Thomas has not pled any evidence of "intentional infliction of harm," and, as explained above, there is a business justification for Defendants' actions.

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct, (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. *Howell v. New York Post Co., Inc., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 596 N.Y.S.2d 353 (1993).* [*22] Here, Thomas fails to allege "extreme and outrageous conduct" sufficient to sustain a claim for intentional infliction of emotional distress. *Ranieri v. Lawlor, 211 A.D.2d 601, 622 N.Y.S.2d 30 (1st Dep't 1995).* Although Thomas alleges that Briarpatch and Rubin maligned him, he fails to identify maligning statements and to whom they were made. Thomas also refers to his suit by Briarpatch and Rubin and to pleadings filed therein, but the filing of a complaint and related affirmations are a part of court proceedings and thus absolutely privileged and cannot be the basis of a defamation claim. *Jong An Sul v. Ladds, 269 A.D.2d 162, 702 N.Y.S.2d 78 (1st Dep't 2000).*

### III. Donohue's Motion to Quash the Subpoena

2003 U.S. Dist. LEXIS 23179, *; Copy. L. Rep. (CCH) P28,722

*Fed. R. Civ. P. 45(c)(3)* provides that "on timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . subjects a person to undue burden." "Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the court.'" *Fitch, Inc. v. UBS Painewebber, Inc., 330 F.3d 104, 108 (2d Cir. 2003)* (quoting [*23] *United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).*

Whether a subpoena imposes an "undue burden" "depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996)* (quoting *United States v. IBM Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)).* The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings. E.g., *Salvatorie Studios, Int'l v. Mako's, Inc., 2001 U.S. Dist. LEXIS 11729, No. 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001)* ("Rule 26(b)(1) of the Federal Rules of Civil Procedure restricts discovery to matters relevant to the claims and defenses of the parties. Here, the burden is on Mako's [who issued the subpoena] to demonstrate relevance."). Additionally, "the status of a witness as a non-party to the underlying litigation entitles [the witness] to consideration [*24] regarding expense and inconvenience." *Concord Boat Corp., 169 F.R.D. at 49* (quoting *Fed. R. Civ. P. 45(c)(2)(B)).*

Here, Donohue is a non-party to the action, and there is no need for her testimony. The Subpoena pertains to information concerning Night Hawk, which is no longer a party to the case. Furthermore, Defendants issued the Subpoena while simultaneously seeking the dismissal of this action, which has, in fact, been granted. Defendants cannot use this subpoena to obtain information for use in state court proceedings. *Nicholas v. Poughkeepsie Sav. Bank/FSB, 1991 U.S. Dist. LEXIS 8083, No. 90 Civ. 1607, 1991 WL 113279, at *2 (S.D.N.Y. June 14, 1991)* ("When the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied.") (quoting *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 353 n.17, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978));* see also *Salvatorie Studios Int'l, 2001 U.S. Dist. LEXIS 11729, 2001 WL 913945, at *1* (quashing a subpoena where the defendant "has failed to establish that the settlement agreement it seeks is in any way relevant to the claims or defenses raised [*25] in *this* action -- a different lawsuit against a different party"). Thus, Defendants cannot establish that the

relevance of the Subpoena outweighs the burden it imposes on non-party Donohue. n2

          n2 There is also some contention between the parties as to whether Defendants' opposition papers to the motion to quash were timely and whether the affidavit was properly notarized. These issues need not be delved into here as Donohue's motion to quash is granted.

Donohue is further entitled to attorney's fees. Under *Fed. R. Civ. P. 45(c)(1)*:

    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's [*26] fee.

Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash. E.g., *Am. Int'l Life Assur. Co. v. Vazquez, 2003 U.S. Dist. LEXIS 2680, No. 02 Civ. 141, 2003 WL 548736, at *2-3 (S.D.N.Y. Feb. 25, 2003)* (imposing sanctions for lost wages and awarding attorney's fees incurred in bringing motion to quash after attorney issuing subpoena refused to comply with non-party's request to voluntarily withdraw subpoena that sought privileged information).

**Conclusion**

For the reasons set forth above, Defendants' cross-motion to dismiss is granted for failure to join an indispensable party, and Thomas's motions for preliminary injunction and summary judgment are denied. Donohue's motion to quash the Subpoena and for attorney's fees is further granted.

Settle order on notice.

It is so ordered.

**New York, NY**

    **December 23, 2003**

    **ROBERT W. SWEET**

    **U.S.D.J.**

LEXSEE 2003 U.S.DIST. LEXIS 2680

AMERICAN INTERNATIONAL LIFE ASSURANCE CO. OF NEW YORK,
Plaintiff, -against- MELISSA VAZQUEZ & NANCY RODRIGUEZ VAZQUEZ,
Defendants.

02 Civ. 141 (HB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*2003 U.S. Dist. LEXIS 2680*

February 24, 2003, Decided
February 25, 2003, Filed

**DISPOSITION:** [*1] Plaintiff's counsel's motion for sanctions against defense counsel for incurred attorney's fees and costs to respond to subpoena issued by defense counsel granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insurer that interpleaded funds in dispute between two defendant beneficiaries of a victim of the World Trade Center attack, moved for sanctions against the counsel for one of the heirs pursuant to *Fed. R. Civ. P. 45(c)(1)*, seeking the payment of attorney's fees and costs incurred by the insurer's counsel in responding to a subpoena that sought matters clearly covered by the insurer's attorney-client privilege.

**OVERVIEW:** The parties submitted a joint pretrial order that listed prospective witnesses, but did not include the attorney for the insurer. Nonetheless, counsel for one beneficiary served a subpoena on the attorney the Friday before the trial was to begin, to appear at trial the following Monday to testify and to produce and permit inspection of "any and all records" pertaining to the interpleader action. Although the insurer's attorney advised the beneficiary's attorney that the insurer refused to waive attorney-client privilege, the beneficiary's counsel required the other attorney to appear and claim the privilege. Pursuant to *Fed. R. Civ. P. 45(c)*, (d), the insurer's attorney was required to prepare a privilege log, and incur legal expense. The court found that the demand by subpoena that an attorney appear with clearly

privileged records pertaining to his client's interpleader action one business day before trial was patently unreasonable. The award of attorney's fees was granted.

**OUTCOME:** The motion for an award of sanctions in the form of attorney's fees payable directly to the insurer's counsel was granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For American International Life Assurance Company of New York, PLAINTIFF: Mark C Stephenson, Cozen O'Connor, New York, NY USA.

For Melissa Vazquez, DEFENDANT: Jeremy J Flanagan, Anderson, Kill, Olick & Oshinsky PC, Joshua G Gold, Anderson, Kill & Olick, New York, NY USA.

For Nancy Rodriguez Vazquez, DEFENDANT: Elliot M Rudick, Queller, Fisher, Dienst, Serrins, Washor & Kool, LLP, New York, NY USA.

For Melissa Vazquez, COUNTER-CLAIMANT: Jeremy J Flanagan, Anderson, Kill, Olick & Oshinsky PC, Joshua G Gold, Anderson, Kill & Olick, New York, NY USA.

For American International Life Assurance Company of New York, COUNTER-DEFENDANT: Mark C Stephenson, Cozen O'Connor, New York, NY USA.

**JUDGES:** Harold Baer Jr., U.S.D.J.

2003 U.S. Dist. LEXIS 2680, *

**OPINIONBY:** Harold Baer Jr.

**OPINION:**

### OPINION & ORDER

**Hon. HAROLD BAER, JR., District Judge:**

Counsel representing plaintiff [*2] American International Life Assurance Co. of New York ("AIG") moves for sanctions pursuant to *Fed. R. Civ. P. ("FRCP") 45(c)(1)* against defense counsel, Elliott Rudick, representing defendant Nancy Rodriquez Vazquez, for incurred attorney's fees and costs to respond to a subpoena issued by Rudick. For the following reasons, plaintiff's counsel's motion is GRANTED.

### I. BACKGROUND

This case originated over a dispute about the distribution of proceeds of an accidental death insurance policy held by AIG for the benefit of insured, Arcangel Vazquez, who died during the World Trade Center attack on September 11, 2001. AIG filed an interpleader action against defendants to resolve how the proceeds should be distributed. On September 15, 2002, the Court dismissed AIG from the case because it was no longer a necessary party to the proceeding, having deposited the proceeds with the Clerk of the Court. On November 4, 2002, trial commenced between defendants to determine who held the right to the proceeds of the insurance policy.

As part of their pretrial submissions, defendants submitted a joint pretrial order on October 21, 2002, which included a list of prospective witnesses. The [*3] list, however, did not include Mark C. Stephenson of the law firm Cozen O'Connor, which represented AIG in the instant case. Moreover, the joint pretrial order did not list Cozen O'Connor's attorney-client files as trial exhibits. On November 1, 2001, Rudick issued a subpoena on behalf of the Court to Stephenson, compelling him to appear at trial the following Monday to testify and to produce and permit inspection of "any and all records" pertaining to the interpleader action. The subpoena arrived at Stephenson's office on Friday afternoon of November 1. During a call to the Court by Stephenson's associates to object to the subpoena, the Court instructed his associates to draft an appropriate motion to quash, if desired, and to file it, on Monday, November 4, 2002. Traveling from Philadelphia, Pennsylvania, Stephenson appeared as required by the subpoena at the beginning of trial.

### II. DISCUSSION

Stephenson moves to impose sanctions upon Rudick pursuant to *FRCP 45(c)(1)*. That Rule permits a court to impose sanctions against any party that issues a subpoena on behalf of the Court but "fails to take reasonable steps to avoid imposing undue burden or expense on a person subject [*4] to that subpoena." Sanctions may include, but are not limited to, lost earnings and reasonable attorney's fees. *FRCP 45(c)(1)*. Rudick contends that sanctions should not be imposed here because the testimony and documentary evidence sought via the subpoena, while likely subject to the attorney-client privilege, was relevant, and that the burden to respond to the subpoena was not unreasonable. Morever, according to Rudick, the burden, if any, was self-inflicted by Stephenson. I disagree.

To justify the reasonableness and propriety of the subpoena, Rudick suggests that the information he sought from Stephenson (1) was not subject to the attorney-client privilege because it is not applicable to "recommendations [Stephenson] made to the client as opposed to anything that the client may have said to him," Trial Transcript ("TT") at 5, (2) was highly relevant to rebutting Melissa Vazquez's argument that the policy plan distribution directions do not apply, and (3) would not have been prejudicial to AIG if disclosed. Rudick provides no relevant case law, and I find none to support any of his arguments to demonstrate the reasonableness and propriety of his subpoena.

With regard to Rudick's [*5] first argument, the privilege may apply not only to communications by the client to the attorney, but also to "[legal] professional advice to those who can act on it." *Upjohn Co. v. United States, 449 U.S. 383, 390, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)*. The communications by AIG with its attorney, Stephenson, in regard to the reason it filed the interpleader and the legal advice rendered by Stephenson plainly fall within the privilege for attorney-client communications. *In re Grand Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir. 1984)*. Rudick does not argue that the communications were not made in confidence, that the privilege was waived, or that fraud or illegality was involved, which might otherwise destroy the privilege. *See U.S. v. Goldberger & Dubin, P.C., 935 F.2d 501, 504 (2d Cir. 1991), In re Grand Jury Subpoena, 731 F.2d at 1036.* Accordingly, there is no dispute that the communications sought by Rudick are protected by the attorney-client privilege. Privileged attorney-client communications, however, are generally not available by subpoena, *e.g., FRCP 45. Leve v. General Motors Corp., 43 F.R.D. 508, 510 n.2 (S.D.N.Y. 1967).* [*6] Indeed, regardless of how relevant the privileged information may be to a party's case, it is well established that "the attorney-client privilege remains an exception that may withhold relevant information at the

Case 3:02-cv-00121-AVC    Document 106    Filed 09/24/2004    Page 22 of 24

2003 U.S. Dist. LEXIS 2680, *                                    Page 3

pre-trial or the trial stage of a criminal prosecution or civil proceeding." *In re Six Grand Jury Witnesses, 979 F.2d 939, 943 (2d Cir. 1992).*

Stephenson plainly communicated to Rudick that his client would not authorize him to testify. *See* Motion for Sanctions Exh. B. Despite the fair warning given by Stephenson, Rudick subpoenaed him. As innocuous as Rudick may have believed the communications to be with AIG, he knew or should have known that it was the client's privilege and that the privilege cannot be waived without AIG's consent. Indeed, not only may Stephenson "invoke the privilege in his client's behalf when the client is not a party to the proceeding in which the disclosure is sought, but he should do so for he is 'duty-bound to raise the claim in any proceeding in order to protect communications made in confidence.'" *Republic Gear Co., v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir. 1967)*(citations omitted). Furthermore, [*7] Stephenson is prohibited by New York law from divulging confidential information without a waiver by his client. *N.Y. C.P.L.R. § 4503(a)* n1. Moreover, Rudick must understand surely that "if the purpose of the attorney-client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected." *Upjohn, 449 U.S. at 393.* Breach of the attorney-client privilege cannot be compelled on the whim of a third-party who may believe that a waiver would not prejudice the client.

n1 *New York CPLR § 4053(a)* provides in pertinent part: "Unless the client waives the privilege, an attorney or his or her employee, or any person who obtains without the knowledge of the client evidence of a confidential communication made between the attorney or his or her employee and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication."

In light of the communications from Stephenson [*8] conveying his client's unwillingness to waive the attorney-client privilege, thus ethically and legally binding him from testifying, I am at a loss to understand how Rudick could in good faith believe that the communications sought through the subpoena he issued was appropriate. Rudick may be well advised to follow Stephenson's advice of returning to law school, TT at 8-9, if he actually believes that relevance and lack of prejudice to AIG, *see* Opp. Mem. at 2, Rudick Affid. at P 13, constitute valid grounds for Stephenson to violate the oldest privilege for confidential communications known to the common law. *Upjohn, 449 U.S. 389, 66 L. Ed. 2d*

584, 101 S. Ct. 677. Although Stephenson informed Rudick in an October 31, 2002 letter that his testimony at trial would not be forthcoming because of the attorney-client privilege, Rudick contends that had Stephenson asserted the privilege earlier, he would not have issued the subpoena. Rudick Affid. at 22. Rudick offers no valid reason, however, why he issued the subpoena the next day on November 1, to obtain testimony that he should have known could not be compelled. n2

n2 At trial, Rudick asked Stephenson only two substantive questions, to which the Court sustained objections on the ground of attorney-client privilege. First, Rudick asked:

Q: Mr. Stephenson, ..., to the best of your knowledge what was the reason that American International Life Assurance Company brought this action for interpleader?

TT at 6. After the objection was sustained, he next asked:

Q. What advice did you give to you client?

*Id.* at 7.

After the objection to the second question was sustained, Ridick had no further questions and the Court excused Stephenson. *Id.*

[*9]

Rudick failed to heed his obligation "to take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." *FRCP 45(c)(1).* The sweeping subpoena seeking "any and all records pertaining to the [AIG interpleader]" was *prima facie* improper. *In re Circle K Corp., 199 B.R. 92, 102 (S.D.N.Y. 1996).* The subpoena, served the Friday afternoon prior to the beginning of trial on Monday, unnecessarily compelled Stephenson and his associates to sift through every document in its files and to create a privilege log. Motion for Sanctions Exh. F at 2. Incredibly, Rudick contends that the time spent was unnecessary, and thus any costs incurred were solely self-inflicted. Opp. Mem. at 4. Rudick argues that it would have taken "no more than five minutes to gain the relief requested." n3 *Id.* I disagree, and at most, Rudick only obviates the undue burden and expense imposed by his subpoena. He overlooks the fact that Stephenson had to also take time to travel from Philadelphia, Pennsylvania and to attend trial, which collectively took a significant part of a day. Motion for Sanctions Exh. F

at 2. In addition, Rudick disregards the Federal [*10] Rules of Civil Procedure, which requires persons objecting to a subpoena to serve written objections to the subpoena and produce a privilege log if objecting to the production of documents on the basis of privilege. *FRCP 45(c)* and (d). Furthermore, S.D.N.Y. Local Rule 7.1 requires all motions to be accompanied by a memorandum of law setting forth the points and authorities relied upon to support the motion. The time spent by Stephenson to comply with the Federal Rules of Civil Procedure to prepare the motion to quash and privilege log was wholly appropriate under the circumstances.

> n3 Ironically, the Court and Stephenson had to wait for at least ten minutes on Rudick to arrive at court from his New York, New York office.

In addition to finding the scope of Rudick's subpoena inappropriate, I find the manner of service inappropriate as well. Although Rudick knew he wanted Stephenson's testimony, "at least four weeks before the scheduled trial date," Rudick Affid. at P 9, Rudick offers no valid justification why [*11] he issued the subpoena only one business day before trial. Demanding Stephenson to appear with "all records" pertaining to his client's interpleader action one business day before trial is patently unreasonable. *See In re Digital Resource, L.L.C. 246 B.R. 357, 373 (8th Cir. 2000); Judicial Watch, Inc. v. U.S. Dep't of Commerce, 34 F. Supp. 2d 47, 49-50 (D.D.C. 1998).* Having reviewed the Affidavit of Professional Services and Costs Incurred, Motion for Sanctions Exh. F, I find much of Stephenson's fees and costs fair and not unreasonable.

### III. CONCLUSION

For the foregoing reasons, I find sanctions for much of Stephenson's fees and costs appropriate. Elliott Rudick, Esq. is hereby ordered to disburse payment in the amount of $ 4,436.00 directly to Mark C. Stephenson, Esq. and Cozen O'Connor, within 30 days of the date of this order.

### SO ORDERED.

Harold Baer Jr.

U.S.D.J.
New York, New York
February 24, 2003

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing Motion to Quash Subpoena of E.

Fitzgerald was served via facsimile and United States First Class Mail on September 24, 2004 to

the following:

John J. Evans
Evans Law Offices LLC
30 Oak Street
Stamford, CT  06905

Theodore J. Tucci
Robinson & Cole
280 Trumbull Street
Hartford, CT  06103-3597

STM/282424.1

Kenneth W. Gage

-4-