Dr. Witt.[8] The only reason MetLife made this request was to "try to help the plaintiff out" and "go the extra mile." (Marchese Testimony, 9/30/04, pp. 44, 137-38.)

### 3. *The medical documentation produced and analyzed during the appeal did not establish the existence of a disabling condition under the Plan.*

On July 12, 2001, MetLife sent Dr. Witt a questionnaire asking him to provide detailed information supported by objective medical findings regarding the severity of plaintiff's symptoms, her treatments and the activities plaintiff was capable of managing on a daily basis. (Marchese Testimony, 9/30/04, pp. 17-18, 22-23; Diary Review Report, Defs' Ex. 17, 7/12/01, 13:18.)

Dr. Witt's response to the July 12, 2001 inquiry consisted of: (1) a copy of MetLife's fax cover sheet to him; (2) a copy of MetLife's questionnaire to him with the phrases "lab results from July 2000 including ANA, ESR CDC" and "copies of office notes from July 2000" circled; and (3) 26 pages of office notes and lab results. (Dr. Witt's response, Defs' Ex. 34.)[9] These documents were reviewed by both Mr. Marchese and a Nurse Consultant.[10] (Marchese Testimony, 9/30/04, pp. 47-48, 78; Diary Review Report, Defs' Ex. 17, 8/24/01, 16:41.)

The records provided by Dr. Witt provided no substantiation of plaintiff's claim for total disability. Instead, they indicated only that plaintiff had vague symptoms of self-reported subjective conditions such as sore throat, sinus pain, aches, fatigue, and runny nose which were

---

[8] Plaintiff was well aware that MetLife had asked Dr. Witt for additional records because MetLife advised her of that fact. (7/20/01 letter, Defs' Ex. 33.)

[9] Because the questionnaire was faxed to Dr. Witt as a Word document via MetLife's email system, it would not have been possible for MetLife to circle certain questions, or include any other handwritten notations, on the questionnaire before sending it to Dr. Witt. It was not possible for MetLife to scan a document with handwriting on it and then transmit it. (Marchese Testimony, 9/3/04, pp. 17-18, 22-23.) Further, Denise Paci, a nurse in Dr. Witt's office, testified that she had no personal knowledge that the questionnaire was sent by MetLife with the two lines circled. (Paci Testimony, 9/29/04, pp. 36-37.) Ms. Paci had no actual knowledge of who drew the circles on the questionnaire. (Paci Testimony, 9/29/04, pp. 36-37.)

[10] A different Nurse Consultant reviewed the file during the appeal process to further ensure that plaintiff's claim was analyzed from a new perspective. (Diary Review Report, Defs' Ex. 17, 3/30/0; 10:00; 8/24/01, 16:41.)

16

intermittently treated with an antibiotic. Dr. Witt did not provide any medical evidence establishing that plaintiff's functional ability to work was impaired. To the contrary, Dr. Witt's records, which included a reference to the fact that plaintiff went on vacation to Florida in March 2001, supported the conclusion that plaintiff's activities were not restricted or limited. (Witt's Response, Defs' Ex. 34)

The Nurse Consultant suggested that the claims unit ask both Dr. Witt and Dr. Tec a series of questions about plaintiff's condition. (Diary Review Report, Defs' Ex. 17, 7/2/01, 15:17.) All of the questions, however, were inadvertently sent to Dr. Witt. Although one of the responsibilities of a Nurse Consultant is to recommend additional medical follow-up that might be useful, the claim examiner retains the ultimate discretion regarding whether such information is necessary. (Marchese Testimony, 9/30/04, p. 55.) Thus, even though MetLife did not receive additional information from Dr. Tec, there was already ample information in the claim file for Mr. Marchese to make an informed decision about whether plaintiff was totally disabled due to depression. (Marchese Testimony, 9/30/04, pp. 60-61, 169.)

Specifically, Mr. Marchese concluded that Dr. Tec's Supplemental Functional Assessment report, which indicated that plaintiff had experienced chronic depression since 1995 and that her impairment was only moderate, demonstrated that plaintiff was not totally disabled as defined by the Plan due to depression. Mr. Marchese considered Dr. Tec's May 24, 2001 letter in his evaluation of plaintiff's claim, but did not give it much weight because it contradicted Dr. Tec's previous and more detailed findings. (Marchese Testimony, 9/30/04, pp. 60-64, 80; 5/24/01 letter from Tec, Defs' Ex. 31; Compare Supplemental Functional Assessment report, Defs' Ex. 25.)

MetLife was not constrained to accept blindly Dr. Tec's conclusory statements that differed from his earlier reports. See Guthrie v. Hewlett-Packard Co. Employee Ben. Org., 773 F. Supp. 1414, 1418 (D. Col. 1991) (it was not arbitrary and capricious to disregard letter from treating physician which was submitted after the denial of the claim and which failed to explain why the doctor's opinion expressed therein was inconsistent with the reports previously submitted by the doctor.)

### G.    MetLife Properly Denied Plaintiff's Appeal.

Following its review of all of the information submitted by plaintiff, including the supplemental medical records, Mr. Marchese concluded that the decision to deny LTD benefits was appropriate because the totality of the medical information indicated that plaintiff was not subject to any specific restrictions or limitations, but, instead, was functionally capable of working. (Diary Review Report, Defs' Ex. 17, 8/24/02, 16:41; 8/30/01, 16:05; 9/19/01,16:16; 9/27/01 letter, Defs' Ex. 34.)[11]

Contrary to plaintiff's unfounded allegations, this decision was based solely on the medical and vocational information in the record, without consideration of the amount of benefits at issue, or the fact that plaintiff had been involved with a dispute with Pechiney over her termination. (Marchese Testimony, 9/30/04, pp. 49, 76-77.) Indeed, Mr. Marchese had no knowledge whatsoever about plaintiff's employment dispute with Pechiney or her claim before

---

[11] Even if plaintiff could demonstrate — which she cannot — that the claim file contained some medical evidence which could support a contrary finding, the decision to terminate benefits was not arbitrary and capricious because it was reasonably based on the record as a whole. Pulvers, 210 F.3d at 94. See also Snyder, 2004 U.S. Dist. LEXIS 16258 at * 17 ("even if Plaintiff identified directly contrary evidence in the record, the mere existence of conflicting evidence does not render the decision arbitrary and capricious.") (internal citations omitted.)

the Equal Employment Opportunity Commission. (Marchese Testimony, 9/30/04, p. 49.) There is no indication in the record that anybody at MetLife was aware of these issues.

MetLife sent Pechiney a draft letter for its consideration, together with a cover letter advising Pechiney of its recommendation that the denial be upheld. Pechiney responded by requesting that MetLife mail the letter regarding the appeal. (Marchese Testimony, 9/30/04, pp.146, 147, 152.) Accordingly, MetLife informed plaintiff by letter dated September 27, 2001 that it was upholding the denial of her claim, noting in particular plaintiff's failure to provide medical evidence to support her doctors' diagnoses and the lack of any objective findings demonstrating that her functional ability to work was impaired. (9/27/01 letter, Defs' Ex. 36.)

## V. METLIFE'S CLAIM PROCESS WAS FREE OF PROCEDURAL DEFECTS; ACCORDINGLY, THE EVIDENCE PROPERLY BEFORE THE COURT IS LIMITED TO THE CLAIM FILE AND SAL MARCHESE'S TESTIMONY

In determining whether the claims administrator's decision was reasonable, the Court may consider "only the evidence that the fiduciaries themselves considered." Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995). See also Sandoval v. Aetna Life Ins. & Cas. Ins. Co., 967 F.2d 377, 380-81 (10th Cir. 1992) (in determining whether denial of benefits was arbitrary and capricious, district court "considers only the arguments and evidence before administrator or fiduciary.")

Evidence outside of the administrative record is admissible only if it can prove that the claim process was defective. Locher v. Unum Life Ins. Co. of Am., 2004 U.S. App. LEXIS 23776 (2d Cir. Nov. 12, 2004). See also Kaus, 2004 U.S. Dist. LEXIS 9797 at * 8 ("the plaintiff must allege facts, with sufficient specificity that would support the existence of good cause permitting the admission of additional evidence beyond the administrative record.") (internal

citations omitted.) The circumstances identified in <u>Locher</u> are not present here because the claim process was proper.

Recognizing that the administrative record amply supported MetLife's decision, plaintiff repeatedly but unsuccessfully attempted to create questions about the contents of that record. Although plaintiff was able to avoid summary judgment by raising the possibility that the record was incomplete, during trial, where she was given more than ample opportunity to introduce evidence, plaintiff failed to provide any evidence to support her claim. Plaintiff's accusations and innuendo failed to fulfill the plaintiff's obligation to prove her claim by a fair preponderance of the evidence.

Plaintiff failed to prove that she offered MetLife any information not contained in the claim file and fully considered by MetLife. Specifically, neither Denise Paci, plaintiff, plaintiff's husband nor Ann "Billie" Wallace offered any evidence to support the allegation that MetLife's claim file was incomplete. Thus, the Court's decision in this case must be based solely on the record in the claim file and the testimony from Sal Marchese regarding the claim process itself, such as the procedures followed by the claims examiners, the factors they considered, and the conclusions they reached.[12]

---

[12] It is appropriate for the Court to consider the testimony of Salvatore Marchese regarding the claim process since such testimony constitutes evidence of the factors and arguments considered by the claim examiner during the claim process, and as such, is part of the administrative record. See Sandoval, 967 F.2d at 380-81 (in determining whether denial of benefits was arbitrary and capricious, district court "considers only the arguments and evidence before administrator or fiduciary."); Miller, 72 F.3d at 1072 (the Second Circuit relied upon excerpts from the deposition of the plan's administrator regarding the claim process, as well as its review of the claim file, in reaching its determination that the decision to deny was arbitrary and capricious); Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113 (1st Cir. 2004) (evidence regarding the procedures followed by defendant in evaluating the claim was admissible to assist the court in determining whether the denial was reasonable).

A.     **Denise Paci's Testimony Validates the Completeness of MetLife's Claim File.**

Plaintiff argued that MetLife's claim file was incomplete because it did not contain the completed questionnaire from her treating physician, Dr. David Witt. In opposition to summary judgment, plaintiff argued that Denise Paci, a nurse in Dr. Witt's office, faxed the completed questionnaire to MetLife. At trial, however, Ms. Paci testified that she did not fax the completed questionnaire to MetLife (Paci Testimony, 9/28/04, pp. 15, 22; 9/29/04, p. 28) and did not know if the completed questionnaire was ever sent to MetLife. (Paci Testimony, 9/29/04, pp. 14, 34, 35, 40.)

Moreover, at trial, Ms. Paci had no knowledge as to when the questionnaire was completed (Paci Testimony, 9/29/04, p. 34) and plaintiff did not even attempt to introduce testimony from Dr. Witt regarding his involvement, if any, in providing responsive information. The only fact known about the questionnaire is that it was completed sometime on or before April 21, 2003, the date Ms. Paci signed the affidavit used by plaintiff's counsel to oppose summary judgment – an affidavit that Ms. Paci testified contained multiple factual errors. (Paci Testimony, 9/29/04, pp. 4, 6, 28, 31, 32.) Given Ms. Paci's trial testimony, there is no basis whatsoever to find that the questionnaire was even completed during the period of time plaintiff's claim for benefits was reviewed by MetLife, much less that it was ever sent to MetLife. The Court must reject plaintiff's speculative theories as utterly unfounded.

Indeed, Ms. Paci testified that the only documents she sent to MetLife were Dr. Witt's progress notes and lab reports, together with the unanswered questionnaire. (Paci Testimony, 9/28/04, pp. 13, 22; 9/29/04, pp. 29-30.) A review of the claim file demonstrates that the only records MetLife received from Dr. Witt's office in the summer of 2001 were Dr. Witt's progress

21

notes, lab reports, and unanswered questionnaire. (See Defs' Ex. 34.) Ms. Paci specifically identified Defendants' Exhibit 34 as a copy of the documents that she faxed to MetLife on August 2, 2004. (Paci Testimony, 9/29/04, pp. 29-30.) Thus, Ms. Paci's testimony at trial corroborates that MetLife's claim file contained everything that Dr. Witt had provided.[13]

Plaintiff's counsel's attempt to create doubt regarding the claim process by questioning Ms. Paci about a hypothetical August 5, 2001 fax from Dr. Witt's office is unavailing. The August 5th date (a Sunday) was apparently a typographical error by plaintiff's counsel, without any substance or evidentiary support in the record. The affidavit that plaintiff's counsel drafted for Ms. Paci to sign in April 2003 (and used to oppose summary judgment) stated in error that Ms. Paci faxed documents to MetLife on August 5, 2001. At the time she signed that affidavit, Ms. Paci had no independent recollection of faxing anything to MetLife on August 5, 2001. (Paci Testimony, 9/28/04, p. 18.) When she later looked at the documents that she actually faxed to MetLife, Ms. Paci realized that the fax was sent on August 2, 2001. (Paci Testimony, 9/28/04, p. 13.) Ms. Paci specifically refuted plaintiff's suggestion that she might have faxed anything on Sunday, August 5, 2001. (Paci Testimony, 9/29/04, pp. 31-32.) Further, Ms. Paci testified that Dr. Witt's office, which is closed on Sundays, has no record of anything being faxed on August

---

[13] Having failed in her attempt to show that Ms. Paci sent the completed questionnaire to MetLife, plaintiff then moved on to an effort to create intrigue based on the fact that, at the time of plaintiff's claim, documents that were faxed to MetLife were scanned into the computer network via an imaging system, during which process an extra blank page can be generated. (Marchese Testimony, 9/30/04, pp. 27-30, 67-69.) As the Court confirmed by having MetLife send a copy of the actual facsimiles received by MetLife directly to the Court, the documents received by MetLife from Dr. Witt did not contain the completed questionnaire. (See Exhibits 47, 48.)

22

2001. (Paci Testimony, 9/29/04, pp. 12, 32.) MetLife's records, moreover, show a fax received on August 2, not August 5. (Defs' Exs. 34, 47.)[14]

Likewise, questions by plaintiff's counsel about a fax transmittal sheet dated October 12, 2001 purportedly from Dr. Witt's office to MetLife are another red herring that fails to prove that MetLife's administrative record was incomplete, much less demonstrate in any way that plaintiff was disabled under the terms of the Plan. Ms. Paci, who was called by plaintiff as Dr. Witt's records-keeper, could not authenticate the document. She testified that the fax transmittal sheet was not contained in Dr. Witt's files and, indeed, that she had never even seen the document until plaintiff's counsel sent it to her shortly before trial. (Paci Testimony, 9/29/04, pp. 17, 18, 25, 43.)

Ms. Paci testified that the only documents faxed to MetLife from Dr. Witt's office on October 12, 2001 were copies of the lab results and progress notes that had previously been sent on August 2, 2001. (Paci Testimony, 9/29/04, pp. 37-38; Defs' Exs. 38A, 48.) Nothing in Dr. Witt's records indicated that the completed questionnaire was sent to MetLife on October 12, 2001. (Paci Testimony, 9/29/04, p. 40.) Again, MetLife's files show exactly what was received by MetLife on October 12: a duplicate of the fax from August 2, minus the cover sheet and blank questionnaire. (Defs' Exs. 38A, 48.) Plaintiff could not substantiate the authenticity of the fax transmittal sheet itself, much less prove that the completed questionnaire was the document referred to by the transmittal sheet. Therefore, the Court should disregard completely plaintiff's speculation that MetLife's claim file was incomplete.

---

[14] Ms. Paci's affidavit, which was a significant basis upon which the Court grounded its decision to deny summary judgment on plaintiff's denial of benefits claims, was proven at trial to be false in all material aspects. (Paci Testimony, 9/29/04, pp. 28-35.)

Even more to the point, the substance of the October 12, 2001 fax is completely irrelevant to plaintiff's legal claims. Plaintiff was advised of the decision to uphold the original denial on September 27, 2001 (9/27/01 letter, Defs' Ex. 36); accordingly, the reasonableness of MetLife's decision must be based on the claim file as it existed on that date, not as it may have existed two weeks later. Nance v. Sun Life Assur. Co. of Can., 294 F. 3d 1263 (10th Cir. 2002) (evidence submitted after the plan administrator's last denial of benefits is not part of the administrative record and should not be considered by the court); Etkin v. Merk & Co., 2001 U.S. Dist. LEXIS 17692 at * 19 (E.D. Pa. Oct. 30, 2001) ("Under the arbitrary and capricious standard of review, the "whole" record consists of the evidence that was before the administrator when he made the decision being reviewed.")

### B.  Neither the Testimony of Plaintiff Nor her Husband Establish that MetLife's Claim File Was Incomplete.

Both plaintiff and her husband, Edward Kruk, testified that they had asked Dr. Witt's office if it had responded to MetLife's request for more records. (Plaintiff Testimony, 9/29/04, pp. 66-72; E. Kruk Testimony, 9/30/04, pp. 174-176.) The testimony of plaintiff and her husband demonstrates only that plaintiff was aware that MetLife had sought additional records. It does nothing to establish that the completed questionnaire was sent to MetLife or that MetLife arbitrarily failed to consider it. Similarly, plaintiff's testimony about her medical condition and her communications with MetLife also fails to establish that she offered any evidence to MetLife that MetLife failed to consider. As such, the testimony of plaintiff and her husband must be disregarded because it is outside of the administrative record.

In rendering its decision, the Court must consider the medical records themselves, not plaintiff's characterization of the medical records. Likewise, plaintiff's testimony about her

communications with MetLife simply re-states (albeit in a self-serving manner) the letters and telephone calls documented in the claim file, and thus, is not admissible as evidence. See Scannell v. Metropolitan Life Ins. Co., 2003 U.S. Dist. LEXIS 20749 at * 21 n. 62 (S.D.N.Y. Nov. 17, 2003) (plaintiff's "revised" job description and supplemental medical information not produced during the claim process was not admissible as evidence); Locher, 2004 U.S. App. LEXIS 23776 (even upon a *de novo* review, the court cannot consider evidence outside the administrative record absent good cause).

In sum, plaintiff offered absolutely no evidence to support her contention that MetLife's claim file was incomplete. Notably, when asked by the Court to identify what she believed that she had submitted to MetLife that MetLife did not consider, plaintiff's only response was "They didn't consider in the appeal, I believe, the letters from Dr. Tec and Dr. Witt." (Plaintiff Testimony, 9/29/04, p. 67.) It is undisputed that the letters from Dr. Tec and Dr. Witt were contained within the claim file. (See Defs' Exs. 30, 31.) Moreover, MetLife's Diary Review report (Defs' Ex. 17, 6/25/01, 17:02 – 7/02/01, 15:17) and the September 27, 2001 letter (Defs' Ex. 36) demonstrate that MetLife analyzed these letters as part of the appeal process.

As set forth in more detail *infra*, the fact that plaintiff disagreed with MetLife's analysis regarding the weight of the letters from Dr. Tec and Dr. Witt does not mean that MetLife ignored the letters. See Couture v. UnumProvident Corp., 315 F. Supp. 2d 418 (S.D.N.Y. 2004) (Insurers did not ignore reports of treating physicians when they determined that the doctors' reports were insufficient to establish that plaintiff was disabled under the plan).

### C.   Ann "Billie" Wallace's Testimony Fails to Support the Allegation that the Claim File Was Incomplete.

Plaintiff also unsuccessfully claimed that Ann "Billie" Wallace, a Pechiney employee, would somehow demonstrate that the MetLife claim file was incomplete. Of the many questions asked of Ms. Wallace, however, only one set of questions related to the completeness of MetLife's claim file. Specifically, on September 29, 2004, plaintiff's counsel elicited from Ms. Wallace that the Pechiney copy of the Attending Physician Statement (a double-sided document) completed by Dr. Leon Tec and forwarded to MetLife was missing the back page. However, the Attending Physician Statement actually received by MetLife and kept in the claim file was complete. (See Defs' Ex. 16; Marchese Testimony, 9/30/04, pp. 12-13.) Given that Ms. Wallace's testimony offered no insight whatsoever into MetLife's claim file or claims processes, much less proof that MetLife's claim file was incomplete, her testimony has no probative value.

Because plaintiff failed to offer any credible evidence that the claim file was incomplete or that the claim process was otherwise defective, the Court's application of the arbitrary and capricious review standard must be based solely on the evidence that was before the administrator at the time the claims determination was made. Miller, 72 F.3d at 1071.

## VI.   THE DECISION TO DENY LTD BENEFITS WAS REASONABLE AS A MATTER OF LAW AND IN NO WAY AMOUNTS TO AN ARBITRARY AND CAPRICIOUS DENIAL

As the evidence in the administrative record demonstrates, MetLife's decision that plaintiff was not entitled to LTD benefits was reasonable and supported by substantial evidence. Because plaintiff could not identify any substantive evidence within the administrative record of her inability to work, plaintiff instead argued simply that MetLife did not have enough evidence to deny the claim. This argument fails as a matter of law. Karamshahi v. Northeast Utilities

Service Co., 41 F. Supp. 2d 101, 105 (D. Mass. 1999) (plaintiff cannot prevail on wrongful denial of benefits plan by arguing that defendant did not have sufficient evidence to deny claim when plaintiff failed to produce any substantive evidence of his inability to work).

### A.  Plaintiff Failed to Satisfy Her Burden of Showing Disability Under the Terms of the Plan.

Plaintiff bears the burden of proving that she is disabled under the terms of the Plan. SPD, Defs' Ex. 11, pp. DI-7, DI-11; Plan, Defs' Ex. 12, p. DI-6; Wojciechowski v. Metropolitan Life Ins., Co., 2001 U.S. App. LEXIS 828 at * 8 (2d Cir. Jan. 12, 2001); Barnable v. Fortis Life Ins. Co., 44 F. Supp. 2d 196, 204 (E.D.N.Y. 1999); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 985 (6th Cir. 1991) ("it's the employee who must…supply on demand proof of…disability to the satisfaction of the [claims administrator].")  As described in detail *supra*, plaintiff not only failed to demonstrate that she was disabled, but instead, produced medical records to MetLife that established she was capable of performing the major duties of her occupation.[15]

Plaintiff's attempts to shift the burden to MetLife to prove that she was not totally disabled are directly contradicted by the applicable case law.  See Piscotanno v. Metropolitan Life Ins. Co., 118 F. Supp. 2d 200, 215 (D. Conn. 2000) (claim administrator is not required to prove that plaintiff is not disabled).  Cf.  Uberti v. Lincoln Nat'l Life Ins. Co., 144 F. Supp. 2d 90, 103 n. 5 (D. Conn. 2001) ("It is a matter of settled law that the insured bears the burden of demonstrating that the loss suffered falls within the terms of the policy.").

---

[15] Indeed, plaintiff admitted at trial that she did not believe her alleged ailments affected her job performance. (Plaintiff Testimony, 9/27/04, pp. 132-33.)

27

Plaintiff failed to fulfill her burden of proving that she was eligible for LTD benefits. Moreover, the information provided by or on behalf of plaintiff during the administrative process proved to the contrary and demonstrates the reasonableness of MetLife's conclusion that plaintiff was not totally disabled.

### B.  MetLife's Decision Was Not Arbitrary and Capricious Because There Was Ample Information in the Claim File Upon Which to Base its Denial.

Before reaching a final decision on plaintiff's claim for benefits, Mr. Marchese reviewed all of the medical evidence produced by or on behalf of plaintiff and concluded that the record did not support plaintiff's claim of total disability. (Marchese Testimony, 9/30/04, pp. 35-36, 48-49, 78.) While additional information in the form of answers to the questions outlined by the Nurse Consultant in July 2001 might theoretically have been useful, it was by no means necessary to enable Mr. Marchese to make a reasoned and well-substantiated decision given the volume and detail of medical evidence already contained in the administrative record. (Marchese Testimony, 9/30/04, pp. 60-61, 78, 169.)

ERISA requires only that the administrator conduct a reasonable inquiry into a claimant's condition. O'Reilly v. Hartford Life & Accident Ins. Co., 272 F.3d 955, 961 (7th Cir. 2001). MetLife more than fulfilled this obligation by repeatedly asking plaintiff and her doctors for additional information and by thoroughly evaluating the medical records provided. As detailed *supra*, MetLife sought and analyzed medical records from Doctors Tec, Witt, Goldman and Kagen and appropriately utilized its medical resources by having several Nurse Consultants and an Independent Physician Consultant assess plaintiff's claims.

Indeed, courts have upheld claim denials even where administrators engaged in significantly less thorough claims investigations than MetLife conducted in this case. For

28

example, in Cosme v. Ameritech C777, Inc., the plan administrator's failure to contact plaintiff's doctors to obtain follow-up medical information did not render its decision unreasonable. Cosme, 2004 U.S. Dist. LEXIS 8086 at * 10-11. In Sweeney v. Standard Ins. Co., the court held that "[w]hile it may have been preferable for Defendant to review medical records from all of Plaintiff's treating physicians, failing to do so was not arbitrary and capricious given the volume of medical information Defendant reviewed prior to September 7, 2001." Sweeney v. Standard Ins. Co., 276 F. Supp. 2d 388, 395 (E.D. Pa. 2003).

Similarly, the volume of medical information that MetLife reviewed prior to its September 27, 2001 decision regarding plaintiff's claim, including, in particular, the reports from Dr. Tec and the office notes and lab results from Dr. Witt, renders the absence of answers to the Nurse Consultant's proposed questions immaterial to the overall claim consideration process.

### C. MetLife Has the Discretion to Reject the Unsubstantiated Conclusions of Plaintiff's Treating Physicians.

Having failed to produce medical information sufficient to substantiate her claims, plaintiff argued that MetLife ought to have accepted the unsubstantiated conclusion of her doctors; however, the talismanic invocation of the word "disabled" by a treating physician is not enough to establish that plaintiff was disabled. Plan administrators are not obliged to accord special deference to the opinions of treating physicians. Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). See Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 135 n. 4 (2d Cir. 2001) (rejecting the "treating physician" rule). To the contrary, MetLife had the right – and the obligation – to investigate claims thoroughly and to make its own determination of a claimant's status, rather than rely on or unquestioningly accept the subjective (and potentially biased) conclusions of her treating physicians.

29

The fact that MetLife did not agree with the unsubstantiated opinions of plaintiff's physicians in no way renders its decision arbitrary or capricious. Fay v. Oxford Health Plan, 287 F.3d 96, 108 (2d Cir. 2002). For example, in Jackson v. Metropolitan Life Ins. Co., 1999 U.S. Dist. LEXIS 16269, at * 12 (W.D. Mich. Oct. 15, 1999), the court rejected plaintiff's claim that the plan administrator acted arbitrarily and capricious by discounting the opinions of plaintiff's treating doctors that plaintiff was totally disabled. The court held that the administrator had properly looked behind the doctors' conclusions of total disability to determine whether the conclusions were supported by symptoms of sufficient severity that would prevent plaintiff from performing the material duties of her regular job. Id. at * 13. Likewise, MetLife acted appropriately when it looked behind the conclusory opinions of Dr. Tec and Dr. Witt to the actual medical evidence in the file, which ultimately demonstrated plaintiff's ability to work.

### D.    MetLife Legitimately Sought Objective Medical Information from Plaintiff.

Plaintiff's argument that MetLife improperly requested and relied on objective medical evidence is wholly unsupported in the law. "It is not unreasonable for an insurer to credit objective evidence over subjective evidence." Couture, 315 F. Supp. 2d at 432. Indeed, "the very concept of proof connotes objectivity." Maniatty v. UnumProvident Corp., 218 F. Supp. 2d 500, 504 (S.D.N.Y. Aug. 30, 2002), *aff'd*, 2002 U.S. App. LEXIS 9383 (2d Cir. 2003). The objective medical evidence, such as the lab results showing that plaintiff did not meet the criteria for lupus and that her anemia had significantly improved, contradicts plaintiff's self-reported subjective complaints, such as "fatigue." Therefore, it was reasonable for MetLife to ask for and rely upon the objective medical information.

30

### E.   MetLife Was Not Required to Obtain an IME before Deciding Plaintiff's Claim.

Finally, contrary to plaintiff's claim, MetLife had no affirmative duty to have plaintiff examined, and it was not warranted under the circumstances. Although the Plan gives MetLife the option of requiring plaintiff to submit to a medical examination by a physician of its choice, the Plan creates no obligation that MetLife do so. (SPD, Defs' Ex. 11, p. DI-11.) The law is well settled that because the decision to obtain an independent medical examination is left to MetLife's discretion, MetLife's decision not to obtain one in these circumstances does not undermine the reasonableness of MetLife's decision. See Miller, 925 F.2d at 985 ("Under the terms of the Plan, the [claims administrator] need not request an independent examination …unless the employee first submits proof of…disability."). See also Bella v. Metropolitan Life Ins. Co., 1999 U.S. Dist. LEXIS 15473 at * 13 (W.D.N.Y. Sept. 30, 1999) (ERISA does not contemplate that the only way for a claims administrator to conduct a full and fair review is to have a claimant personally examined).

With plaintiff's claim in particular, an IME would have been of no benefit whatsoever because the initial issue in dispute was whether plaintiff was totally disabled at the time she stopped working. (Marchese Testimony, 9/30/04, pp. 51-52.) Since an IME conducted in 2001 would not have provided evidence regarding plaintiff's condition in 2000, an IME would not have assisted MetLife in its determination of whether plaintiff was totally disabled on the date she last worked in her occupation. Under these circumstances, it was reasonable for MetLife to rely on the opinion of an Independent Physician Consultant who was able to review all of plaintiff's records to assess whether plaintiff became medically unable to work in July 2000. See Etkin, 2001 U.S. Dist. LEXIS 17692 at * 16 ("it is not improper to rely on the opinions of non-

31

examining physicians who had before them the entire record of medical evidence, more evidence than was available to any one doctor who saw the plaintiff previously.")

## VII.  CONCLUSION

This is a case in which plaintiff has failed from the very start to satisfy her burden of presenting satisfactory evidence that she qualified for total disability benefits under the terms of her benefit plan. Having failed to carry her substantive burden, plaintiff instead attempted to undermine the validity of MetLife's claim process and its substantive claim decision through speculation, innuendo and assertions otherwise wholly unsupported by any evidence.

Contrary to plaintiff's assertions, MetLife conducted a thorough and complete claim review process based upon all of the information plaintiff chose to submit, and, indeed, MetLife exceeded its obligation under the Plan by seeking to obtain additional information beyond that which plaintiff chose to submit in support of her benefits claim.

Because there is ample evidence upon which to conclude that plaintiff is not totally disabled under the terms of the Plan, MetLife's decision to deny plaintiff LTD benefits was reasonable. No basis exists to establish that the decision was arbitrary and capricious; therefore, judgment must enter in favor of the defendants and the defendants should be awarded whatever relief the court deems just and proper, including attorneys' fees and costs under 29 U.S. C. §1132(g)(1).

DEFENDANT
METROPOLITAN LIFE INSURANCE
COMPANY

*/s/ Erin O'Brien Choquette/*
Theodore J. Tucci (ct05249)
ttucci@rc.com
Erin O'Brien Choquette (ct18585)
echoquette@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No. (860) 275-8200
Fax No. (860) 275-8299

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent via U.S. mail, postage prepaid, on this 3rd day of December, 2004 to the following:

John L. Evans, Esq.
Law Office of John L. Evans
30 Oak Street
Stamford, CT 06905

Kenneth W. Gage, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT 06901

*/s/ Erin O'Brien Choquette/*
Erin O'Brien Choquette