UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 DEC 27  P 2: 49
U.S. DISTRICT COURT
HARTFORD, CT.

RITA KRUK,
  Plaintiff,

VS.

PECHINEY PLASTICS PACKAGING, INC.
and METROPOLITAN LIFE INSURANCE
COMPANY, INC.,
  Defendants.

Civil No. 3:02CV121F(AVC)

## MEMORANDUM OF DECISION

This is an action for equitable relief arising out of a denial of long term disability benefits. It is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The plaintiff, Rita Kruk, alleges that the defendants, Pechiney Plastics Packaging, Inc., and Metropolitan Life Insurance Company, Inc. ("MetLife") arbitrarily and capriciously denied her long term disability benefits for which she was qualified in violation of ERISA.

On September 27, 28, 29, and 30, 2004, the parties tried the claim to the court. Having considered the evidence presented therein and the post-trial submissions, the court finds that MetLife arbitrarily and capriciously denied the plaintiff long term disability benefits for which she may have been qualified.

## FACTS

In or around December of 1994, the defendant, Pechiney Plastics Packaging, Inc., hired the plaintiff, Rita Kruk, to work as Pechiney's director of human resources. Pechiney sponsors an

employee welfare benefit plan ("the plan") for its employees. Pechiney is the plan administrator, funds the plan and retains final authority and responsibility for the plan and its operation. MetLife is the claims administrator for the plan and, in this capacity, has the discretion to resolve benefit eligibility issues.[1]

On or about July 10, 2000, Pechiney executives terminated Kruk's employment as of July 31, 2000. On July 28, 2000, Kruk became disabled with depression and lupus. She thereafter applied to Pechiney for short-term disability benefits and Pechiney paid such benefits from July 28, 2000 through January 17, 2001. During this time, Kruk also suffered from anemia, internal bleeding, and endometriosis. As a result, she underwent a hysterectomy on December 4, 2000.

On or about January 15, 2001, Kruk applied to MetLife for long term disability benefits. To be eligible for these benefits, the plan required Kruk to demonstrate through medical evidence that she was totally disabled. Under the plan, an employee is considered totally disabled if:

---

[1] Pursuant to an Administrative Services Agreement, Pechiney delegated its discretionary authority to MetLife to provide "full and fair review of determinations concerning eligibility for Plan Benefits and the interpretation of the Plan terms in connection with the appeal of claims denied in whole or in part, required under ERISA Section 503."

2

> For the first two years of [] long-term
> disability[], [the employee] is unable
> to perform the major duties of [that employee's]
> job with Pechiney Plastic Packaging, Inc.
> After [the] two year [period], [the employee]
> is totally and permanently disabled and unable
> to perform any job for which [that employee is]
> qualified by education, training and
> experience.

Kruk's application included a statement from her treating physician, one Leon Tec, in which Tec diagnosed Kruk as suffering from depression with a secondary diagnosis of anemia/ hematological disorder.

On or about January 31, 2001, MetLife wrote to Kruk and asked for additional medical information to evaluate her claim and, specifically, a so-called supplemental functional assessment, and a list of her medications, as well as copies of office notes, testing results, hospital admission and discharge summaries. Kruk thereafter forwarded a functional assessment report from Tec, who stated that Kruk's overall ability to relate to others was not impaired but that she suffered chronic, moderate, depression that moderately impaired her ability to perform a variety of tasks, such as supervising or managing others, comprehending and following instructions, and evaluating and making decisions without immediate supervision.

Kruk also forwarded a report from a rheumatologist, one Lawrence Kagen. Kagen opined that, as of July 28, 2000, Kruk had developed lupus. Kruk also provided records from her internist,

one David Witt, and a letter from one Gary Goldman, a gynecologist. Goldman stated that Kruk had some post-operative anemia, but that she also exhibited improved signs, i.e., an almost normal hematocrit level.

On March 26, 2001, MetLife initially approved Kruk's claim. On the same day, however, Metlife changed that determination and placed the claim on high review status because the payout would exceed $5,000 per month. MetLife then referred the claim to one Jeffrey Lieberman, a physician board certified in internal medicine and rheumatology, for additional review. Lieberman reviewed Kruk's file and made findings that were memorialized in a March 30, 2001 letter from MetLife to Kruk, in which MetLife stated, in relevant part:

> [MetLife has] reviewed the medical information submitted by Dr. Kegan who is the physician that is treating you for Systemic Lupus Erythematosus (SLE). A review of the medical information indicates that there is a suggestion of the diagnosis of lupus but there are no specific notes addressing the specific diagnosis. The lab tests submitted show a positive ANA in low titer: a positive ACA IgM several times. These are the only criteria for systemic lupus referenced in the chart. A note dated June 22, 2000 from Dr. Kegan indicates that you have never had pleurisy, arthritis, skin rashes, alopecia or other manifestations of SLE. Though you have laboratory evidence of systemic lupus, you do not clinically fit the diagnosis based on the records provided.
>
> The medical information also shows that you had problems with anemia in the past, but this was apparently due to fibroid tumor, endometriosis and uterine bleeding. You

4

> underwent a hysterectomy in December 2000 and this apparently corrected the problem.
>
> The Attending Physician's Statement indicates that you have a Class III cardiac function. A review of the medical [file] shows you had an ostium atrial septal defect that was repaired in 1998. On October 17, 2000, you underwent a CT of the chest that was negative. Your echocardiogram was negative other than the atrial septal defect. There is no documentation to substantiate the Class III cardiac function.
>
> . . . .
>
> In regard to your diagnosis of depression, Dr. Leon Tec indicates that you have GAF score of 50 and have moderate limitations on functional abilities. We did not receive any office notes or copies of any testing information to determine the extent of this condition.

The letter further advised Kruk that she did not meet the plan's definition of disability because her medical records failed to show an illness or injury rendering her unable to perform her job duties. The letter advised Kruk that she could appeal the decision and provide any new facts or medical information with the appeal.

On May 29, 2001, Kruk appealed the denial of her claim and submitted additional medical information, including letters from doctors Witt and Tec. Witt opined that Kruk was disabled and unable to work due to connective tissue disease, featuring joint pains, rashes, fever, anemia and fatigue, as well as positive ANA tests. Tec stated in his letter that Kruk was in psychotherapy because of severe depression and that Kruk was distraught,

5

suffered loss of energy and slept poorly. Further, Tec stated that the depression had affected Kruk's ability to concentrate and had made decision making difficult. Tec opined that Kruk's "depression was so severe that she should be. . . on long term disability." Tec also sent office notes and lab information.

On July 11, 2001, a Metlife nurse practitioner, one Diane Iannone, reviewed the letters submitted from Drs. Witt and Tec and recommended that Metlife seek additional medical information from them. Specifically, Iannone stated:

> [I] would recommend that Dr. Witt be faxed a medical request asking:
>
> *Based on the affected organs and severity of symptoms, how would you classify patient's [lupus]
>
> *Which of the American College of Rheumatology proposed criteria for [lupus classification] Have been identified in this patient?
>
> *Lab results from July 2000 including ANA, ESR CBC.
>
> *Copies of office notes from July 2000.
>
> *Treatment regimen including all medications and patient's response to these meds.
>
> *Objective findings that impact ability to RTW.
>
> *Detailed description of physical limitations/ restrictions.
>
> [I] would recommend that Dr. Tec be asked:
>
> *What is the current frequency of her treatment sessions?

6

>    *When is her Paxil 40 mg ordered and when was her
>    dosage last changed?  What other medications have
>    been tried, and with what result?
>
>    *What activities is the claimant capable of
>    managing on a daily basis (e.g., interacting
>    with others, managing information, managing
>    finances, keeping a schedule, making decisions,
>    reading, writing, computer work).
>
>    *Please provide a current, detailed mental
>    status exam, including the patient's
>    specific performance on defined status exam
>    tasks. (Emphasis added).

On July 12, 2001, MetLife submitted the above request to Dr. Witt but sent nothing to Dr. Tec.  Metlife did not receive any response to its information requests and did not follow-up with Witt or Tec concerning the request.  Metlife thereafter determined that Kruk's medical records merely indicated vague symptoms and that they failed to provide any objective, supportive medical information to support the claim of disability.  On October 1, 2001, Metlife denied the relief requested in Kruk's appeal.

## DISCUSSION

When an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits, the court reviews a decision to deny benefits under an "arbitrary and capricious" standard.  <u>Dunn. V. Stardard Ins. Co.</u>, 156 F. Supp.2d 227, 235 (D. Conn. 2001) (<u>citing</u> <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115, 109 S.Ct. 948 (1989)).  This deferential standard of review authorizes a court to "overturn a

7

decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)). The court "cannot re-weigh the evidence so long as substantial evidence supports the plan administrator's determination." Dunn. V. Stardard Ins. Co., 156 F. Supp.2d 227, 236 (D. Conn. 2001). Where a court reviews a decision denying benefits under the arbitrary and capricious standard, the court's review is limited to the administrative record. Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995)

In this case, MetLife had discretionary authority in determining whether Kruk was eligible for benefits and, accordingly, the court reviews the decision denying her benefits under the arbitrary and capricious standard. Having reviewed the record, the court concludes that the claim denial was arbitrary and capricious because Metlife, after concluding that additional medical evidence was required to fully consider the claim, denied the claim without ever submitting an information request to Dr. Tec and without making the appropriate inquiry as to the status of the information request submitted to Dr. Witt.

## CONCLUSION

For the foregoing reasons, Metlife's decision denying the plaintiff's application for long term disability benefits is VACATED. The matter is remanded to Metlife for a new eligibility

8

determination with consideration to be given to information that should have been made part of the administrative record, that is, Dr. Witt and Dr. Tec's responses to Ms. Iannone's information requests.

It is so ordered, this 23rd day of December, 2004, at Hartford, Connecticut.

                                  _____
                                  Alfred V. Covello
                                  United States District Judge