UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RITA KRUK<br><br>                  Plaintiff,<br><br>- against -<br><br>PECHINEY PLASTICS PACKAGING, INC. and METROPOLITAN LIFE INSURANCE COMPANY, INC.<br><br>                  Defendants. | CIVIL ACTION NO.<br>3:02CV121 (AVC)<br><br><br><br><br><br><br><br>January 11, 2005 |

## DEFENDANT PECHINEY PLASTICS PACKAGING INC.'S MEMORANDUM OF LAW SUPPORTING ITS MOTION FOR ATTORNEY FEES

Pursuant to Fed. R. Civ. Pro. 54(d)(2)(B) and 29 U.S.C. § 1132(g)(1), Defendant Pechiney Plastics Packaging, Inc. ("Pechiney") by its counsel Paul, Hastings, Janofsky & Walker LLP, hereby submits this Memorandum of Law in support of its Motion for Attorneys' Fees in the above-mentioned case.

Since this case was first filed three years ago, it was evident that the Plaintiff, Rita Kruk's ("Ms. Kruk" or "Plaintiff") ERISA claims against Pechiney were based upon nothing more than speculation and unsupported stories of conspiracies and mystery faxes. Unfortunately, while it was clear that MetLife, not Pechiney, was the only proper Defendant on her claim for denial of long term disability ("LTD") benefits, Plaintiff and her counsel continued to press this claim against Pechiney through trial, thereby forcing the Company to defend against this spurious claim. As the judgment entered in favor of Pechiney on December 28, 2004 illustrates, the Plaintiff failed to present <u>any</u>

credible evidence against Pechiney on this claim. As such, Pechiney respectfully requests that this Court award it reasonable attorneys' fees in this matter.[1]

## BACKGROUND

In Counts 2 and 4 of her Second Amended Complaint, dated October 28, 2002, Rita Kruk brought a claim against Pechiney Plastics, Inc. ("Pechiney") under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C.§1001 et seq relating to the denial of disability and severance benefits.[2] In particular, Kruk alleged three ERISA claims against Pechiney. First, Kruk claimed that Pechiney had wrongfully denied her severance benefits. When Pechiney proved that Plaintiff had never made a claim for severance benefits and that it was clear from the basic Plan documents that Plaintiff was not entitled to severance pay benefits, Kruk's claim was dismissed. Ruling on Defendants' Motion for Summary Judgment, Sept. 30, 2003 at 33, n.6. Second, Ms. Kruk claimed that Pechiney had breached a fiduciary duty to her in denying her long term disability benefits. The Court dismissed this claim noting that it was "surplusage." Id. at 34.

In her third and final ERISA claim against Pechiney, Ms. Kruk alleged that Pechiney had wrongfully denied her long term disability benefits. The Plaintiff brought this claim even thought the Summary Plan Description governing Pechiney's long term disability program clearly provided that Pechiney had designated MetLife as the claims administrator. See Summary Plan Description, Defs' Ex. 12 p. A1-5. Moreover, throughout discovery and trial, Plaintiff's course of conduct proved that she clearly understood that MetLife was the proper Defendant. First, the vast majority of Plaintiff's

---

[1] Plaintiff's claim of hostile environment sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17, as amended ("Title VII") was tried to a jury and to a defendants verdict with Judgment entered for Defendant on December 28, 2004.

[2] Plaintiff originally alleged these claims as state law claims in January 2002, thereby forcing Defendant to incur the expense of moving to dismiss these claims on the grounds of preemption. In response, Plaintiff conceded that Defendant was correct by filing an Amended Complaint in April 2002. (Declaration of Kenneth W. Gage ¶4(A).)

case on the ERISA claim both before and after the trial was directed at MetLife.[3] In addition, Ms. Kruk appealed the denial of her long term disability claim to MetLife, and requested that MetLife review additional information. (5/29/01 request for appeal, Defs' Ex. 30). Indeed, Plaintiff admitted that MetLife, not Pechiney, as the claims administrator, had full discretion over the decision whether Plaintiff was entitled to long term disability benefits under the plan. (Rule 9(c)(1) Statement at ¶50). In fact, this Court ruled in September 2003, a year prior to trial, that Pechiney had designated MetLife as the claims administrator, to carry out the functions of interpreting the Plan language and making binding determinations as to eligibility for benefits. (Ruling on Defendants' Motions for Summary Judgment, Sept. 30, 2003 at 32; Plan, Defs' Ex. 12, pp. A1-5.). In fact, even the Administrative Services Agreement admitted into evidence in this case made clear that MetLife, not Pechiney, determined Ms. Kruk's eligibility for benefits. (Defs' Ex. 3, p.7.)[4]

Similarly, the uncontroverted testimony at trial proved that the appeal unit at MetLife, not Pechiney, was charged with reviewing the Plaintiff's information and making a determination regarding Plaintiff's eligibility. (See e.g. Marchese Testimony, 9/30/04, ppg 35-36; 41-42; 48-49; 78). Ms. Kruk presented no evidence that showed any involvement by Pechiney during this process. While Plaintiff's counsel repeatedly tried to create fanciful stories of conspiracies and missing fax pages, the stories had no evidential support whatsoever.

Lastly, throughout the course of this case, Plaintiff and her counsel persisted in making unfounded allegations that Pechiney and MetLife somehow colluded in an effort to deny her benefits because Ms. Kruk had filed an EEOC Complaint against Pechiney. In particular, Kruk claimed that Ann "Billie" Wallace played a role in this collusion by, for example, not handling paperwork

---

[3] For example, Plaintiff spent numerous hours obtaining an incorrect Declaration from Nurse Denise Paci and then examining her at trial as to whether particular documents had been faxed to MetLife by Dr. Witt's office.
[4] Pursuant to the Administrative Services Agreement, Pechiney is obligated to pay any fee award granted to the Plaintiff against MetLife. Defs' Ex. 3, p. 23.

appropriately. Although Plaintiff had no evidence to support this claim and, in fact, Billie Wallace's uncontroverted testimony at deposition and at trial showed that she was the only person at Pechiney responsible for handling the paperwork related to Plaintiff's claim, and that her involvement was limited to obtaining the paperwork from Plaintiff and forwarding it all to MetLife, Plaintiff persisted in this theory through trial.[5]

When the course of the ERISA litigation against Pechiney is reviewed, it is evident that Plaintiff and her counsel continued to assert claims that were unsupported by any evidence at all.

## ARGUMENT

### A. Standard

Pursuant to Section § 1132(g)(1) of ERISA, the Court in its discretion may allow an award of reasonable attorney's fees and the costs of action to either party. Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(g)(1) et. seq. Indeed, the Second Circuit has recognized that ERISA "unambiguously authorizes the district court to award [attorney's fees]" to either party. Labarbera v. Clestra Hauserman Inc., 369 F.3d 224, 226-27 (2d Cir. 2004).

While the decision to award attorney's fees is left to the sound discretion of the trial court, the Second Circuit Court of Appeals has provided the five-factor inquiry set forth in Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987), to guide the exercise of this discretion when awarding attorney's fees under ERISA:

1. The degree of the offending party's culpability or bad faith;
2. The ability of the offending party to satisfy an award of attorney's fees;
3. Whether an award of fees would deter other persons from acting similarly under like circumstances;
4. The relative merits of the parties' positions;

---

[5] Similarly, Plaintiff forced Pechiney to occur further expense when she filed a baseless Motion for Late Disclosure of Experts in October 2002, forcing Pechiney to oppose the Motion. In denying the Plaintiff's Motion, this Court held that Plaintiff's explanation for missing the deadline was "beyond credulity" and that "such expert testimony is not relevant because the Plaintiff is not entitled under ERISA to supplement the record." Order on Plaintiff's Motion, December 4, 2002.

-4-

>   5.  Whether the action conferred a common benefit on a group of pension plan participants;

See, e.g., Krizek v. Cigna Group Ins., 345 F.3d 91, 102 (2d Cir. 2003). All five factors need not be satisfied in order to award attorney's fees to either party.[6]

### B. The Standard in This Circuit Favors an Attorneys' Fees Award to Defendant Pechiney Plastics.

1.  Plaintiff's ERISA Claims Against Pechiney Were Not Substantially Justified.

The Second Circuit has recognized that "[t]here are surely instances in which an award of attorney's fees against an ERISA plaintiff would be warranted." Salovaara V. Eckert, 222 F.3d at 31. Indeed, in circumstances similar to the case at bar, courts have awarded fees in cases where the Plaintiff's claim was not substantially justified. Anita Founds., 902 F.2d at 189-91 (upholding fee award where the plaintiffs "did not demonstrate a colorable legal position" and their suit was "in direct contravention of settlement agreements"; Operating Eng'rs Pension Trust v. Gilliam, 737 F.2d 1501, 1505-06 (9th Cir. 1984)(upholding fee award where the plaintiff's prosecution of the suit was "grossly unfair" and its legal position was "without merit"); see also Stark v. PPM Am., Inc., 354 F.3d 666 (7th Cir. 2004)(upholding fee award where the plaintiff's suit was not substantially justified); Funeral Fin. Sys. v. Pac. Mut. Life Ins. Co., 46 F. Supp. 2d 801 (N.D. Ill. 1999)(awarding attorney's fees under ERISA to prevailing defendant in an amount larger than the amount in dispute where plaintiff's lawsuit was not substantially justified). In the present case, Plaintiff's claims were not "substantially justified", and were, in fact, completely unsupported by any admissible evidence through discovery, and the trial itself.

---

[6] No single factor is "necessarily decisive; various permutations and combinations can support an award of attorney fees." Credit Mangers Ass'n of So. Calif. v. Kennesaw Life & Accident Ins. Co., 25 F.3d 743, 749 (9th Cir. 1994)(construing five factors identical to the Second Circuit Chambless factors).

### 2. The Chambless Factors Are Satisfied in Favor of Pechiney Plastics.

The Defendant respectfully asserts that this Court should award attorney's fees to Pechiney as the prevailing party on Plaintiff's ERISA claim because the applicable <u>Chambless</u> factors are more than satisfied in Pechiney's favor.

As described in greater detail above, the first <u>Chambless</u> factor inquires into the degree of the offending party's culpability or bad faith. While a finding of bad faith is not a prerequisite to a fee award against an ERISA plaintiff, <u>Credit Managers Ass'n of So. Calif. v. Kennesaw Life & Accident Ins. Co.</u>, 25 F.3d at 749 n.3, courts have held that fees can be awarded when plaintiff's counsel has acted in bad faith. <u>See</u> e.g. <u>Childers v. Medstar Health</u>, 289 F. Supp. 2d 714 (D. Md. 2003) (awarding attorney's fees and costs to prevailing defendant in an ERISA action where plaintiff's counsel acted in bad faith). As the discussion above indicates, in the instant case, both the Plaintiff and her counsel acted in bad faith in bringing her ERISA claim against Pechiney. Plaintiff pursued her ERISA claim against Pechiney along with claims administrator, although it was evident that the claim should have been directed solely toward MetLife, as the designated claims administrator.

Likewise, the third <u>Chambless</u> factor requires a court to consider whether an award of fees would deter other persons from acting similarly under like circumstances. The Second Circuit has pointed out in <u>Seitzman v. Sun Life Assurance Co., 311 F.3d 477, 485 (2d Cir. 2002)</u>, that this factor was "carefully phrased" to deter dishonest claimants. Indeed, the circuit court in <u>Seitzman</u> affirmed the district court's award of attorney's fees in an ERISA action to the prevailing defendant based on a finding that the plaintiff lacked credibility and had acted in bad faith in bringing suit for long-term disability benefits. While noting that the deterrence factor should be used as a shield rather than a sword, the court reasoned the "the imposition of attorneys' fees in these circumstances [where the plaintiff acted in bad faith and was unworthy of belief] has no tendency to inhibit the assertion even

of claims that are imperfect or on the borderline." Id. at 486. Similarly here, the imposition of attorney's fees against the Plaintiff would not inhibit plaintiffs with valid claims against proper defendants, but would serve to deter claims brought in bad faith against wrongly-named defendants. See Childers v. Medstar Health, 289 F. Supp. 2d 714, 718 (D. Md. 2003) (awarding prevailing ERISA defendants attorney's fees against plaintiff's counsel, holding that plaintiff's counsel had acted in bad faith by "pursuing [the] case to advance an ulterior motive, while aware of its legal and factual deficiencies." The Court reasoned that attorneys "by training and experience are 'in the best position to understand the problems presented in a frivolous case and to advise [a] plaintiff and to pursue the case or to withdraw.'" Id); Baker v. Greater Kansas City Laborers Welfare Fund, 716 F. Supp. 1229 (W.D. Mo. 1989) (assessing attorney's fees against the plaintiff and in an unsuccessful ERISA claim where it was apparent after the discovery stage that the claim was without merit.).

Lastly, the fourth factor requires the Court to balance the relative merits of the parties' positions. See Seitzman, 311 F.3d at 484. As this Court has entered judgment in favor of Pechiney on all claims, thereby determining that the Plaintiff's remaining ERISA claim against Pechiney was meritless, this factor plainly favors an award of fees to Pechiney.[7]

### C. Fees Requested

The details regarding the fees incurred and sought by Pechiney are included in the Declaration of Kenneth W. Gage attached hereto as Exhibit A.[8] As described in that declaration, a total of 190.1 hours of attorney time and 23 hours of paralegal time were expended over approximately three years

---

[7] The fifth factor considers whether the action conferred a common benefit on a group of pension plan participants. This factor is inapplicable to the instant case. See Seitzman, 311 F.3d at 482 (finding the fifth factor inapplicable to individual plaintiff's ERISA claim and awarding fees to the prevailing defendant).
[8] Pechiney will provide original billing records or other supporting material on an ex parte basis should the Court require it because to issues of attorney-client privilege.

in defense of Plaintiff's ERISA claims. Given the nature of this case, and the conduct of Plaintiff's counsel, the fees requested are reasonable.

## CONCLUSION

For the reasons stated herein and in the Declaration of Ken Gage submitted herewith, Pechiney respectfully requests that this Court award it attorneys fees in the amount of $68,077.00.

Respectfully Submitted,

By: _____
Kenneth W. Gage (ct12965)
Sarah E. Graves (ct15897)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
Email: kennethgage@paulhastings.com
      sarahgraves@paulhastings.com

Counsel for Defendant
PECHINEY PLASTICS PACKAGING, INC.

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing Defendant's Memorandum of Law Supporting Its Motion Attorneys Fees was served via overnight delivery, postage prepaid, this 11th day of January, 2005, to:

> John J. Evans
> Evans Law Offices LLC
> 30 Oak Street
> Stamford, CT  06905
>
> Theodore J. Tucci
> Erin K. O'Brien Choquette
> Robinson & Cole
> 280 Trumbull Street
> Hartford, CT  06103-3597

_____
Sarah E. Graves

STM/288539.3

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RITA KRUK,<br><br>     Plaintiff,<br><br>- against -<br><br>PECHINEY PLASTICS PACKAGING, INC. and METROPOLITAN LIFE INSURANCE CO., INC.,<br><br>     Defendant. | CIVIL ACTION NO.<br>3:02-CV-121 (AVC)<br><br>January 11, 2005 |

### **DECLARATION OF KENNETH W. GAGE**

Kenneth W. Gage, Esq., hereby declares, under penalty of perjury, that:

1. I am over the age of 18 and believe in the obligations of an oath.

2. I am a Partner in the law firm of Paul, Hastings, Janofsky and Walker, LLP ("Paul Hastings") and have served as counsel for the defendant, Pechiney Plastics Packaging, Inc. ("Pechiney"), in the above-captioned matter, and I submit this declaration in support of Pechiney's motion to recover attorney's fees pursuant to 29 U.S.C. §1132(g)(1). Prior to joining Paul Hastings on March 31, 2004, I was a partner in the law firm of Day, Berry and Howard, LLP ("DBH"), where I first worked on the above-captioned matter. As lead counsel for Pechiney on this matter, I am fully familiar with the facts and circumstances of the defense of Plaintiff's claims.

3. I have reviewed the billing records of DBH and Paul Hastings in order to segregate the time spent in defense of Pechiney on the plaintiff, Rita Kruk's claims under the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq. ("ERISA").

4. The work performed in Pechiney's defense of the Plaintiff's ERISA claims was as follows:

A. <u>Motion To Dismiss</u>: Plaintiff's original complaint contained claims under Connecticut State law, which were preempted by ERISA, as argued in Pechiney's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff's April 12, 2002 response to Pechiney's motion was that she did "not oppose this position," and she amended her complaint to allege claims for denial of severance benefits, denial of long term disability ("LTD") benefits and for breach of fiduciary duty under ERISA, all against Pechiney. The preparation of Pechiney's motion required 28.3 hours of junior associate time and 1.8 hours of partner time in 2002.[1]

B. <u>Discovery</u>: Pechiney responded to Plaintiff's discovery on the ERISA claims, and objected to the Plaintiff's late disclosure of expert witnesses. Plaintiff sought documents from Pechiney and deposed Pechiney employee, Ann ("Billie") Wallace. Plaintiff also moved unsuccessfully, on October 15, 2002, to disclose experts to testify on her ERISA claim, three months after the Court imposed deadline. On December 4, 2002, the Court denied this motion because, among other reasons, the proposed expert testimony was inadmissible on

---

[1] The 2002 hourly rates at DBH were $310 for Kenneth W. Gage ("KWG") and $195 for junior associate, Melissa L. Bellavia ("MLB").

Plaintiff's ERISA claims. Responding to these matters required 8.9 hours of junior associate time and 1.0 hour of partner time in 2002.

        C.    <u>Summary Judgment</u>: Pechiney successfully moved for summary judgment on Plaintiff's claims for severance benefits and for breach of fiduciary duty under ERISA. Preparing that portion of Pechiney's summary judgment motion required 18.2 hours of junior associate time and 1.2 hours of partner time in 2003.[2]

        D.    <u>The Joint Trial Memorandum</u>: Preparation of this document as it pertained to the defense of Plaintiff's LTD claim required the review of a substantial number of documents. 8.5 hours of associate time and 3.0 hours of partner time in 2003 were devoted to addressing Plaintiff's LTD claim in the joint trial memorandum.

        E.    <u>Trial Preparation</u>: In order to prepare for the defense of Plaintiff's LTD claim at trial, counsel was required to review Plaintiff's medical records, interview witnesses (Nurse Denise Paci and Dr. David Witt),[3] prepare Pechiney's own witness (Billie Wallace), and prepare for the cross-examination of Plaintiff herself. This required 11.6 hours of senior associate time, 6.5 hours of partner time, and 18.0 hours of paralegal time, all in 2004.[4]

        F.    <u>Trial</u>: This involved the equivalent of two full days of trial over four days, with testimony by Plaintiff, Billie Wallace, Denise Paci, Sal Marchese and Plaintiff's husband, Edward Kruk. A portion of each day on September 27th and September 28th related exclusively

---

[2] The 2003 hourly rates at DBH were $325 for KWG and $235 for MLB.

[3] Plaintiff subpoenaed Dr. Witt to testify at trial, but when he appeared in Court, Plaintiff excused him from his obligation to testify.

[4] The 2004 hourly rates at Paul Hastings were $425 (KWG), $400 for senior associate, Sarah E. Graves ("SEG"), and $170 for paralegal, Gretchen Choate ("GC").

to Plaintiff's ERISA claim for LTD benefits, as did half of the day on September 29th and the entire day on September 30th. Therefore, the trial required 15.5 hours of senior associate time and 15.5 hours of partner time in defense of the LTD claim.

  G. <u>Post Trial Briefing</u>: Undersigned counsel worked with counsel from Met Life to coordinate the filing of briefs in defense of Plaintiff's LTD claim, which involved a review of the entire trial record. In addition to its Post-Trial Memorandum, Pechiney also filed a reply memorandum relating to Plaintiff's claim for penalties under ERISA. This required 36.9 hours of partner time, 16.6 hours of senior associate time, 16.6 hours of junior associate time[5], and 5.0 hours of paralegal time.

  5. As discussed in the foregoing paragraphs, Pechiney has incurred the following amounts of attorneys' fees in defense of Plaintiff's ERISA claims:

|      |     | HOURS | RATE  | TOTAL       |
|------|-----|-------|-------|-------------|
| 2002 | KWG | 2.8   | $310  | $868.00     |
|      | MLB | 37.2  | $195  | $7,254.00   |
| 2003 | KWG | 4.2   | $325  | $1,365.00   |
|      | MLB | 26.7  | $235  | $6,274.50   |
| 2004 | KWG | 58.9  | $425  | $25,032.50  |
|      | SEG | 43.7  | $400  | $17,480.00  |
|      | JS  | 16.6  | $355  | $5,893.00   |
|      | GC  | 23    | $170  | $3,910.00   |
|      |     |       | **TOTAL** | **$68,077.00** |

I declare under the penalty of perjury under the laws of the United States of America that the above information is true and accurate to the best of my knowledge and belief.

---

[5] The 2004 hourly rate at Paul Hastings for associate, Jenny Stewart ("JS") was $355.

- 4 -

Executed on this 11th day of January 2005.

_____
Kenneth W. Gage

STM/288869.1