| Date | Init. | Description | Hours |
|---|---|---|---|
| 04/30/03 | JJE | Further drafting and amendments to memorandum including legal research and review of cases | 5.6 |
| 04/30/03 | JJE | Ltr to Gage with Witt's transmittal & answers to questions & fax to him and Erin O'Brien. | .6 |
| 05/01/03 | JJE | Prepare motion for additional five day extension of time to file opposition to SJ, and calls to opposing counsel re: same, amendment of rule 9(c)(2) statement | 3.2 |
| 05/03/03 | JJE | Research and amendments to memo and amend two affidavits. Detailed review of exhibits attached to Rottman affidavit, specif. B – Admin Services Agmt, C – Disability Plan, G – Application, K – IPC Review, and O – Wallace Deposition. Reread Wallace Deposition in detail and amend Memo re: same, further amendments to memorandum | 6.0 |
| 05/04/03 | JJE | Detailed review of exhibits attached to Sullivan affidavit, specif. 1 – Employer Statement, 2 – Plan Summary, 5 – Diary Review Report, 6 – Dr. Tec Statement – Missing Pg. 2 Of Attending Physician's Statement, 11 – Goldman Letter of 1/18/01, 12 – Supplemental Assessment, 15 – Kruk Letter, 16 – Witt Disability Letter, and 17 – Tec Disability Letter. Amend Memo, further amendments to affidavits and memo, and legal Research of Defendants' cases, etc | 9.0 |
| 05/05/03 | JJE | Further amendments to memorandum and research | 4.0 |
| 05/06/03 | JJE | Further amendments to memorandum and research | 4.5 |
| 05/07/03 | JJE | Final amendments to memorandum in opposition, and to affidavits re: SJ, attention to affidavit exhibits and multiple copies, and send to court for filing | 5.0 |
| 05/21/03 | JJE | Review Pechiney motion to extend time to reply to plaintiff's memo, after previous communications with counsel re: same, and after consent to such extension | .5 |
| 05/23/03 | JJE | Review ltr from Gage to Judge, and respose to Judge. | .8 |
| 06/20/03 | JJE | Letter to counsel re: 20 day extens to respd-motion to strike | .2 |
| 06/24/03 | JJE | Conf. w/LA and fax letters. | .2 |
| 07/21/03 | JJE | Ltr to Bellavia requesting extension time and review response | .3 |
| 08/11/03 | JJE | Review Bellavia fax of letter to Judge opposing our motion to file amended Rule 9(c)(2) statement | .1 |
| 10/20/03 | JJE | Review and sign joint motion and fax to Bellavia | .2 |
| 10/22/03 | JJE | Ltr to client Re: status. | .2 |
| 10/24/03 | JJE | Ltr from Bellavia re: agreed extension of Joint trial Memo | .1 |
| 12/12/03 | JJE | review ltr from Gage and fax response | .2 |
| 12/17/03 | JJE | review stip of defendants to trial before magistrate, and call counsel with response | .1 |
| 12/20/03 | JJE | Prep draft of Pretrial Order. | 1.8 |
| 12/23/03 | JJE | Amendments to joint pretrial order. | .4 |
| 12/29/03 | JJE | Rev. ltr from Bellavia, and draft ltr to her in response, re: no consent to Magistrate, and re: failure to share their proposed | |
| PAGE TOTAL | | | 43.1 |

|  |  | memorandum with Plaintiff | .4 |
|---|---|---|---|
| 12/30/03 | JJE | Review fax from Bellavia, and conf with her re: Court's PT order and meaning of terms. Explain dispute re: agreement on "stipulations of fact and law." Letter to Bellavia. Rev. ltr from atty Choquette re: PT Order and stipulations of undisputed facts, And proposed conclusions of law. | 1.2 |
| 12/30/03 | JJE | Review proposed Joint PT Memo from Bellavia by fax, and review stipulations they request I agree to. Call to her to voice objection, and conf with her re: Court's PT order | .3 |
| 12/30/03 | JJE | Print and review some cases in Pechiney's PT Order. | 2.5 |
| 12/31/03 | JJE | Ltr from Bellavia re: joint trial memo. | .2 |
| 01/03/04 | JJE | Prepare and finalize draft of Plaintiff's Pre-Trial Memorandum, with list of witnesses, exhibits, proposed findings of fact, and conclusions of law. | 3.5 |
| 01/05/04 | JJE | Review stip. of undisputed facts and proposed conclusions of law from MetLife, and print and read some cases cited. | 2.5 |
| 01/22/04 | JJE | Review Gage's letters to Judge, and two letters to Judge in response to Mr. Gage's ex-parte communications to the Court. | .5 |
| 02/02/04 | JJE | Review fax ltr from Bellavia and fax response, re: settlement | .1 |
| 02/06/04 | JJE | Review faxed ltr to Judge from Gage, re: trial dates | .1 |
| 06/07/04 | JJE | Ltr to Judge re: trial date-copies to counsel | .2 |
| 06/08/04 | JJE | Review ltr to Judge from Atty Gage, re: moving trial date | .2 |
| 09/02/04 | JJE | Meeting with client, and review medicals re: Tec and Witt. | .5 |
| 09/07/04 | JJE | review file with CD, and instructions to obtain updated meds and authorizations. | .3 |
| 09/10/04 | JJE | review Ltr from Atty. Gage. | .3 |
| 09/10/04 | JJE | Ltr from Atty. Gage. | .2 |
| 09/13/04 | JJE | Review ltr from Atty. Tucci | .2 |
| 09/14/04 | JJE | Ltr to gage w/St. Vincent records. | .1 |
| 09/15/04 | JJE | Review ltr and fax from Mr. Gage of Denise Paci "Declaration," retracting statements in her prior affidavit. Call to Ms. Paci, and conference regarding regarding the facts in her affidavit, and timing of faxing to MetLife. Call to client and discuss same, and discuss information confirmed by Witt's office as sent to MetLife. Call back and messages for Dr. Witt. And deliver trial exhibits to Atty. Gage. | 3.3 |
| 09/15/04 | JJE | Call back Ms. Paci and discuss faxing of materials, etc, and Conf. Re: fax confirmation(s),  Fax to her the confirm page of 10/12/01, and fax all documents to client. Conf with client. Rev ltr from Gage re: medical records, and prepare response | 2.7 |
| 09/16/04 | JJE | Received and review extensive documents of trial exhibits from Pechiney re: Erisa, and MetLife, over 2000 pages, and organize lists of relevant materials for Plaintiff's case, and list of objections. | 5.0 |
| 09/16/04 | JJE | Re-read admin. Services Agreement, and notes from Depo | ___ |
| PAGE TOTAL |  |  | 24.3 |

|            |     | Billie Wallace fro direct testimony | 2.1 |
|------------|-----|-------------------------------------|-----|
| 09/17/04   | JJE | Meeting with client and review MetLife materials. | 2.5 |
| 09/20/04   | JJE | Review IPC letter in detail and review medical records to find any references in records to medical descriptions in report. Review distribution list re: High Claim Review, and call client re: names, review bates stamped medical records from Metlife, pages 1 to 132, duplicates, and missing records. Review diary review report in further detail, and outline in some trial testimony, organize extensive documents. Ltr to gage re: Erisa claims. Fax Confid. ex-parte PT submission to Mag. Smith | 6.8 |
| 09/21/04   | JJE | Trial Preparation, document review, witness list review and outline testimony re: ERISA claims, review ltr from Gage re: quashing Wallace subpoena. Review new Tec ltr, and conf w/TB re: forward records to Gage. | 4.5 |
| 09/22/04   | JJE | Review obtained two pages of updated Dr. Tec records and fax to Gage. Review Gage letter re: tax returns. Review MetLife's fax to Judge, and objections to Plaintiff's exhibits, and two motions in limine with memorandums, research | 2.7 |
| 09/23/04   | JJE | Teleconf. With Atty. Gage/Choquette/Graves re: discovery issues, and subpoenas. Review my outline re: client testimony re: disability claims and order of events in denial process. Additional trial preparation re: disability claim, trip to Hartford with client for pretrial with Magistrate Smith and conferences. | 6.3 |
| 09/24/04   | JJE | Further Teleconf. With Atty. Gage/Choquette/Graves re: discovery issues, and subpoenas, order of witnesses, etc. Review and organize extensive disability claim exhibits. | 2.8 |
| 09/24/04   | JJE | Call from Judge's Clerk, and fax Trial Memo and Witness and Exhibit Lists to Court Clerk as requested. | .1 |
| 9/26/04    | JJE | Trip to Hartford for trial, and review exhibits for trial on the following day-9/27. (1/4 time this day allocated to disability claim) | 1.5 |
| 9/27/04    | JJE | Trip to Court, attendance at trial, argue motions and admittance of exhibits and presentation of evidence. further research and preparation for next day of trial. | 2.5 |
| 9/28/04    | JJE | Trip to Court, attendance at trial and presentation of evidence; further research and preparation for next day of trial. | 3.5 |
| 9/29/04    | JJE | Trip to Court, attendance at trial and presentation of evidence; testimony of Mr. Marchese, and cross examination, further research and preparation for next day of trial. | 8.0 |
| 9/30/04    | JJE | Trip to Court, attendance at trial and presentation of evidence; further direct and cross examination of MetLife witness, Sal Marchese, testimony by Plaintiff, and Ed Kruk. Meeting With clients to explain further procedure and Court's request for briefs. Travel to Stamford. | 8.5 |
| 10/5/04    | JJE | Call to court reporter re: trial transcripts for review to prep. |  |
| PAGE TOTAL |     |                                     | 51.8 |

16

|  |  |  |  |
|---|---|---|---|
|  |  | Plaintiff's Post-Trial Memorandum, and conf. Call to atty Tucci. | .2 |
| 10/6/04 | JJE | review fax from Choquette, and calls to/from Atty Tucci re: briefing schedule, and agreement on timing for jopint motion. | .4 |
| 10/08/04 | JJE | Review and approve joint motion faxed by Atty Tucci | .2 |
| 10/12/04 | JJE | Call reporter re: transcripts, prep ltr and send her a check. | .4 |
| 10/20/04 | JJE | Conferences with court reporter re: which testimony is needed. | .2 |
| 11/09/04 | JJE | Call reporter re: status of remainder of transcripts. Conf. | .2 |
| 11/08/04 | JJE | Review first group of trial transcripts received from Court Reporter, and begin review of same and notes re: relevant testimony. | 3.5 |
| 11/12/04 | JJE | Review transcripts of trial | 2.5 |
| 11/15/04 | JJE | Review trial transcripts and prep notes of relevant testimony. Begin draft of Plaintiff's post trial brief | 8.5 |
| 11/17/04 | JJE | Further review of trial transcripts and amendments to draft of post trial brief | 3.5 |
| 11/26/04 | JJE | Legal research and review of cases and trial transcripts, and further drafting of/amendments to post trial brief | 5.2 |
| 11/27/04 | JJE | Legal research and read cases, further drafting post trial brief | 2.0 |
| 11/29/04 | JJE | Computer legal research and review cases found: | 2.5 |
| 11/29/04 | JJE | Extensive review of trial transcripts, and further drafting of and amendments to post trial brief | 5.0 |
| 11/30/04 | JJE | Further drafting of/amendments to post trial brief | 4.5 |
| 12/01/04 | JJE | Trial transcript review, amend & add references in brief. | 3.2 |
| 12/03/04 | JJE | Research and amendments to post trial brief | 6.0 |
| 12/04/04 | JJE | Further research, drafting/amendments to post trial brief | 9.3 |
| 12/05/04 | JJE | Research and amendments to post trial brief, and check references to testimony | 9.5 |
| 12/06/04 | JJE | Final amendments to post trial brief, and e-mail to PT for conversion to "pdf" file, e-mail to AB. | 5.1 |
| 12/06/04 | JJE | Conf with AB re: calls to and from Court Clerk re: conversion of file to pdf format on disk, and call courier and send to Court. e-mails to Clerk's office of .pdf files, and prep notice of manual filing of | 1.5 |
| 12/09/04 | JJE | Review Post Trial Memorandum of MetLife. | 1.2 |
| 12/10/04 | JJE | Review Post Trial Memorandum of Pechiney | .3 |
| 01/03/05 | JJE | Call from TB, and review faxed Judgment of Court in detail, call to client and conference | 1.0 |
| PAGE TOTAL |  |  | 75.9 |

TOTAL HOURS:                                              335.3

**No. 02-9321 (2nd Cir. 09/24/2003) Krizek v. Cigna Group Ins.**

Federal Appellate District: 2nd

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

(Argued: August 28, 2003 Decided: September 24, 2003)

Docket No. 02-9321

JANET D. KRIZEK, Plaintiff-Appellant,
v.
CIGNA GROUP INSURANCE, Defendant-Appellee.

Before: WINTER, CALABRESI, KATZMANN, Circuit Judges.

Plaintiff appeals from a judgment of the United States District Court for the Northern District of New York (Mordue, J.), concluding that plaintiff is not entitled to long-term disability benefits under a group long-term disability plan issued by the defendant. We vacate and remand.

ROBERT J. CLUNE, Williamson, Clune & Stevens, Ithaca, NY, for Plaintiff-Appellant Janet D. Krizek.
JOHN HANRAHAN (Kevin G. Horbatiuk, on the brief), Russo, Keane & Toner, LLP, New York, NY, for Defendant-Appellee CIGNA Group Insurance.

KATZMANN, Circuit Judge:

Plaintiff-appellant Janet Krizek suffers from a mysterious ailment, which has perplexed numerous doctors for several years. Despite undergoing a multitude of tests and medical evaluations, Krizek has been unable to find a definitive diagnosis for her condition. Krizek's symptoms have worsened through the years, causing severe pain, fatigue, and other problems and eventually forcing her to cease working. She brings the instant litigation under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., against defendant- appellee Insurance Company of North America ("INA"), sued as CIGNA Group Insurance. She challenges INA's determination that she was ineligible for benefits pursuant to a group long-term disability policy (the "Plan"), which INA issued to her former employer, Cornell University. After holding a bench trial and conducting a de novo review of the administrative record, the United States District Court for the Northern District of New York (Mordue, J.) concluded that Krizek is not entitled to long-term disability benefits because she is not "totally disabled" within the meaning of the Plan.

While we agree with the District Court's decision to restrict its review to the record before the plan administrator because of Krizek's failure to show "good cause" warranting an expansion of the record, we are troubled by several aspects of the court's decision. Despite professing to review only the administrative record, the District Court relied heavily on evidence that was not part of the administrative record. The court also committed three clear errors of fact in assessing Krizek's subjective complaints of pain. Because we are unable to determine the impact of these errors on the court's ruling, we vacate the judgment and remand on the merits and, if appropriate, on the issue of attorney's fees. See infra Section III.

BACKGROUND

I. Krizek's Medical Problems

Krizek began working as a laboratory technician at Cornell in 1981. Over the course of her seventeen-year employment, Krizek's duties increased to the point where she managed a research laboratory, supervised graduate students, helped conduct experiments, conducted repeat experiments to confirm results, and performed various administrative duties in the laboratory. Krizek often worked overtime when the job required.

Beginning in 1991 or 1992, Krizek, at the time in her late 40s, began to experience fatigue and muscle aches. Krizek recalls that this fatigue and pain gradually became more severe and developed into more serious problems, including short-term memory loss, progressive hearing loss, impaired sense of taste and smell, sleeping difficulty, hypertension, and increased sensitivity to ultraviolet rays. Krizek claims that these problems significantly interfered with her ability to perform her job. For instance, her hearing difficulty inhibited her ability to talk on the phone, while her memory problems caused her to forget passwords, entry codes, and even people's name.

In the years that followed, Krizek visited numerous doctors and tried a multitude of medications, but few answers were found.1 On April 8, 1998, Krizek's primary care physician, Dr. Alan T. Midura, concluded that she "should go on total disability at this point until her symptoms improve or a more definite working diagnosis can be established and treatment adjusted." Dr. Thomas Bunch of the Mayo Clinic also stated in his report that Krizek's condition "is interfering with her life and she can't work." Otherwise, Krizek's medical evaluations revealed minimal conclusive diagnoses as to the nature of her illness, the cause of her symptoms, or solutions for alleviating them. For instance, one physician speculated that Krizek may suffer from an "autoimmune disorder such as lupus or mixed connective tissue disease, or possibly sarcoid", while two doctors have suspected that she had Sjogren's syndrome, but no physician was able to say with any certainty. CAT scans, MRIs, and other physical and neurological examinations likewise failed to indicate any enlightening abnormalities. Krizek's attempts at physical therapy only made her pain worse, and pain medications did little to relieve the pain. On September 14, 1998, Krizek applied for Social Security benefits and, on February 7, 1999, the Social Security Administration adjudged Krizek disabled as of April 8, 1998. Accordingly, Krizek was awarded $3,346.00 to cover the applicable preceding period and $842.00 per month for the future.

II. INA's Denial of Total Disability Benefits

Krizek's claim for total disability benefits was based upon the Plan's total disability provision, which states "[a]n Employee will be considered Totally Disabled if because of Injury or Sickness, he is unable to perform all the essential duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience." The Plan further defines "Disabilities Considered To Result from Sickness" as those disabilities which result "directly or indirectly from Sickness or infection, except an infection resulting from an accidental cut or wound" or are "caused by hernia or injuries resulting in hernia." INA referred Krizek to the Healthsouth Rehabilitation Center for a one-day Functional Capacity Examination ("FCE") conducted on October 12, 1998. The FCE concluded that Krizek is capable of working at a light level for a four- to five-hour day and at a sedentary level for an eight-hour day. On December 11, 1998, Regain Disability Management Services performed a Transferable Skills Analysis, which identified various alternative occupations for Krizek in light of the FCE and Krizek's educational background, work history, training, and medical restrictions. In a letter dated January 19, 1999, INA denied Krizek's claim, explaining "that the medical information contained in [Krizek's] file does not support an impairment which causes Total Disability as defined [in the Plan]." The letter relied upon the results of the FCE, which concluded that Krizek was "capable of working in a sedentary work demand level per the Dictionary of Occupational Titles for an eight (8) hour day." The letter also conveyed the list of alternative occupations identified in the Transferable Skills Analysis. Krizek appealed this denial on March 1, 1999. Her appeal consisted of a detailed letter, which she claims was written with her husband's assistance, reviewing the extensive history of her illness and explaining



why her disability precludes alternative occupations. Attached to this appeal were letters from family members, her former employer, and other individuals further explaining Krizek's deteriorating physical condition, as well as the Social Security Administration letter finding her to be disabled within the meaning of its rules. INA rejected Krizek's appeal on May 10, 1999. The rejection letter emphasized the absence of objective medical evidence demonstrating cognitive dysfunction or physical incapability. INA further explained that Krizek's own observations and the letters from her friends, co-workers, and her family members "can be construed as subjective in nature and therefore do not balance out the objective medical findings."

II. Proceedings Before the District Court

On October 12, 1999, Krizek filed a complaint in New York Supreme Court, Tompkins County, seeking payment of all benefits accrued and unpaid, an order designating Krizek as an eligible participant under the Plan qualifying her for benefits as they become due, and her attorney's fees. On November 10, 1999, the defendant filed a Notice of Removal, which resulted in transfer to the United States District Court for the Northern District of New York. The District Court held a bench trial on September 26, 2001, during which the parties were permitted to introduce evidence outside the administrative record. In a decision dated September 26, 2002, the District Court ruled in favor of the defendant. Despite its admission at trial of evidence outside the record, the court limited its review to the administrative record because of Krizek's failure to establish any of the conditions necessary to expand its review. The court noted, however, that even if it were to consider the expanded record, its conclusion would be the same. In conducting its de novo review, the court refused to give heightened weight to the determination by Dr. Midura, Krizek's primary care physician, that she was totally disabled and to the Social Security Administration's finding that Krizek was disabled. The court then considered the objective evidence of Krizek's disability, observing that "[t]he medical evidence in the record contains little objective evidence regarding her disability, and almost uniformly indicates that the examinations and diagnostic testing of plaintiff yielded essentially normal or unremarkable results." The court also relied on the FCE, which concluded that Krizek should be able to work at the light level for four to five hours per day or at the sedentary level for eight hours per day. After concluding that "the objective medical findings do not warrant a determination that plaintiff is unable to perform the essential duties of any occupation," the court turned to Krizek's subjective complaints. The court ultimately decided not to credit Krizek's complaints regarding her pain, fatigue, and other symptoms, explaining that her subjective claims were belied by her work with the Special Olympics, her preparation of a detailed appeal of INA's denial of benefits, and her competence on direct and cross examination at trial.

DISCUSSION

I. Evidence Outside Administrative Record

Krizek argues that the District Court erred in limiting its review to the record before the claims administrator. Although the court admitted at trial evidence that was not before the administrator, the court did not consider this additional evidence in reaching its decision. Krizek maintains that the court instead should have expanded its review to consider this evidence because the plan administrator operated under a conflict of interest. Krizek argues that, because INA, the underwriting company, is a subsidiary of CIGNA, the entity determining eligibility for benefits was also the company that would have ultimately paid those benefits. A district judge may expand its review of an administrative decision beyond the record in front of the claims administrator upon finding "good cause" warranting the introduction of additional evidence. Zervos v. Verizon, N.Y., Inc., 277 F.3d 635, 646 (2d Cir. 2002). A "demonstrated conflict of interest in the administrative reviewing body" can constitute "good cause." DeFelice v. Am. Int'l Life Assurance Co. of N.Y., 112 F.3d 61, 67 (2d Cir. 1997). The decision whether to consider evidence beyond the administrative record lies in the discretion of the district court and is