## UNTIED STATE DISTRICT COURT
## DISTRICT OF CONNECTICUT

KRUK, RITA    PLAINTIFF       :
                             :
          v.                 :    Civil Action No: 302CV121(AVC)
                             :
PECHINEY PLASTICS, INC., AND  :
METLIFE, INC.,   DEFENDANTS  :    OCTOBER 4, 2005

## REPLY TO THE DEFENDANTS' OBJECTIONS DATED SEPTEMBER 15, 2005, TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND AFFIDAVIT

The plaintiff respectfully submits this memorandum of law in reply to the

Defendant, MetLife's, recent memorandum opposing Plaintiff's Motion for attorney's

fees, dated January 17, 2005.  The following facts are sworn to by Plaintiff's counsel, in

further support of Plaintiff's motion for attorney's fees.

**I.    Introduction:**

On August 30, 2005, the Court permitted the Defendant, MetLife, additional time

to submit detailed objections to the line entries, contained in the computer timesheet of

Plaintiff's counsel, in order to demonstrate the specific objections to each line item

objected to by the Defendant.  But this was not done.  Instead, the Defendant simply

marked dozens of the time entries as improper, and recited various reasons that such

time should not be awarded, without indicating which specific entries are objected to for

which reasons.  This does not conform with the Court's direction to detail the objections

to specific line items in the timesheets, and the Defendant has therefore failed to

adequately object to any specific time entries.  The Defendant seems to ask the court

to infer on its own, which of Defendant's objections apply to which specific time entries.

II.    **Specific Arguments**:

A.    **Documentation/Adequacy of Time Records**:

The Defendant first states that Plaintiff's counsel, the undersigned, has admitted that he did not keep proper documentation of hours spent in the ERISA litigation, however, nothing could be more inaccurate. The undersigned made clear at the hearing on August 30, 2005, and in the affidavits on file, that the timesheets submitted with the motion for attorney's fees, dated January 17, 2005, and with Plaintiff's Supplement to the Motion for Attorney's Fees, dated August 29, 2005, contain contemporaneously recorded detail of the time invested in the ERISA claims in this case, and which were kept in the normal manner that Plaintiff's counsel has used since 1992, when he first obtained the "Timeslips" time and billing software. (see also Plaintiff's "Supplement to Motion for Attorney's Fees," dated August 29, 2005).

Why Defendant's counsel continues to misstate these facts, despite the repeated explanations provided him, is unknown. In its memorandum Defendant continues to argue that either Plaintiff counsel did not create adequate records, or that the Defendant did not receive the records to review same. Neither however is true, and these arguments are disingenuous, as demonstrated by the affidavits of Plaintiff's counsel. Although MetLife counsel states that there was some destruction of records, this also is untrue, since there were no records of the time spent of the ERISA claims, that were destroyed. To suggest otherwise is simply misleading. There is no requirement that Plaintiff or counsel keep records of time spent on a Title VII claim in

which the Plaintiff was unsuccessful.  Any time spent on Title VII claims is completely

irrelevant in any event, since it is not claimed in Plaintiff's Motion for Attorney's fees.

## B.    Other ERISA Count:

The Defendant next argues that because the only count on which the Plaintiff

was successful, was the ERISA count against MetLife, only time spent on this specific

claim against MetLife should not be awarded.  However, as MetLife's counsel admitted

in court on August 30, 2005, it is the Defendant, Pechiney, who is responsible to pay

for any amounts awarded to Plaintiff for attorney's fees, or as benefits under the ERISA

plan operated by Pechiney for its employees.  It is clear from the administrative

Services Agreement between MetLife and Pechiney, (Plaintiff's trial Exhibit 16), that

MetLife was only acting as agent for Pechiney in administering the plan, and that

Pechiney has always had the only real financial interest in this case, and as a result,

was vigorous in its defense of the ERISA claims against both it and MetLife.  Pechiney

and MetLife worked together and acted in concert in the defense of the ERISA claims

against them, which claims were identical against each of them.  Both MetLife and

Pechiney were administrators of the ERISA plan, and the administrative services

agreement between the two companies provides that Pechiney has final decision

making authority regarding all decisions of MetLife in administering the plan   No action

has been taken by MetLife in this case, without consulting first with Pechiney, its

customer, and obtaining its approval.  Therefore, due to this unity of interest, it makes

no difference that the ERISA claim against Pechiney was dismissed, as all the time

spent by Plaintiff's counsel in connection with Pechiney and involving the ERISA claims, was equally necessary to prepare for trial against MetLife, Pechiney's agent.

In addition, a Plaintiff need not be successful in his or her ERISA claims, in order to receive an award of attorney's fees.  See *Winpisinger v. Aurora Corp.*, 469 F.Supp. 782 (N.D. Ohio, 1979), where the Court awarded fees to counsel's client, who was unsuccessful, where the services rendered were beneficial to administration of the pension fund.

MetLife argues that time spent by Plaintiff's counsel working with Pechiney's counsel and relating to the ERISA claims should not be awarded against MetLife. However, the time spent with Pechiney's counsel, was in reality, time spent with MetLife's counsel as well, since the two were working in unison.  MetLife ignores the fact that time spent with discovery issues involving Pechiney was tantamount to spending the same time with MetLife.  Otherwise, MetLife could simply have Pechiney conduct all of its discovery, and avoid paying attorney's fees under ERISA, when it looses.  ERISA does not limit counsel fees to time spent on certain types of work in connection with the ERISA claims, or to only successful motions or proceedings. Rather, it gives the Court discretion to determine the amount of fees that are reasonable under the circumstances of the case.

A plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount of attorney's fees, where, as here, the successful and unsuccessful claims were interrelated and required essentially the same proof. *Murphy*

*v. Lynn*, 118 F.3d 938, 951 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998); *Lunday*,

42 F.3d at 134; *Grant v. Bethlehem Steel Corp.*, 973 F.2d 96, 101 (2d Cir. 1992), cert.

denied, 506 U.S. 1053 (1993); *DeLeon v. Little*, No. 3:94CV902RNC, 2000 WL 435494,

at *4 (D. Conn. Mar. 2, 2000).  In this case all time spent with Pechiney's counsel in

connection with the ERISA claims, was necessarily spent in order to succeed at trial

against MetLife, and should therefore be compensated.

**D.    Discovery:**

MetLife further argues that it did no discovery and any discovery conducted by

Plaintiff's counsel should not be compensated, since only the administrative claims file

was admissible at trial.  This argument was rejected in *Anita Foundations v. ILGWU*

*NatT. Retirement Fund.*, 902 F.2d 185 (2nd Cir. 1990), where the Court stated:

> "The Fund fails to establish how the award is excessive, except to rely on the
> general assertion that the case required no discovery and was decided on a
> motion for summary judgment. See *American Communications*, 507 F.Supp. at
> 924."

Similarly here, MetLife has no actual argument, but simply a general objection to

the time spent on discovery, without more.  The discovery time however was required,

in order to obtain essential information and documents, to determine what was

contained in the MetLife claims file, what was not contained therein, why some

documents were not part of the claims file, and whether MetLife or the medical

providers knew the documents were needed.  For these reasons all the time spent in

ERISA discovery in this case should be awarded to Plaintiff, since it was essential to

proving Plaintiff's case at trial.

Though MetLife argues that it should not pay legal fees for matters related to discovery, because, as it claims, only the claims file was admissible at trial, it did not object to the depositions of Ann Wallace who testified at trial for MetLife, or of Laura Sullivan, who handled this litigation for MetLife. Also, the claims file that was delivered to the Plaintiff in this case, in connection with counsel's agreed upon Rule 26 disclosures, did not contain many documents that were received through discovery, the most important of which was the computer dairy of the handling of Plaintiff's claim. This diary showed that her claim was first approved, then the approval was rescinded, and her claim was sent to a "High Claims Review" status, for more detailed review and examination. All discovery that took place in this case regarding the ERISA claims, was necessary to the ERISA claims against both Defendants, which were identical.

Further, the deposition of Ann Wallace, Pechiney's employee who initially handled Plaintiff's application for long term disability benefits, was critically relevant to the pursuit of the claim against MetLife. This time should therefore be awarded to Plaintiff against MetLife.

**E.    Timesheet includes no time from claims other than ERISA:**

MetLife argues that Plaintiff's counsel's timesheet indicates that "much of the time listed relates to Title VII claims...," however, the Defendant does not specify any such time entries that show work on Title VII claims, because all the time on the timesheets only includes work on the ERISA claims. Defendant's counsel's repeated misstatements of fact in this regard do not change the detailed work into something it is

not.

**F.**    **Time Spent on Summary Judgment Motion:**

MetLife challenges the time spent by Plaintiff's counsel replying to the summary judgment motions of Pechiney and MetLife, which motions were essentially identical. In fact, Pechiney's and MetLife's filings in this case, often stated that they adopt the arguments of the other in connection with their opposition to Plaintiff. However, a cursory review of Plaintiff's memorandum in opposition to the summary judgment motions clearly shows that at least 90% of the legal work required to prepare the memorandum, was performed in connection with the ERISA claims, rather than the Title VII claims. All time itemized as spent on the summary judgment motions in the ERISA case was spent, and was necessary to win this action against MetLife. Defendants' counsel's assumption that because over 90 hours were spent in connection with the summary judgment motion, that part of it had to include time responding to the Title VII claims, is both logically fallacious, and factually incorrect. The time required to respond to the summary judgment motions was necessary, because of the Defendants' lengthy affidavits, containing hundreds of pages of exhibits, and the lengthy legal research of the ERISA statutes and cases, and also the Code of Federal Regulations which changed each year both prior to and during the pendency of this case.

Plaintiff's memorandum in opposition to the motion for summary judgment alone contained 38 pages, and of this, the ERISA claims consumed pages 3 through 37, or more than ninety three (93%) percent of the memorandum in opposition.

Defendant's reliance on the case of *Tsombanidis v. City of New Haven*, 208

F.Supp. 2d 263 (D.Conn. 2002), (copy attached as Exhibit A) where Defendant claims that the court allocated fees and costs against two defendants on an 80/20 split, is misplaced.  In that case, the Court did not award fees based on an allocation other than that proposed by Plaintiff's counsel, who allocated Plaintiff's counsel's fees.  In addition the 80/20 split referred to by MetLife's counsel is completely misstated, since counsel says this is an allocation of the Plaintiff's attorney's fees by the Court, but it was not. The 80/20 split was used by the Court only to allocate the cost of the trial transcript of $4,013.16 as the trial time had been split.  It therefore appears that Defendant's have misstated the facts and the holding in the *Tsombanidis* case. (See of Defendant's Supplemental Objection, dated September 15, 2005).

ERISA authorizes federal and state courts to award attorney's fees to the to either party in litigation, under 29 U.S.C. §1132(g), in any action by a participant of an ERISA plan.  In the present case, there can be no question that the plaintiff, by virtue of the Court's Judgment, is a prevailing party.  And "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed. 2d 40 (1983).  The plaintiff would respectfully submit that the verdict returned on December 28, 2004, represents an "excellent result" and that a full fee should be awarded.

## G.    The Title VII Claims

In the present case, the plaintiff did not prevail on her Title VII claims, however, this is of no consequence, because Plaintiff has not submitted any time records for the

time expended on those claims, and has not requested any award for such time, but rather has simply removed any time from the computer time records that had been performed in connection with the Title VII claims, so that the time contained in the timesheets submitted herein is accurate regarding the ERISA claims. Although MetLife's counsel continues to claim that there is time claimed by Plaintiff that was performed in cocnnection with matters unrelated to the ERISA claim, this is simply untrue, as is made clear by the two affidavits of Plaintiff's counsel, on file in this action, which detail the time involved relating to ERISA claims in this case.

All of these claims relied on a common core of facts which also formed the basis for the claims on which the plaintiff did prevail. There is a distinct commonality among both of the ERISA claims pursued, and the factual discovery and litigation efforts would have been the same, even if the losing ERISA claim had not been included from the start. Pursuant to the rule of *Hensley* and its progeny, there should be no penalty to the plaintiff for the inclusion of these claims.

**H.    Vagueness:**

Although MetLife claims that some time entries are too vague to allow an understanding of Plaintiff's counsel's work, the Defendant does not indicate which entries these are, and did not ask any questions of Plaintiff's counsel at the hearing on August 30, 2005, to obtain a better understanding. But this was the purpose of the hearing on August 30, 2005. The Defendant cannot ask the Court to now determine on its own which entries Defendant feels are vague, and then ask the Court to decide

10

these entries are not compensable time, when the Defendant has failed to ever object to any of the specific time entries.

The Plaintiff submits that all the time entries contained in the timesheets are detailed in the manner that is usual in the business of law practices, and gives adequate detail of each entry to know what work was performed.

II    **Calculating the Lodestar – Hours Reasonably Expended Multiplied by the Reasonable Hourly Rate**

The test for whether an attorney's hours were reasonably expended "is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Woodridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990). In this case, all time spent relating to Pechiney and MetLife, in connection with the ERISA claims had to be spent

The determination of a reasonable fee award is arrived at by multiplying the number of hours reasonably expended on the case by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424 (1983). This approach, generally referred to as the "lodestar approach", has been sanctioned as the appropriate manner of calculating fee awards by the Supreme Court. As noted by the Supreme Court in Blanchard v. Bergeron, 489 U.S. 87, 94 (1989):

> [I]n *Hensley* and in subsequent cases, we have adopted the lodestar approach as the centerpiece of attorney's fee awards. The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended on the litigation.

11

Id. At 94.

### A.     Calculating Hours Reasonably Expended

In support of Plaintiff's motion for attorney's fees, the undersigned, Plaintiff's plaintiff has filed detailed, chronological time records, contemporaneously maintained, detailing the specific tasks performed.  The plaintiff respectfully submits that all of the work detailed in the time records was reasonable, and necessary to the proper and effective presentation of the subject claim.

The one *Johnson* factor that still has some vitality is the "results obtained" factor, which can be applied by the District Court *after* the lodestar figure is computed. Following the lodestar calculation, the trial court may consider the results obtained in determining whether an adjustment of the fee award is appropriate.  In cases where an "excellent result" is obtained, there should be no downward adjustment of the fee, although the court retains authority to increase the fee in appropriate cases.

In cases involving multiple related claims, or multiple claims (whether related or unrelated) for relief involving a "common core of facts" or "based on related legal theories", the "results obtained" analysis can be applied after the formulation of the lodestar to determine if adjustment is warranted, since, as the Court has observed:

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discreet claims.  Instead the court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983).

This is applicable in the instant case, where MetLife claims that Plaintiff should not be compensated for time expended in relation to the ERISA claim against Pechiney, even though Metlife was Pechiney's agent for all purposes, and all work involving Pechiney would have been necessary, regardless of whether an ERISA claim had even been brought against Pechiney. Plaintiff should therefore be compensated for all time expended in relation to the ERISA claims in this case.

However, the "results obtained" factor should not be used to lower a fee award simply because the plaintiff has not succeeded on every claim raised in the lawsuit. On the contrary, the plaintiff's failure to succeed on any number of claims contained in a Complaint should not form the basis for a reduction of the fee award, where the plaintiff has prevailed on some claims, and where, as in this case, the claims pertain to a common core of facts. The ERISA claims against MetLife and against Pechiney, and the facts supporting them were identical. As the *Hensley* Court specifically cautioned:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances, **the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See, Davis v. County of Los Angeles,** 8 E.P.D. Par. 9444, at 5049 (C.D.Cal. 1974). Litigants in good faith may raise alternative legal grounds for a desired outcome, and **the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee.**

Hensley, 461 U.S. at 435 (emphasis added).

The *Hensley* Court stressed that "excellent results" did not mean prevailing on every contention raised in the lawsuit. Id. At 440. The Court wanted to make sure that

litigants would be free to raise and lose alternative legal theories (or claims) to redress their injuries without fear of either a diminution of adequate compensation for their counsel or a dilution of the Congressional intent behind Section 1988. *Hensley* consistently has been applied to prevent reduction of the lodestar where the unsuccessful claims were related to the successful ones, where the claims shared a common core of facts, or where the claims were based on similar legal theories. Terminate Control Corporation v. Horowitz, 28 F.3d 1335, 1343 (2d Cir. 1994)(upholding district court's refusal to reduce lodestar, where the facts and legal theories were "thoroughly intermingled" and constituted a common core of facts); Casey v. City of Cabool, Mo., 12 F.3d 799, 806 (8th Cir. 1993), *cert. denied* 115 S.Ct. 325 (1994); Odina v. Westin Tucson Hotel, 53 F.3d 1484, 1499 (9th Cir. 1995); Dambrot v. Central Michigan University, 55 F.3d 1177, 1193 (6th Cir. 1995); Abrams v. Lightolier Inc., 50 F.3d 1204, 1222 (3d Cir. 1995).

The Court in the *Tsombanidis* case, supra, stated that in awarding attorney's fees:

> "The following factors also may be considered: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3.

All of these factors favor the granting of attorney's fees in the amounts requested by

Plaintiff.  As a solo practitioner, plaintiff's counsel often worked on this case, to the exclusioin of all other cases pending in his office.  ERISA is also considered to be a complex statutory framework, regarding which few lawyers claim to be experts, or even well versed.  Regarding similar awards, in the case of *Dobson v. Hartford Financial Services*, ___ F.Supp.2d ___ (D.Conn., August 2, 2002), the Court awarded attorneys' fees in the amount of $119,674.52 and costs in the amount of $12,193.46.  In *Jordan v. Michigan Conference of Teamsters Welfare Fund,* 207 F.3d 854, 858 (6th Cir. 2000), the Court awarded attorney's fees of $248,944.71 and expenses of $5,649.68.  In *Salovaara v. Eckert* 222 F.3d 19, 27 (2d Cir. 2000), the Second Circuit Court of Appeals affirmed the District Court's award of attorney's fees in the amount of $466,599, under ERISA.  Certainly Plaintiff request for attorney's fees and costs of less than $1,00,000.00 is far less than the typical fees charged in ERISA cases, especially where an individual employee must file suit against an employer of thousands, and a major insurance carrier such as MetLife, who are represented by the largest law firms in the State: Day, Berry & Howard, and Robinson and Cole.

All of the time itemized on the computer timesheets attached to Plaintiff's supplemental Motion for attorney's fees, represents reasonable time expenditure in furtherance of the overall claim.  <u>Woodridge v. Marlene Indus. Corp.</u>, 898 F.2d 1169, 1177 (6th Cir. 1990).  Even the time that Defendant characterizes as wasted or baseless, is time that should have been spent on the facts that were in fact proven at trial, as, for example, the time spent on nurse Denise Paci's testimony that the medical

record was, in fact, sent to MetLife, in July, 2001, etc.  The Court made mentioin of this testimony in its decision.

In sum, the plaintiff has taken all steps possible to ensure that the billing records offered in support of this motion for attorney's fees accurately represent the total hours expended, and which were necessary to obtain the level of success achieved against the Defendant, MetLife.  The Plaintiff has already deducted time expended that can be solely attributed to the Plaintiff's Title VII claims.  Accordingly, the plaintiff would respectfully submit that no further reduction is appropriate.

III.   **Calculating Reasonable Hourly Rate**

In determining a reasonable hourly rate, the Supreme Court has instructed courts to use "prevailing market rates" that are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886 (1984).  The plaintiff would respectfully submit that the rate of : $275/hour for Plaintiff's counsel's time, satisfies this standard, and should be compensated as requested.  The Defendant, at the hearing on August 30, 2005, admitted that the hourly rate and amount of time spent, as itemized on the computer timesheets, was not objectionable.

The Plaintiff respectfully requests that additional time in the amount of $4,977.50, as itemized on the computer timesheets attached hereto as Exhibit B, and which represents time invested in this matter, since the date of the last timesheet, August 26, 2005.  Plaintiff respectfully requests that this time, also be awarded against

16

the Defendant, MetLife, which represents time that was contemporaneously recorded, and that was necessarily spent in responding to Defendant's objections to Plaintiff's motion for attorney's fees, which motion the Defendant has had in its possession since January of 2005.

A.    **Litigation Expenses/Costs:**

The plaintiff also requests that the Court award to him his litigation expenses incurred relative to the prosecution of this case.  These expenses are recoverable as part of an award of fees under ERISA.

"Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable as attorney's fees under Section 1988." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1216, n. 7 (9th Cir. 1986), rehearing denied and opinion amended, 808 F.2d 1373 (9th Cir. 1987); Accord Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994).  Reimbursable expenses include "travel, courier and copying costs . . ." Davis v. City & County of San Francisco, 976 F.2d at 1556.

**IV    Conclusion:**

In conclusion, the plaintiff hereby respectfully requests that the Court award the following fees and costs:

1.  $90,117.50    for fees through January 13, 2005, as itemized in Exhibit A of Plaintiff's Supplement to Motion for Attorney's Fees, dated August 29, 2005.

2.  $ 4,427.50    for fees 1/13/05 through 8/26/05 for 16.1 hours, for fees as itemized in Exhibit B of Plaintiff's Supplement to Motion for Attorney's Fees, dated August 29, 2005.

3.  $ 4,977.50    for fees from 8/29/05 through 10/4/05 for 18.1 hours, as itemized in Exhibit B attached hereto.

4.  $ 1,708.83    for out of pocket costs, as contained on Page 3, of Plaintiff's Supplement to Motion for Attorney's Fees, dated August 29, 2005.

_____

$101,231.33    TOTAL FEES AND COSTS.

RESPECTFULLY REQUESTED,
THE PLAINTIFF,


By_____
John J. Evans, her attorney
Evans Law Offices, LLC
30 Oak Street
Stamford, CT   06905
(203)353-8880, Fed. Bar No. ct06288


Personally appeared, John J. Evans, who subscribed and swore to the truth of the foregoing stated facts, this 4th day of October, 2005.


_____
Joseph Maker, Esq.
Commissioner of Superior Court


**CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed to all counsel and pro se parties of record as listed below this 4th day of October 2005.

Kenneth W. Gage, Esq.
Paul, Hastings, Janofsky & Walker LLP
1055 Washington Boulevard
Stamford, CT  06901-2216

Theodore J. Tucci, Esq.

Erin K. O'Brien, Esq.
Robinson & Cole.
280 Trumbull Street
Hartford, CT 06103-3597

_____
John J. Evans, Esq.

## Tsombanidis v. City of West Haven, 208 F.Supp. 2d 263 (D.Conn. 2002)

BEVERLY **TSOMBANIDIS**, OXFORD HOUSE, INC., and JOHN DOES ONE THROUGH SEVEN (Current and prospective residents of 421 Platt Avenue, West Haven, Connecticut), Plaintiffs, v. CITY OF WEST HAVEN, CONNECTICUT, FIRST FIRE DISTRICT OF THE CITY OF WEST HAVEN, Defendants.

UNITED STATES DISTRICT COURT DISTRICT OF CONNECTICUT

Decided June 18, 2002

No. 3:98CV01316(GLG)

RULING ON PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS

Following this Court's finding that plaintiffs are prevailing parties entitled to an award of fees and costs against the City of West Haven and the First Fire District of the City of West Haven, plaintiffs have submitted their application for attorneys' fees in the amount of $262,622.01, and costs in the amount of $20,102.48 [Doc. ## 150, 155, 167, 176, 178].1 Pursuant to this Court's directive that plaintiffs allocate their fees and costs between the two defendants, plaintiffs have asked that the Court award attorneys' fees against the City in the amount of $133,072.63, and against the Fire District in the amount of $129,549.38. Plaintiffs have also allocated their requested costs, $11,435.12 against the City and $8,667.36 against the Fire District.

After due consideration of the memoranda, affidavits, and supporting documents submitted by the parties, the Court GRANTS plaintiffs' application to the extent set forth below.

DISCUSSION

I. Attorneys' Fees Award Standard

In determining the amount of attorneys' fees to be awarded to a prevailing party under the Fair Housing Act ("FHAA"), 42 U.S.C. § 3613(c)(2), or the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205, the Court employs the standards developed under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 602 & n.4 (2001); City of Burlington v. Dague, 505 U.S. 557, 562 (1992); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 757 (2d Cir. 1998). Under § 1988(b), the Court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Further, an award of attorneys' fees under that section may include, in the Court's discretion, expert fees. 42 U.S.C. § 1988(c).

The district court is afforded broad discretion in determining a reasonable fee

award based on the circumstances in the case. Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). The "normal starting point for calculating reasonable attorneys' fees to be awarded to a prevailing civil rights plaintiff is the calculation of a so-called 'lodestar' figure, which is arrived at by multiplying 'the number of hours reasonably expended in the litigation . . . by a reasonable hourly rate.'" Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998)(quoting Hensley, 461 U.S. at 433). The rates to be used in calculating the § 1988 lodestar are the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 & n.11 (1984); Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998). "Further, in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.'" Gierlinger, 160 F.3d at 882 (quoting Missouri v. Jenkins, 491 U.S. 274, 284 (1989)); see also LeBlanc-Sternberg, 143 F.3d at 764. There is a strong presumption that the lodestar figure represents a reasonable rate. Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997). Nevertheless, the Second Circuit has cautioned that "attorney's fees are to awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." New York State Assoc. for Retarded Children v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983)(citations and internal quotations omitted).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch, 148 F.3d at 173. The Court should exclude from the fee calculation hours that were not reasonably expended. Hensley, 461 U.S. at 434. Hours that are excessive, redundant, or otherwise unnecessary should be excluded from the lodestar calculation. Kirsch, 148 F.3d at 173. "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)(remanding award of attorneys' fees and directing the magistrate judge to review critically counsel's time records). The Court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts. . . . In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties. Gierlinger, 160 F.3d at 876 (quoting DiFilippo v. Morizio, 759 F.2d 231, 235-36 (2d Cir. 1985)). The Second Circuit has further directed that if the district court determines that certain hours are not deserving of compensation, it must state the reasons for excluding those hours "as specifically as possible." LeBlanc-

Sternberg, 143 F.3d at 764 (internal quotations omitted); Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 99 (2d Cir. 1997). "The product of reasonable hours times a reasonable rate does not end the inquiry." Hensley, 461 U.S. at 434. There are other considerations that may lead a court to adjust the fee upward or downward. Id. The lodestar figure may be adjusted on the basis of the "results obtained." Id. "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992)(quoting Hensley, 461 U.S. at 436). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Hensley, 461 U.S. at 434. A plaintiff who prevails on some but not all of his claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories. Id. However, a plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and unsuccessful claims were interrelated and required essentially the same proof. Murphy v. Lynn, 118 F.3d 938, 951 (2d Cir. 1997), cert. denied, 522 U.S. 1115 (1998); Lunday, 42 F.3d at 134; Grant v. Bethlehem Steel Corp., 973 F.2d 96, 101 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993); DeLeon v. Little, No. 3:94CV902RNC, 2000 WL 435494, at *4 (D. Conn. Mar. 2, 2000). The following factors also may be considered: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Hensley, 461 U.S. at 430 n.3. This Court has already determined that plaintiffs are entitled to an award of fees and costs against both defendants.2 Thus, we turn to the question of the reasonableness of the fees and costs requested.

II. Plaintiffs' Fee Request

A. Requested Rates

Plaintiffs' attorneys have asked this Court to award fees based on the following hourly rates:

ù $ 275/hour for Jonathan B. Orleans, a shareholder with Zeldes, Needle & Cooper, P.C., ("ZNC") in Bridgeport, Connecticut, with 17 years legal experience;

ù $ 205/hour for Sarah H. Poston, an associate with ZNC with 8 years legal experience;

ù $ 275/hour for Gregory J. Cava, a shareholder with ZNC and a real estate attorney with 18 years legal experience;

ù $ 150/hour for Barbara G. Hager, an associate with ZNC with 5 years legal experience;

ù $ 105/hour for Diane W. Barrett, a paralegal at ZNC with 10 years paralegal experience;

ù $ 225/hour for Steven Polin, a sole practitioner in Washington, D.C., and General Counsel to Oxford House, Inc., with 8 years legal experience.

The experience and qualifications of each of these individuals are set forth in supporting affidavits of Attorneys Orleans, Poston, and Polin. Additionally, plaintiffs have submitted the affidavits of Attorneys James T. Shearin and Michael Kaelin to establish that the requested rates are comparable to those prevailing in the community for attorneys of similar experience, skills, and reputation.

The Fire District has challenged the reasonableness of the requested rates on three primary grounds: (1) they are higher than rates approved by this Court in other cases for attorneys with similar experience; (2) some of the rates requested are greater than the rates actually charged by the plaintiffs' attorneys over the four-year course of this litigation; and (3) the rate requested for Attorney Orleans is reserved for attorneys with significantly more experience. The Fire District suggests rates of $200/hour for Attorney Orleans, $135/hour for Attorney Poston, $150/hour for Attorney Hager, $50/hour for Paralegal Barrett, and $150/hour for Attorney Polin. The City of West Haven likewise challenges the requested rates as excessive and requests that the Court apply even lower rates of $175/hour for Attorney Orleans, $130/hour for Attorney Poston, $200/hour for Attorney Cava, $130/hour for Attorney Hager, $20/hour for Paralegal Barrett, and $130/hour for Attorney Polin. Additionally, the City asserts that the proper standard is not what rates are billed or charged but rather the rates actually awarded in the area for similar work performed by similarly skilled attorneys and, therefore, the affidavits of Attorneys Shearin and Kaelin should be disregarded in their entirety.

B. Affidavits Concerning Prevailing Rates

At the outset, we dispose of the City's argument that the affidavits of other Connecticut counsel submitted by plaintiffs in support of their fee application should be "wholly disregarded." The City asserts that the reasonableness of the requested rates should be based on rates actually awarded in the area for similar work performed by similarly skilled attorneys, rather than counsel's usual billing rates, and, therefore, these affidavits are irrelevant. We disagree.

The caselaw is clear that reasonable fees under § 1988 are to be calculated "according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." Blum, 465 U.S. at 896 (emphasis added); see also Missouri v. Jenkins, 491 U.S. at 283-4 (holding that

23

attorney's fees awarded under § 1988 are to be based on market rates for the services rendered"). The Supreme Court in Blum noted the inherent difficulty in determining an appropriate "market rate" for a lawyer's services but explained that

the burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to - for convenience - as the prevailing market rate.

Blum, 465 U.S. at 896, n.11; see also Gierlinger, 160 F.3d at 882; Kirsch, 148 F.3d at 172 (holding that the lodestar should be based on prevailing market rates for comparable attorneys of comparable skill and standing in the pertinent legal community); Luciano v. Olsten Corp., 109 F. 3d 111, 115-16 (2d Cir. 1997)(holding that the lodestar figure should be in line with the prevailing rates in the community, that being the district in which the court sits); Omnipoint Communications, Inc. v. Planning & Zoning Comm'n, 91 F. Supp. 2d 497, 499 (D. Conn. 2000)(basing the determination of a reasonable hourly rate on the Court's extensive experience and knowledge of rates within the western Fairfield County area). The Court has found no authority supporting the City's position that this Court may consider only actual fee awards and that affidavits of other counsel concerning prevailing market rates must be disregarded.

It has been this Court's experience that fee applicants generally have supported their applications with their own affidavits as well as the affidavits of other practitioners in the area with comparable skill and experience. See Detje v. James River Paper Corp., 167 F. Supp. 2d 248, 250-51 (D. Conn. 2001)(in which the Court considered the affidavits of attorneys in the relevant market area to determine a reasonable hourly rate). At the same time, given the broad discretion afforded the Court, the Court is not precluded from considering actual fee awards. For example, in Smart SMR of New York, Inc. v. Zoning Comm'n, 9 F. Supp. 2d 143, 149-50 (D. Conn. 1998), this Court employed rates that other Connecticut courts had found reasonable after the plaintiff-fee applicant failed to submit affidavits from other lawyers in the market area concerning billing rates charged by Connecticut firms providing similar services. Thus, while actual fee awards may be relevant to the determination of reasonable rates, none of the cases cited by the City holds that this is the only factor that may be considered or that this Court is precluded from considering affidavit testimony from other attorneys in the same market area concerning prevailing rates. See LaPointe v. Windsor Locks Board of Education, 162 F. Supp. 2d 10, 18 (D. Conn. 2001).

C. Historical Billing Rates

Secondly, this Court rejects the Fire District's opposition to plaintiffs' attorneys' proposed rates on the ground that they exceed the rates actually charged the client over the entire course of the litigation. For example, the Fire District challenges

Attorney Poston's requested hourly rate of $205 because, prior to August 2000, her billing rate was only $150/hour, and from August 2000 through the end of trial in October 2001, her billing rate was $165/hour (although it was increased to $205/hour thereafter). Similarly, they challenge Attorney Orleans' requested rate of $275/hour, because he charged only $225/hour from 1998 to January 2000, when his rate was increased to $250/hour, and $275/hour commencing in 2001. As noted above, in Gierlinger, the Second Circuit held that "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.'" Gierlinger, 160 F.3d at 882 (quoting Missouri v. Jenkins, 491 U.S. at 284).3 "Clearly, compensation received several years after the services were rendered -- as it frequently is in complex civil rights litigation -- is not the equivalent to the same dollar received reasonably promptly as the legal services are performed, as would normally be the case with private billings." Missoiuri v. Jenkins, 491 U.S. at 283-84. Therefore, an appropriate adjustment for delay in payment, whether by the application of current rates, or otherwise, is within the contemplation of the civil rights fee award statutes.

Moreover, the courts have held that the actual billing arrangement between an attorney and his client does not necessarily establish a ceiling on the rates that can be awarded, although it is a significant factor. See Blanchard v. Bergeron, 489 U.S. 87, 93 (1989)(holding that a fee award under § 1988 is not limited by a contingent fee agreement between the attorney and his client. "Should a fee agreement provide less than a reasonable fee calculated [according to the lodestar method], the defendant should nevertheless be required to pay the higher amount."); Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc., 246 F.3d 142, 148 (2d Cir. 2001)(allowing a higher rate than that actually billed in a Copyright Act case). Based on this authority, we reject the Fire District's attempt to limit our determination of a reasonable rate to those rates historically charged by plaintiffs' counsel over the fouryear course of this litigation. However, we note that the instant case does not present the situation where there has been a delay in counsel's receipt of fees nor were plaintiffs' attorneys being paid on a contingent fee basis. Counsel has been paid throughout this litigation by Oxford House, Inc. On the other hand, Oxford House has expended attorneys' fees over a four-year period, for which it is now entitled to reimbursement. We also are cognitive of the Second Circuit's admonition that we should exercise moderation in our award of attorneys' fees to avoid a windfall award, which could result by awarding significantly more than the rates actually charged by counsel. Thus, although we are not bound by the historical billing rates of plaintiffs' counsel, we consider the actual billing rates as a highly relevant factor in our determination of a reasonable rate to be awarded.

D. The Reasonableness of the Requested Rates

Having concluded that the affidavits of other counsel are relevant to our determination of the reasonableness of the rates requested and that we are not bound

by the historical billing rates of plaintiffs' counsel, we turn to the question of whether the rates requested are reasonable. For purposes of determining reasonable hourly rates, we find that the relevant market place is the State of Connecticut. See Smart SMR, 9 F. Supp. 2d at 143; Ham v. Greene, No. 322775, 2000 WL 872707, at *7 (Conn. Super. June 12, 2000).

1. Attorney Orleans

Attorney Orleans has requested a rate of $275/hour. He is a shareholder with ZNC, a law firm located in Bridgeport, Connecticut. He graduated from New York University Law School in 1984. After a one-year clerkship with a federal district court judge, Mr. Orleans joined ZNC, where he has practiced for 17 years. Since January 1, 2001, his normal billing rate has been $275/hour, the same rate requested in this case. The vast majority of time spent on this case by Attorney Orleans was in 2001. He has outlined his substantial experience with civil rights cases, which has spanned his entire legal career, and to which the Legal Director of the Connecticut Civil Liberties Union has further attested by affidavit. James T. Shearin, a litigator with 15 years of experience at Pullman & Comley, LLC, another well-respected law firm in Bridgeport, Connecticut, has testified by affidavit that he charges $295/hour for commercial litigation and that, in his opinion, this rate is consistent with rates charged by other attorneys of similar experience in Connecticut. Additionally, Michael P. Kaelin, a Connecticut attorney with 18 years of experience at Gregory & Adams, P.C., in Wilton, Connecticut, and Kelley, Drye & Warren, LLP, in Stamford, Connecticut, has testified that he charges $285/hour for commercial, employment and civil rights litigation, and that rates of $250/hour to $325/hour were the prevailing rates in medium to large firms in Connecticut in 2000 for attorneys with experience comparable to his. Defendants have provided no counter affidavits.

Instead, defendants have opposed Attorney Orleans' requested rate based on fee awards in other federal and Connecticut state civil rights cases.[4] Although the rates approved in the cases cited by defendants are lower than that requested by Attorney Orleans, these cases are four- to ten-years old. Further, defendants' review of the relevant caselaw is not exhaustive. There is ample, more recent authority supporting a rate of $275/hour for an attorney in Connecticut with experience comparable to that of Attorney Orleans.

For example, in Omnipoint Communications, Inc., 91 F. Supp. 2d 497, a civil rights case brought pursuant to 42 U.S.C. § 1983, Judge Eginton found rates of $300/hour and $250/hour to be reasonable rates for partners in a Stamford, Connecticut law firm. In LaPointe v. Windsor Locks Board of Education, 162 F. Supp. 2d at 18, another § 1983 case, Judge Droney found that $275 was a reasonable hourly rate for an attorney from Manchester, Connecticut with 20 years of experience. In Evanauskas v. Strumpf, No. 3:00CV1106(JCH), 2001 WL 777477 (D. Conn. June 27, 2001), Judge Hall found reasonable an hourly rate of $275/hour for Attorney Joanne Faulkner in a consumer

case based upon similar awards in other cases and the Court's knowledge of hourly rates in Connecticut. Thus, there is ample authority for an award of $275/hour for a litigator with Attorney Orleans' credentials.

After reviewing the recent fee awards in civil rights cases from this District and the Connecticut state courts, as well as the affidavit testimony provided by plaintiffs in support of their fee application, the Court concludes that Attorney Orleans' requested rate of $275/hour is reasonable.

2. Attorney Poston

Attorney Poston has requested an hourly rate of $205. She is an associate attorney with ZNC with nearly nine years of legal experience. Attorney Poston graduated from New York University School of Law in 1993. She served as a law clerk for two federal district court judges and spent three years with a firm specializing in civil rights litigation in Ohio, where she participated as second chair in four jury trials. In September, 1998, she joined ZNC.

The Court notes that Attorney Poston's requested hourly rate is significantly higher than any rate that she actually charged the client through the completion of the trial. She has offered no explanation or justification for an increase of $50/hour to $65/hour. As we have discussed above, although an attorney's actual billing rate does not set a ceiling on a fee award, see Blanchard v. Bergeron, 489 U.S. at 93, we believe it is probative of what that attorney and/or her firm considered to be a reasonable rate.

The affidavit of Attorney Shearin provides little support for Attorney Poston's requested rate, for he only speculates that his firm "would charge" an hourly rate of $200-$210 for an associate who graduated the same year as Attorney Poston. Attorney Kaelin, on the other hand, states that his law firm currently charges $200/hour for the services of a lawyer who graduated two years after Attorney Poston. He does not, however, offer any information as to the type of work performed by this associate, whether as a civil rights litigator or in some other line of practice.

A review of recent fee awards also reveals a wide disparity in what the courts have found to be a reasonable rate for associates with experience similar to Attorney Poston. In Blackledge v. Carlone, 126 F. Supp. 2d 224 (D. Conn. 2001), Judge Hall awarded attorneys' fees under § 1988 based upon a rate of $200/hour for an attorney with eight years of general experience, rather than the requested rate of $250/hour. She also found a rate of $175/hour to be reasonable for two associates with three and four years of experience respectively. This Court, in Smart SMR, 9 F. Supp. 2d at 150, applied hourly rates of $200 for partners, $135, $130, and $100 for associates. In Y.O. v. New Britain Board of Education, 1 F. Supp. 2d 133 (D. Conn. 1998), Magistrate Judge Fitzsimmons found rates of $150/hour and $125/hour to be reasonable rates for associates. In Laudano v. City of New Haven, No. 330523, 1998 WL 281824 (Conn. Super. May 14, 1998), aff'd, 58 Conn. App. 819, 822 (2000), the Court awarded fees

27

based upon a rate of $150/hour for associates. Based on this Court's review of the recent fee awards in this State and its knowledge of rates generally charged by Connecticut law firms, the Court finds that $165/hour, the highest rate actually billed by Attorney Poston prior to 2002, to be reasonable and reduces Attorney Poston's requested hourly rate accordingly.

3. Attorney Polin

Attorney Polin, who is General Counsel for Oxford House, Inc., and also a public interest lawyer in Washington, D.C., has requested a billing rate of $225/hour. Mr. Polin was admitted to the District of Columbia Bar in 1993 and to the State of Maryland Bar in 1999. Since 1989, he has managed all complaints under the FHAA for Oxford House, either in-house or as outside counsel. He has also conducted a number of FHAA seminars and workshops. Attorney Polin has the same number of years of legal experience as Attorney Poston, albeit somewhat more specialized. Although $225/hour may be a reasonable billing rate in Washington, D.C., for an attorney with comparable skill, training and expertise to Attorney Polin, for the reasons discussed above, the Court holds that a reasonable rate in the Connecticut marketplace is $165/hour and reduces his requested fees accordingly.

4. Attorney Cava

Attorney Cava has requested an hourly rate of $275. Like Attorney Orleans, he is a shareholder in ZNC. He graduated from law school in 1983. He specializes in real estate and zoning matters. The Court finds that $275/hour is a reasonable rate at which to bill Attorney Cava's time.

5. Attorney Hager

Attorney Hager is an associate at ZNC, who graduated from law school in 1996. According to Attorney Orleans, her normal billing rate is $175/hour, although the prebill print-out of ZNC indicates that her time was billed at $150/hour, the same rate she has requested. Her involvement in the case was during the trial in September 2001, at which time she had five years of experience. According to Attorney Shearin, his firm charges $190/hour for an associate who graduated one year before Attorney Hager. Attorney Kaelin states that his firm charges $200/hour for an associate with one more year of experience that Attorney Hager. The Court finds that $150/hour is a reasonable rate. See Blackledge, 126 F. Supp. 2d at 233 (awarding a fairly inexperienced attorney with limited civil rights experience a rate of $175/hour).

6. Paralegal Barrett

Lastly, plaintiffs request an award based on a rate of $105/hour for Paralegal Diane W. Barrett. Ms. Barrett's involvement was limited to trial preparation in September 2001. According to Attorney Orleans' affidavit, she has ten years of paralegal

experience. The Court has found no Connecticut authority supporting an award as high as $105/hour for paralegal time, and plaintiffs have failed to provide any support for this request by way of affidavit. Based on our knowledge of requested fees in other Connecticut cases and our review of the more current caselaw, the Court holds that $50/hour is a reasonable rate for a paralegal in Connecticut.

E. The Reasonableness of the Hours Requested

Having determined the rates to be applied for purposes of determining the lodestar, we turn to the question of the reasonableness of the number of hours requested.5 In determining the number of hours reasonably expended, the Court must exclude hours that are excessive, redundant, or otherwise unnecessary excessive hours. The City has also requested that the time spent pursuing plaintiffs' application for a special use permit before the West Haven Zoning Board of Appeals be excluded, and it has challenged all of the time submitted by Attorneys Cava and Hager. The Fire District has additionally challenged the significant amount of unallocated time, which plaintiffs have split equally between the two defendants. Both defendants also challenge Attorney Polin's time records as not being contemporaneous. We note at the outset that the fee award in this case covers a four-year time period. The initial complaint was filed on July 9, 1998, raising claims under the FHAA and ADA of intentional discrimination, adverse impact discrimination, failure to provide a reasonable accommodation, and violations of the Equal Protection Clause by both defendants. The legal issues were complex and oftentimes difficult. As we noted in our initial summary judgment ruling, this case presented the paradoxical interplay of the State Building, Fire and Safety Codes, designed to protect the safety of all persons, with the FHAA and ADA, designed to protect the rights of the handicapped. The summary judgment briefs were extensive. Our summary judgment ruling was nearly 60 pages. The trial of this case lasted eight days and was followed by comprehensive submissions from both sides with proposed findings of fact and conclusions of law. In our Findings of Fact and Conclusions of Law, issued on December 28, 2001, and which were 66 pages in length, we found in favor of the plaintiffs and directed further submissions on costs and attorneys' fees. The instant motions followed, again accompanied by extensive briefs and affidavits. The docket sheet in this case currently lists 178 documents filed by the parties. Thus, it is not surprising that the number of hours expended by the plaintiffs' attorneys is substantial and that the services of more than one attorney were required.

1. Attorney Orleans

Attorney Orleans has requested a fee award for 253.907 hours, of which he has specifically designated 12.3 hours for legal matters pertaining strictly to the City and 33.5 hours for matters involving solely the Fire District. The remaining 208.1 hours have been divided equally between the two defendants. The Fire District argues that the time entries for these 208.1 hours are so vague that a fifty percent (50%) reduction is warranted. At the time these contemporaneous records were created, it was

unnecessary for Attorney Orleans to attribute his hours to one defendant or both, since all hours were being billed to one client. Now, with the benefit of 20/20 hindsight, we must review these records to determine the reasonableness of the time overall and the appropriate allocation of hours between defendants. We have carefully reviewed the Prebill Control Report (Ex. 1 to Attorney Poston's Supp. Aff.) submitted by plaintiffs and find that the total number of hours requested by Attorney Orleans is reasonable.8 It appears that Attorney Orleans has meticulously billed his time in increments of five-hundredths of an hour and that his billing entries, without exception, adequately describe the work performed and reflect a reasonable amount of time expended for the work performed.

The only difficulty that we have with his fee request is the allocation of hours between the City and Fire District. Undoubtedly, a significant amount of the legal work performed by Attorney Orleans pertained to both defendants. Based on the Court's intimate involvement with this case for four years, the Court believes that it is inequitable to saddle the Fire District with a greater share of the plaintiffs' fees than the City, which had the greater involvement in events giving rise to this litigation and was clearly the primary defendant. More claims were tried against the City; more witnesses testified for and against the City; the City had a greater involvement in the dispute with Oxford House-Jones Hill from the beginning. The Court has reviewed its notes from the trial of this case, as well as the transcript of the trial and concludes that approximately eighty percent (80%) of the trial concerned the plaintiffs' claims against the City (and, conversely, the City's defenses). Therefore, for the period August 26, 2001, to October 31, 2001, during which Attorney Orleans was involved with trial preparation, the trial itself, the preparation of post-trial findings of fact and conclusions of law, the Court finds that his unallocated time should be divided between the City and the Fire District on a 80/20 basis. This, of course, does not include those hours that were specifically designated by Attorney Orleans as applying to one defendant or the other. All remaining hours have been divided equally, which is an equitable allocation since the same legal theories were asserted against both defendants and, therefore, much of the legal research pertained both. In fact, plaintiffs filed a single brief in opposition to the two motions for summary judgment.

Accordingly, the Court awards attorneys' fees for Attorney Orleans' time as follows: $43,822.63 against the City and $25,999.88 against the Fire District.9

2. Attorney Poston

Plaintiffs have requested that the Court award fees for 713.3 hours for Attorney Poston.10 Of these hours, 140.2 hours have been allocated to the City, 105.75 hours have been allocated to the Fire District, and 467.35 remain unallocated.11

Defendants have objected to Attorney Poston's hours on the ground that she has "block billed" or "bundled" her time entries for a particular date so that, they assert, it is

practically impossible to determine whether the time spent on certain activities was reasonable. The Fire District suggest a reduction of fifty percent (50%) of the unallocated fees. Defendants also ask this Court to exclude telephone conferences between Attorney Polin and Attorney Poston because of the duplication of effort. As to this latter point, as discussed below, the Court has excluded one-third of Attorney Polin's time to take into account his dual role as General Counsel to Oxford House, Inc., and as co-counsel in this litigation. Whether the calls were between Attorney Poston and Attorney Polin in his role as co-counsel or as General Counsel for the client is impossible to discern from the time entries. In either case, Attorney Polin's extensive experience with these types of cases throughout the United States undoubtedly provided ZNC with a valuable resource. Because of Attorney Polin's location in Washington, D.C., telephone communications obviously took the place of intraoffice meetings and conferences. The Court finds that the time billed for these telephone conferences is reasonable and will allow it. As for defendants' challenge to Attorney Poston's "block billing," certainly the better practice is to itemize each activity with a specific amount of time assigned to that activity. However, after a close review of the Prebill Control Report, the Court has found no entries where the time charged was excessive. Like Attorney Orleans, Attorney Poston appears to have carefully billed her time, often to the five-hundredths of an hour, and to have adequately documented the work performed. Again, however, we have difficulty with the large number of unallocated hours, which plaintiffs would have us divide equally between the two defendants. Such a result is clearly inequitable. Accordingly, as with Attorney Orleans, we have divided the trial preparation, trial, and post-trial hours for the period August 9, 2001, to October 25, 2001, on an 80/20 basis. During that period, Attorney Poston had a total of 179.25 unallocated hours, of which 143.38 will be charged to the City, and 35.87 to the Fire District. Her remaining unallocated time will be divided equally between the two defendants. Therefore, fees of $70,567.20 will be awarded against the City for Attorney Poston's time and $47,127.30 will be awarded against the Fire District.12

3. Attorney Hager

Defendants assert that the 8.4 hours billed by Attorney Hager should be disallowed because her time entries are vague and there is no indication of the subject matter researched so that it can be determined which defendant should be responsible for the time or whether plaintiff prevailed on that issue. All of the billing entries for Attorney Hager relate to legal research and generally indicate nothing more than "legal research; analyze cases." This time is excluded. There is one entry for "legal research re. individual liability," dated September 5, 2001, which is curious since there were no individual defendants in this case. This time will also be excluded. All of this time, a total of 6.4 hours, was allocated to the City.

The Court will, however, allow the 2.0 hours of time on September 13, 2001, for "legal research; analyze case law re. various questions and legal issues for trial

31

support." While a more detailed description of the legal questions being researched would have been preferable, this research was performed immediately before trial and there were, undoubtedly, a significant number of different matters that needed research. The Court will allow this time. Thus, the total time allowed for Attorney Hager is 2.0 hours, or $300, which has been split between the two defendants.

4. Attorney Polin

Defendants ask the Court to exclude all of Attorney Polin's time because of his dual role as General Counsel to the client, Oxford House, Inc., and as co-counsel. This we decline to do. Attorney Polin played an active and important role in the trial of this case and undoubtedly provided valuable assistance to Attorneys Orleans and Poston given his longstanding involvement with Oxford House and other FHAA litigation. The Fire District further urges the Court to disallow 50% of Attorney's Polin's billings to account for the insufficiencies and vagueness in his billing records. Defendants also challenge time spent on telephone conferences with Attorneys Poston and Orleans as duplicative.

Plaintiffs have responded to these objections by reducing Attorney Polin's hours from 377.5 to 188.9. In arriving at this figure, plaintiffs eliminated 62.65 hours of duplicative trial preparation, trial and conference time. They further reduced this new total by one-third to reflect Polin's dual role as cocounsel and client liaison. Finally, they discounted his new total hours by ten percent to account for the vagueness in some billing entries. The new adjusted hours requested for Attorney Polin, 188.9, are a fifty percent reduction, the same reduction requested by the Fire District.

After a careful review of Attorney Polin's billing records, the Court concludes that 188.9 hours is a reasonable request, given the complexity of this case, the uniqueness of the legal issues presented, the length of trial, the voluminous motions filed, and the four-year time span involved.

However, as the Fire District points out, Attorney Polin has made no attempt to allocate his hours between the defendants. The Court has carefully reviewed Attorney Polin's billing records. It appears that a total of 53 of the original 377.5 hours should have been allocated in the following manner: 18.25 hours to the Fire District and 34.75 hours to the City.13 These hours, however, must then be reduced by one-third, to take into account Attorney Polin's dual role, and by another ten percent (10%) to account for the vagueness in his entries. Thus, 31.8 hours will be allocated, 10.95 to the Fire District and 20.85 to they City. The remaining hours will be divided equally between the two defendants. Accordingly, the Court awards total fees of $31,168.50 for Attorney Polin's time as follows:

Fees against the City: $16,401.00 Fees against the Fire District: $14,767.50.14

5. Paralegal Barrett

Plaintiffs also seek to recover the paralegal fees paid to Paralegal Barrett, whose time was billed at a rate of $105/hour for 10.10 hours of time. The City has not contested the hours logged. The Fire District argues that the majority of the hours expended were for clerical duties and should, therefore, not be recovered. A review of the time records indicates that the work performed by Paralegal Barrett included preparing the trial binders for the attorneys, legal research, drafting the exhibit list and marking exhibits, and working on a deposition. This is work typically performed by paralegals. The Court finds the time expended on these tasks is reasonable. Accordingly, the Court will allow full recovery for these hours at the rate of $50/hour, which will be divided equally between the two defendants, such that $252.50 will be awarded against each.

6. Attorney Cava

Lastly, plaintiffs seek to recover $1,540 in fees billed by Attorney Cava, a real estate attorney, for 5.6 hours of time at $275/hour. All of this time has been allocated to the City and pertains the City's zoning regulations. The City has challenged plaintiffs' entitlement to recover for work done by Attorney Cava on the ground that all of his work concerned preparation for the Zoning Board of Appeals hearing in 2001 and was not time devoted to litigation. The City maintains that attorneys' fees are recoverable under the FHAA only for administrative proceedings under the FHAA, specifically 42 U.S.C. § 3612(b), and that there is no authority for an award of attorneys' fees for other administrative proceedings. The City relies on this Court's decision in St. George v. Mak, No. 5:92CV593(HBF), 2000 WL 303249, at *4 (D. Conn. Feb. 15, 2000), in which the prevailing plaintiffs in a § 1983 case sought to recover fees and costs expended on Labor Board proceedings.15 The Court denied plaintiffs' request for attorneys' fees for the Labor Board proceedings on the ground that "nothing in § 1983 requires that a plaintiff exhaust his administrative remedies before bringing a § 1983 suit." Id. (citing Webb v. Dyer County Board of Education, 471 U.S. 234, 241 (1983)). Noting that § 1983 stands as an independent avenue of relief, the Court held that "Congress only authorized the district courts to allow the prevailing party a reasonable attorneys fee in an action or proceeding to enforce § 1988." Id.

That case, however, was brought under § 1983 and is not necessarily dispositive of the issue presented by this case, which is brought under the FHAA and ADA.

Under § 1988, a court should award attorneys' fees for time "spent on administrative proceedings to enforce the civil rights claim prior to the litigation." Lambert v. Fulton County, 151 F. Supp. 2d 1364, 1371 (N.D. Ga. 2000)(quoting North Carolina Dept. of Transp. v. Crest Street Community Council, Inc., 479 U.S. 6, 15 (1986)). The Supreme Court has held that mandatory administrative remedies fall within this category, such as EEOC administrative proceedings prior to the filing of a Title VII action. Id. (citing New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 71 (1980)). A distinction, however, has been drawn between mandatory administrative

proceedings and those that are optional. In the latter case, fees should be awarded for time spent on the administrative proceedings only if the work was "useful and of a type ordinarily necessary to secure the final results obtained." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986).

In the instant case, the ZBA proceedings were not a mandatory prerequisite to plaintiffs' filing a claim under the FHAA or ADA. However, in response to the City's argument that plaintiffs' reasonable accommodation claim was not ripe for adjudication, this Court held that plaintiffs must first pursue these

[administrative] avenues of relief before asserting a federal discrimination claim against these defendants for failure to accommodate, particularly given defendants' unrefuted assertions that they themselves do not have the authority to grant plaintiffs the accommodations they are seeking. . . . The local and State authorities that have been vested with the authority to decide these matters in the first instance should be given the opportunity to decide whether plaintiffs should be granted the reasonable accommodation they request before this Court is asked to review a claim for an alleged denial of a reasonable accommodation.

**Tsombanidis**, 129 F. Supp. 2d at 161. Thus, although not statutorily mandated, the ZBA proceedings were an essential precursor to plaintiffs' claim against the City for its failure to provide a reasonable accommodation.

After the ZBA formally denied plaintiffs' request, plaintiffs' reasonable accommodation claim, now ripe, was tried along with their intentional discrimination and adverse impact claims against the City. Ultimately, plaintiffs prevailed on this claim. Clearly, the ZBA administrative proceedings were "both useful and of a type ordinarily necessary to secure the final results obtained." Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S at 561.

In Support Ministries for Persons with AIDS, Inc. v. Village of Waterford, 808 F. Supp. 120, 140 (N.D.N.Y. 1992),16 a case factually similar to the instant case, the Court held that, where plaintiffs were required as a result of the defendants' improper conduct to secure zoning variances and approvals, attorneys' fees and costs for that work were compensable.

We find persuasive the reasoning of the Support Ministries decision, and, therefore, include the fees paid to Attorney Cava for his work in connection with the ZBA proceedings.

F. Calculation of the Lodestar

Having determined the reasonable fees to be awarded against the City and Fire District for each attorney, we next consider whether the total lodestar figure is a reasonable fee award given the degree of success obtained by plaintiffs. See Smart

SMR, 9 F. Supp. 2d at 148 (citing Farrar v. Hobby, 506 U.S. at 114). The total fee awards based on a lodestar calculation are as follows:

Against the City:

Attorney Orleans $43,822.63

Attorney Poston 70,567.20

Attorney Polin 16,401.00

Attorney Cava 1,540.00

Attorney Hager 150.00

Paralegal Barrett 252.50

TOTAL $132,733.33-1,035.0017 $131,698.33

Against the Fire District:

Attorney Orleans $25,999.88

Attorney Poston 47,127.30

Attorney Polin 14,767.50

Attorney Hager 150.00

Paralegal Barrett 252.50

TOTAL $88,297.18

The Fire District argues that the lodestar amount should be reduced by fifty percent (50%) to reflect plaintiffs' limited success against the Fire District.

We begin with the proposition that there is a "strong presumption" that the lodestar represents a reasonable fee under § 1988. City of Burlington v. Dague, 505 U.S. at 561; Lunday v. City of Albany, 42 F.3d at 134. Nevertheless, a prevailing plaintiff is not entitled to a fee for hours dedicated to prosecuting unsuccessful claims if those claims were unrelated to the claims on which the party prevailed. DeLeon v. Little, 2000 WL 435494, at *4 (citing Hensley, 461 U.S. at 434-35). So long as plaintiffs' unsuccessful claims are not wholly unrelated to plaintiffs' successful claims, however, hours spent on the unsuccessful claims need not be deducted from the lodestar calculation. Lunday, 42 F.3d at 134. No reduction needs to be made if "the successful and unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories.'" Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996)(quoting Dominic v. Consolidated Edison Co., 822 F.2d 1249, 1259 (2d Cir.

1987)); DeLeon, 2000 WL 435494, at *4. The party seeking an adjustment to the lodestar bears the burden of establishing its reasonableness. City of Burlington, 505 U.S. at 561. Whether an adjustment to the lodestar figure needs to be made is a matter left to the sound discretion of the trial judge. Lunday, 42 F.3d at 134.

In this case, the plaintiffs' three claims against the Fire District were factually interrelated and derived from a common core of operative facts. See Meacham v. Knolls Atomic Power Laboratory, 185 F. Supp. 2d 193, 242 (N.D.N.Y. 2002)(holding that discrimination claims based on theories of intentional discrimination and adverse impact were closely related). Plaintiffs' intentional discrimination claim was dismissed on summary judgment, leaving their adverse impact and reasonable accommodation claims, which went forward at trial. Ultimately, in light of the Fire District's concession at trial that it would interpret its regulations such that Oxford House-Jones Hill ("OHJH") would be treated as a one-family dwelling, the reasonable accommodation claim became moot. The Court found in favor of the plaintiffs on their adverse impact claim and granted plaintiffs a permanent injunction against the Fire District, prohibiting it from proceeding with the prosecution of plaintiffs for violations of the State Fire Safety Code, insofar as those violations relate to or arise out of the number of recovering alcoholics or former drug users (not to exceed a total of seven in number) residing at OH-JH. **Tsombanidis**, 180 F. Supp. 2d at 299. By virtue of this injunction, plaintiffs achieved substantial success on their claims against the Fire District.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435; see also National Association for the Advancement of Colored People v. Town of East Haven, 259 F.3d 113, 117-18 (2d Cir. 2001)(holding that the prevailing plaintiff on a disparate impact claim in a Title VII suit against the Town of East Haven was entitled to full compensatory fee, even though it was unsuccessful on its disparate treatment claim), cert. denied, 122 S. Ct. 1068 (2002). In this case, plaintiffs did obtain excellent results against the Fire District. With respect to their one unsuccessful intentional discrimination claim, it arose from the same facts and was clearly related to the adverse impact claim. Therefore, the Court finds that no additional reduction is warranted based on plaintiffs' lack of success of all claims against the Fire District. See Shaw v. Greenwich Anesthesiology Assocs., 2002 WL 550045, at *3; see also C.G. v. New Haven Board of Educ., 988 F. Supp. 60, 67 (D. Conn. 1997)(holding that the fact that the parties resolved one or more issues through voluntary agreement rather than through adjudication did not preclude plaintiff's claiming attorney's fees as the prevailing party).

III. Costs

Plaintiffs have sought to recover a total of $20,102.48 in costs, which they have allocated between the City ($11,435.12) and the Fire District ($8,667.36).18 These costs are comprised of the following: $6,837.40 for deposition transcripts, $841.77 for service and witness fees, $4,013.16 for trial transcripts, $3,247.55 for Westlaw

research, $2,894.40 in other expenses (copying services, postage, Federal Express charges, costs of publications, travel expenses, courier services, meals/parking), and $2,268.20 for their expert's expenses.

A. Taxable Costs

Both defendants have objected to these requested costs on the ground that they include items which are not taxable costs under 28 U.S.C. § 192019 and the Local Rules of this District, D. Conn. L. Civ. R. 17. However, in awarding fees and costs under § 1988, this Court is not limited to taxable costs. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charted to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d at 763 (internal citations and quotations omitted). "Identifiable, outof- pocket disbursements for items such as photocopying, travel and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." Aston v. Secretary of Health & Human Services, 808 F.2d 9, 12 (2d Cir. 1986); Lambert v. Fulton County, 151 F. Supp. 2d at 1370 ("In short, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxes as costs under section 1988.")(internal citations and quotations omitted). Thus, costs that are allowable under § 1988 encompass a far broader range of expenses than costs that are taxable under 28 U.S.C. § 1920 and the Local Rules. See J.P. Sedlak Assocs. v. Connecticut Life & Cas. Ins. Co., No. 3:98CV145(DFM), 2000 WL 852331 (D. Conn. Mar. 31, 2000)(rejecting defendant's claim that the court may only award those costs delineated in 28 U.S.C. § 1920); but see Omnipoint Communications, Inc., 91 F. Supp. 2d at 500 (D. Conn. 2000) (relying on Local Rule 17 to disallow computerized legal research fees and express mail service).

B. Deposition Transcripts

The Fire District questions the charges for deposition transcripts on the ground that these charges are higher than what it was charged. The answer to that is obvious. Plaintiffs, as the parties noticing the depositions, were charged for an original and one copy, as well as an attendance fee. The Fire District was only charged the copy rate for its one copy. The requested costs for deposition transcripts are adequately documented by the invoices from the court reporting firms and will be allowed.

The City also complains that plaintiffs have not adequately documented their costs. That deficiency has been largely cured by Exhibit 2 to the Supplemental Affidavit of Sarah Poston, in which she has provided copies of the invoices supporting their requests for costs.

C. Expert Witness Expenses

Both the City and Fire District have complained that plaintiffs should not be able to recover the fees and costs for their expert, Riley Regan. Plaintiffs have conceded that his fees are not reimbursable in light of his testimony that he was volunteering his time. Nevertheless, despite similar testimony concerning his costs, plaintiffs persist in arguing that his costs are recoverable.

Mr. Regan testified unequivocally, "I am volunteering my time and I am also planning to just volunteer and donate my expenses as well." (Regan Depo. at 7.) Although it appears that Oxford House, Inc., was billed for Mr. Regan's fees and expenses, it is not clear what precipitated this change of heart on the part of Mr. Regan about donating both his time and expenses, unless perhaps it was the award of fees and costs to plaintiffs by this Court. (The Court notes that Regan's Invoice is dated January 15, 2002, which is subsequent to the Court's issuing its Findings of Fact and Conclusions of Law.) Whatever the reason, the Court sees no basis for distinguishing Regan's fees from his costs. Mr. Regan testified that he was not charging Oxford House for either, and plaintiffs are bound by that testimony. Accordingly, recovery of his costs of $2,268.20 will be disallowed.

D. Westlaw Research

The Fire District argues that "[c]osts for computer research such as Westlaw are not allowed, period." The City joins in this objection. There is conflicting authority on this issue. The seminal case in this Circuit regarding the recovery of computer research costs is United States ex rel. Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp., 95 F.3d 153, 173 (2d Cir. 1996). In that case, the Second Circuit agreed with the decisions of the Seventh, Eighth, and Tenth Circuits that "computer research is merely a substitute of an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." The Court held that the district court, which had disallowed Westlaw charges as costs, "did not abuse it discretion in declining to shift the cost of this item." Id.

Since then, numerous cases citing Merritt Meridian have reached different conclusions as to the meaning of this language. In BD v. DeBuono, 177 F. Supp. 2d 201, 209 (S.D.N.Y. 2001), the court, noting the conflicting authority regarding the compensation of computer research charges, held that "Westlaw fees are not attorney's fees but a separate, non-reimbursable taxable cost under 28 U.S.C. § 1920." The court reasoned that an attorney's time spent performing computerized research is properly compensable but the cost of the computer service used in the research is "no more reimbursable than the cost of the West's Keynote Digests and the volumes of the Federal Reporter and the Federal Supplement that lawyers used to use (and many still use) to find authority and research issues of law." Id. "Westlaw fees are simply an item of overhead, and as such should be built into the fees charged, rather than unbundled and reimbursed separately." Id. The court, however, noted that there were a number of cases in this Circuit that have allowed the shifting of computer research fees, (citing

Anderson v. City of New York, 132 F. Supp. 2d 239, 247 (S.D.N.Y. 2001), Gonzalez v. Bratton, 147 F. Supp. 2d 180, 212 (S.D.N.Y. 2001), Lawson ex rel. Torres v. City of New York, No. 99 Civ. 10393, 2000 WL 1617014, at *5 (S.D.N.Y. Oct. 27, 2000), and Schaefer v. State Ins. Fund, No. 95 Civ. 0612, 1999 WL 281342, at *5 (S.D.N.Y. Apr. 14, 1999)), but found their reasoning unpersuasive, particularly with respect to the notion that use of Westlaw saves attorney time. "Whether one reads a case from a book or a screen, the attorney's time is the compensable element - not the medium that delivers the message." Id.

We do not intend to enter the debate on whether computerized research is more time-efficient. However, we do agree with the reasoning of Judge McMahon in BD that it is the attorney's time that is compensable, not the medium that delivers the message, and disallow the requested costs of $3,247.55 for Westlaw charges. See also Smart SMR, 9 F. Supp. 2d at 154 (holding that the cost of computerized legal research was not recoverable as a cost); J.P. Sedlak Associates, 2000 WL 852331, at *8 (disallowing recovery of LEXIS and Westlaw costs).

### E. Parking and Meals

Plaintiffs have also included in their request for fees reimbursement for parking and meals for Attorney Orleans on September 20, 2001, and October 25, 2001, in the total amount of $208.35. While it does appear that these costs were actually billed to the client, no further explanation or substantiation of these expenses is provided. The Court would be inclined to allow parking costs, if those had been itemized. But, without further explanation, the Court declines to pass on "parking and meal charges" in the amount of $208.35.

### F. Charges Submitted by Other Attorneys

We also disallow costs of $119.26 submitted by Law Clerk Heinig, Attorney Atkins, and Paralegal DelVecchio,[20] since plaintiffs have not sought recovery for any of their time spent of this case, and, thus, the expenses associated therewith should not be allowed.

### G. Allocation of Costs

In all other respects, plaintiffs' requested costs will be allowed. The only remaining issue is how these costs should be allocated. We have no difficulty with plaintiffs' allocation of the cost of deposition transcripts: $3,837.08 to the City, $1,759.32 to the Fire District, and the remaining $1,241.00 split between the two defendants. Likewise, we agree with the allocation of service and witness fees: $245.00 to the City, $235.05 to the Fire District, and $361.72 to be divided equally between the defendants. With respect to the trial transcript cost of $4,013.16, that should be split on an 80/20 basis as we have split trial time. Thus, $3,210.53 will be allocated to the City and $802.63 to the Fire District. We have subtracted from the unallocated portion of the remaining

costs, which have been classified as "Other," the $208.35 in parking and meals for Attorney Orleans, which were disallowed, as well as the $119.26 in costs for attorneys and paralegals whose time is not being reimbursed. In this category of costs, $773.90 has been allocated to the City and $93.85 to the Fire District. To these amounts we have added one-half of the remaining unallocated costs of $1,699.04. Thus, the total costs assessed against the City are $9,717.39 and the costs assessed the Fire District are $4,541.73.

IV. Conclusion

In summary, the Court awards fees against the City in the amount of $131,698.33, and against the Fire District in the amount of $88,297.18. The Court awards costs against the City in the amount of $9,717.39 and against the Fire District in the amount of $4,541.73. The Clerk shall enter Judgment accordingly.

SO ORDERED.

DATE: June 18, 2002

Waterbury, Connecticut.

_____/s/_____

GERARD L. GOETTEL, United States District Judge

_____

Footnotes

1 Plaintiffs' original motion for fees and costs is Document # 150. This was supplanted by their corrected motion, Document # 155. After receiving defendants' opposition to their corrected fee application, plaintiffs adjusted their requested fees and costs to address some of the arguments raised by defendants. These are set forth in Plaintiffs' Reply to the Opposition of the City of West Haven and Opposition of the First Fire District to Plaintiff's Motion for Attorneys' Fees and Costs [Doc. # 167]. Plaintiffs then filed an Amended Reply Brief [Doc. # 176] and a Second Amended Reply [Doc. # 178], which adjusted the numbers yet again to the figures set forth above.

2 The City does not challenge plaintiffs' status as "prevailing parties" but suggests that this Court defer ruling on the application until defendants' appeal to the Second Circuit is concluded. This we decline to do.

3 The Court in Gierlinger did note an exception to this general rule when the delay was due in whole or in substantial part to the fault of the party seeking fees. Gierlinger, 160 F.3d at 882. However, that situation is not present in the instant case. Cf. West v. Manson, 163 F. Supp. 2d 116, 120 (D. Conn. 2001)(where the Court applied historical rates because the plaintiff had offered no explanation for the seven-year delay in filing

a fee application).

4 In Lieberman v. Dudley, No. 3:95CV2437(AHN), 1998 WL 740827, at *4 (D. Conn. July 27, 1998), Judge Nevas awarded Attorney John Williams a fee of $250/hour, noting that Attorney Williams was an experienced civil rights litigator with over 30 years of experience in Connecticut. In Calovine v. City of Bridgeport, No. 3:94CV379(WWE), 1998 WL 171432, at *1 (D. Conn. Fees Feb. 4, 1998), Judge Eginton awarded Attorney Burt Weinstein attorney's fees under § 1988 based on an hourly rate of $250/hour, observing that "Attorney Weinstein is among the most experienced plaintiffs' civil rights litigators in the state." In Russo v. Coppola, No. 3:93CV1734(AHN), slip op. (D. Conn. Feb. 6, 1995)(Ruling on Application for Attorneys' Fees and Costs Feb. 6. 1995), Judge Nevas awarded fees under § 1988 based on a rate of $250/hour for Attorney John Williams, and $150/hour for two associate attorneys with two and three years of experience in this district. In that ruling, Judge Nevas cited three decisions from this District in which the Court awarded fees to experienced civil rights litigators at the rate of $250/hour. See Kuntz v. City of New Haven, No. 3:90CV480(JGM), 1993 WL 276946, at *3 (D. Conn. June 18, 1993), aff'd, 29 F.3d 622 (2d Cir.), cert. denied, 115 S. Ct. 667 (1994); Friends of Animals, Inc. v. Hirsch, No. B90-621(WWE), slip op. at 5 (D. Conn. Jan. 20, 1993)(Smith, M.J.); Gonzalez v. Town of Stratford, 830 F. Supp. 111, 113 (D. Conn. 1992). Significantly, the three decisions cited in Kuntz are nine- to ten-years old.

5 The Court notes that plaintiffs have excluded from their fee request hours billed by Attorney Friedman (.65 hours), Paralegal DelVecchio (.25 hours), Law Clerk Hafkin (38.25 hours), Attorney Heinig (5.3 hours), and Attorney Frost (.2 hours).

6 The Second Circuit has held that time entries should specify the attorney, the date, the hours expended, and a description of the work done that is sufficient for the Court to evaluate its appropriateness. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d at 1148; Shaw v. Hensley, 461 U.S. at 434. Defendants have asked the Court to exclude all duplicate (and triplicate) billings, see Orchano v. Advanced Recovery, Inc., 107 F.3d at 97, time substantiated only by vague and inadequate time entries,6 and what they claim to be Greenwich Anesthesiology Assocs., P.C., --- F. Supp. 2d ---, 2002 WL 550045, at *2 (D. Conn. Mar. 21, 2002).

7 In the original fee application, Attorney Orleans claimed 221.05 hours through October 31, 2001, of which 186.45 was unallocated. This was increased in to 253.90 hours to include time spent after October 31, 2001. Of these hours, 33.5 hours are allocated to the Fire District and 12.3 to the City.

8 Attorney Orleans has omitted 1.5 hours from his request.

9 These figures were calculated as follows: City:

12.3 hours allocated by Attorney Orleans

115.08 hours (80% of trial, trial preparation time)

_31.975 hours (50% of the remaining hours)

159.355 hours X $275/hour = $43,822.63

Fire District:

33.8 hours (allocated by Attorney Orleans)

28.77 hours (20% of trial, trial preparation time)

31.975 hours (50% of the remaining hours)

94.545 hours X $275/hour = $25,999.88

10 Plaintiffs have voluntarily omitted one hour of Attorney Poston's time from their fee request.

11 The Court notes that it would have been extremely helpful to have spread sheets accompanying the amended prebill control report, setting forth total hours and allocations, as was done with the original prebill report.

12 These figures were calculated as follows: City:

140.2 hours allocated by Attorney Poston

143.48 hours (80% of trial, trial preparation time)

144.00 hours (50% of the remaining hours)

427.68 hours X $165/hour = $70,567.20

Fire District:

105.75 hours (allocated by Attorney Poston)

35.87 hours (20% of trial, trial preparation time)

144.00 hours (50% of the remaining hours)

285.62 hours X $165/hour = $47,127.30

13 The Court has allocated the following time entries:

6/30/98 - 2 hrs. to Fire District

1/7/99 - .5 hrs. to City

3/9/99 - .5 hrs. to City

3/17/99 - 6 hrs. to City

3/18/99 - 16.25 hrs. to City

8/4/99 - 2.25 hrs. to Fire District

9/1/99 - 1.25 hrs. to City

10/12/99 - 2.5 hrs. to Fire District

10/13/99 - 4.5 hrs. to Fire District

11/15/99 - .5 hrs. to Fire District

7/19/00 - 3.5 hrs. to Fire District

4/17/00 - 1.5 hrs. to Fire District

4/23/00 - .5 hrs. to Fire District

4/24/00 - .5 hrs. to City

5/15/00 - 3.75 hrs. to City

6/2/00 - 1.25 hrs. to City

6/18/00 - 1.5 hrs. to City

7/18/00 - 1.25 hrs. to City

7/31/00 - 2.0 hrs. to City

1/17/02 - 1.0 hrs. to Fire District

14 These figures were calculated as follows:

Total Hours Allowed: 188.9

Less: Hours Allocated: (31.8)

157.1 / 2 = 78.55 hrs.

Hours Allocated to Fire District: 10.95

+78.55

89.50 hrs.

X $165/hr

$ 14,767.50

Hours Allocated to the City: 20.85

+78.55

99.40 hrs.

X $165/hr.

$ 16,401.00

15 That case was brought against a sheriff for alleged violations of plaintiffs' First Amendment rights by his taking adverse employment actions against them in retaliation for their union organizing activities.

16 In that case, plaintiff, a property owner who sought to operate a home for persons with AIDS, brought suit under § 1983 and the FHAA, seeking injunctive, declaratory, and monetary relief to redress the Village's alleged arbitrary and unlawful discrimination on the basis of handicap due to the Village's refusal to allow plaintiff to open a residence for homeless persons with AIDS.

17 This amount has already been paid by the City for sanctions awarded against the City for discovery abuses.

18 These figures are substantially less than those sought by plaintiffs in their original application. In response to defendants' opposition to their requested costs, plaintiffs have eliminated their request for reimbursement for the expert fees of Riley Regan, in light of his testimony that he was "volunteering his time." (Regan Depo. at 7, line 8.)

19 Under § 1920, the Court may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

44

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

20 This includes the following:

Law Clerk Heinig $20.95 Westlaw

Attorney Atkins 16.12 Travel

Paralegal DelVecchio 28.82 Westlaw 53.37 Westlaw

TOTAL $119.26

```
                    EVANS LAW OFFICES, LLC
                       JOHN J. EVANS
                      ATTORNEY AT LAW
                       30 OAK STREET
                     STAMFORD CT 06905
Invoice submitted to:
Ms. Rita Kruk
150 Judd Road
Easton CT 06612
```

August 30, 2005
In reference to: Kruk v. Pechiney/Metlife-ERISA time only
 10008

| | | | Hours | Amount |
|---|---|---|---|---|
| 8/29/05 | JJE | Prepare Supplement to Motion for attorney's fees, with attachments of timesheets and disbursements. | 1.20 | 330.00 |
| 8/30/05 | JJE | Trip from Stamford to Hartford for hearing on Motion for attorney's fees, and appearance in front of Judge Covello to argue same. | 4.40 | 1,210.00 |
| 9/14/05 | JJE | Letter to Atty. Tucci at Robinson and Cole, and review faxed response with copy of his letter to me dated 9/9/05 and received on 9/14/05.  Respond to same. | 1.10 | 302.50 |
| 9/20/05 | JJE | Review memorandum with supplemental objectionis filed by MetLife, dated 9/15/05, and attachments. | 0.80 | 220.00 |
| 9/23/05 | JJE | Research caselaw regarding factors to determine attoney's fees and amounts. Draft language for memorandum in opposition. | 1.50 | 412.50 |
| 9/28/05 | JJE | Legal research of cases regarding time that is compensable on unsuccessful counts, and lodestar rules re: fees, etc.  Further drafting of memo in opposition.  Further research and review of federal caselaw. | 3.50 | 962.50 |
| 9/29/05 | JJE | Research and analyze cases, and drafting language for brief. Amendments to same. | 1.70 | 467.50 |

46

Ms. Rita Kruk                                                    Page    2

                                                          Hours     Amount

10/3/05  JJE  further drafting, and            1.40    385.00
              amendments to memo in
              opposition to Defendants
              objections, and read
              Tsombanidis case cited.
10/4/05  JJE  Final amendments to memorandum   2.50    687.50
              in opposition, and review
              citations, copy case for
              exhibit, review prior pleadings
              for amounts, and prepare disk
              for filing in Court by Fed Ex.
                                               -------   --------
              For professional services rendered  18.10  $4,977.50